**IN THE**
**UNITED STATES DISTRICT COURT**

FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Civil Action No. 1:13-cv-00756-LY**

---

IN RE:
SCC KYLE PARTNERS, LTD.

WHITNEY BANK

Appellant,

v.

SCC KYLE PARTNERS, LTD.

Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

---

## BRIEF OF APPELLANT

---

James G. Ruiz ( SBN 17385860)
**WINSTEAD PC**
401 Congress Ave., Suite 2100
Austin, TX  78701
(512) 370-2800 Phone
(512) 370-2850 Fax

*ATTORNEYS FOR APPELLANT*
*WHITNEY BANK*

## CERTIFICATE OF INTERESTED PERSONS

Appellant, Whitney Bank, successor by merger to Whitney National Bank, individually and as agent for certain pre-petition lenders, certifies as follows:

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.  These representations are made in order that this Court may evaluate possible disqualification or recusal.

APPELLANT:

Whitney Bank, successor by merger to Whitney National Bank
Parent: Hancock Holding Company

And as Agent for :

American National Bank, N.A.
Capital One, N.A.
Trustmark National Bank

ATTORNEYS FOR APPELLANT:

Trial and Appeal:

James G. Ruiz
Texas State Bar No. 17385860
jruiz@winstead.com
Winstead PC
401 Congress Avenue, Suite 2100
Austin, TX 78701-3619
Telephone:  (512) 370-2800
Facsimile:  (512) 370-2850

DEBTOR-APPELLEE:

SCC Kyle Partners, Ltd.

ATTORNEYS FOR DEBTOR/APPELLEE:

Trial and Appeal:

Eric J. Taube
Texas State Bar No. 1967935
erict@hts-law.com
Mark C. Taylor
Texas State Bar No. 19713225
MarkT@hts-law.com
Hohmann, Taube & Summers, L.L.P.
100 Congress Ave., 18th Floor
Austin, TX 78701
Telephone:  (512) 472-5997
Facsimile:  (512) 472-5248

JUDICIAL OFFICER:

Hon. H. Christopher Mott
United States Bankruptcy Judge
Western District of Texas

/s/ James G. Ruiz
James G. Ruiz

ATTORNEY OF RECORD FOR APPELLANT

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

TABLE OF AUTHORITIES .................................................................................. vi

STATEMENT REQUESTING ORAL ARGUMENT ........................................... xiii

REFERENCES TO THE RECORD ON APPEAL .............................................. xiv

STATEMENT OF BASIS FOR APPELLATE JURISDICTION .......................... xv

ISSUES PRESENTED ......................................................................................... xvi

STANDARD OF REVIEW .................................................................................. xvii

STATEMENT OF THE CASE ................................................................................ 1

ARGUMENT AND AUTHORITIES ...................................................................... 8

I.      The bankruptcy court erred in counting the Seton vote before it conducted a
        hearing under Bankruptcy Rule 3018(a) to determine whether Seton is even a
        creditor within the meaning of the Bankruptcy Code that would be
        temporarily allowed a claim for voting purposes and the amount of any such
        claim. .......................................................................................................... 9

        A.      Only Holders of Allowed Claims may Vote to Accept or Reject Plan ............. 9

        B.      Seton does not have an Allowed Claim ............................................. 10

        C.      Bankruptcy Court Erred in Counting the Vote of Seton Family of
                Hospitals Without First Conducting a Hearing Under Bankruptcy
                Rule 3018 ............................................................................... 12

II.     The Debtor does not have at least one accepting class of impaired creditors if
        the bankruptcy court counted only the ballots of creditors with valid voting
        claims as required under § 1129(a)(10) to allow a cram down plan to be
        confirmed. ................................................................................. 15

III.    The Plan improperly modifies the Order Approving Sale of Real Estate to
        Avail Healthcare Ventures, LLC Free and Clear of Liens under 11 U.S.C. §
        363(f) to reclassify a portion of the net sale proceeds payable to Whitney
        Bank under that final judgment as "prepaid interest" and to require the
        balance of the proceeds to be applied solely to the outstanding principal
        balance in violation of the doctrine of *res judicata*. ............................ 18

IV.     The bankruptcy court erred in confirming the Plan because the treatment of
        Whitney Bank's secured claim is not fair and equitable and Whitney Bank is
        not provided with the indubitable equivalent of its claim under the Plan ............. 21

V.   The bankruptcy court erred in confirming the Plan because the Plan is not
     feasible and confirmation of the Plan is likely to be followed by the
     liquidation, or need for further financial reorganization of the Debtor. ................... 23

     A.   Standards for Feasibility under Section 1129 .................................................. 23

     B.   Debtor's Plan is Not Feasible ............................................................................ 26

VI.  The bankruptcy court erred in confirming the Plan because the Debtor
     lacked good faith in proposing the Plan and in light of the totality of the
     circumstances surrounding confirmation of the Plan. ............................................... 29

     A.   Standards for Good Faith under Section 1129 ................................................ 29

     B.   Debtor's Plan does not meet the "Good Faith" Requirement of Section
          1129 ...................................................................................................................... 30

PRAYER ...................................................................................................................................... 32

CERTIFICATE OF SERVICE ................................................................................................. 33

APPENDIX TO BRIEF OF APPELLANT ............................................................................. 34

# TABLE OF AUTHORITIES

Page(s)

CASES

*Avery v. Fisher,*
    360 F.2d 719 (5th Cir. 1966) ...................................................................................9

*Beal Bank, S.S.B. v. Way Apts., D.T. (In re Way Apts., D.T.),*
    201 B.R. 444 (N.D. Tex. 1996) ...............................................................................25

*Berkeley Federal Bank & Trust v. Sea Garden Motel and Apts. (In re Sea Garden Motel and Apts.),*
    195 B.R. 294 (D.N.J. 1996) ....................................................................................23

*Canal Place Ltd. Partnership v. Aetna Life Ins. Co. (In re Canal Place Ltd. Partnership),*
    921 F.2d 569 (5th Cir. 1991) .................................................................................25

*Clarkson v. Cooke Sales and Service Co. (In re Clarkson),*
    767 F.2d 417 (8th Cir. 1985) .................................................................................24

*Duggan v. Highland-First Ave. Corp.,*
    25 B.R. 955 (Bankr. C.D. Ca. 1982).......................................................................30

*Fed. Sign v. Tex. S. Univ.,*
    951 S.W.2d 401 (Tex. 1997).....................................................................................12

*Fid. Assurance Ass'n v. Sims,*
    318 U.S. 608 (1943)..................................................................................................31

*Financial Sec. Assurance v. T-H New Orleans Ltd. Partnership (In re T-H New Orleans Ltd. Partnership),*
    116 F.3d 790 (5th Cir.1997) ...................................................................................29

*Futuresource LLC v. Reuters, Ltd.,*
    312 F.3d 281 (7th Cir. 2002) ..................................................................................21

*Garza v. Villarreal,*
    345 S.W.3d 473 (Tex.App.-San Antonio 2011, pet. denied)...................................12

*Good v. RMR Invest., Inc.,*
    428 B.R. 249 (E.D. Tex. 2010).................................................................................8

*Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II),* 994 F.2d 1160 (5th Cir. 1993), *cert. denied,* 510 U.S. 992 (1993) ............................8

*Hernandez v. Commissioner,*
    490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)...........................................................12

*In the Matter of Gardinier,*
    55 B.R. 601 (Bankr. M.D.Fla. 1985) ...............................................................................9, 14

*In re American Family Enters.,*
    256 B.R. 377 (D.N.J. 2000) ...............................................................................................29

*In re Ames,*
    973 F.2d 849 (10th Cir. 1992) ..........................................................................................27

*In re Anderson,*
    52 B.R. 159 (Bankr. D.N.D. 1985) ....................................................................................25

*In re Arnold & Baker Farms,*
    85 F.3d 1415 (9th Cir. 1996) .......................................................................................21, 22

*In re Bashas' Inc,*
    482 B.R. 611 (D. Ariz. 2012) ...........................................................................................12

*In re Baudoin,*
    981 F.2d 736 (5th Cir. 1993) ...........................................................................................19

*In re Bay Area Material Handling,*
    No. 94-15815, 1996 U.S. App. LEXIS 2272 (9th Cir. Jan. 25, 1996)......................................27

*In re Bowman,*
    253 B.R. 233 (8th Cir. BAP 2000)......................................................................................23

*In re Cheatham,*
    78 B.R. 104 (Bankr. E.D.N.C. 1987)...................................................................................24

*In re Coral Petroleum, Inc.,*
    60 B.R. 377 (Bankr. S.D.Tex. 1986) ...............................................................................9, 15

*In re Fisher,*
    242 B.R. 908 (Bankr. E.D. Tex. 1999) .................................................................................20

*In re Fussel,*
    928 F.2d 712 (5th Cir. 1991) ....................................................................................... xvii

*In re Goldstein,*
    114 B.R. 430 (E.D. Pa. 1990) .......................................................................................13, 17

*In re Guilford Telecasters, Inc.,*
    128 B.R. 622 (Bankr. M.D.N.C. 1991)..................................................................................26

*In re Humble Place Joint Venture,*
    936 F.2d 814 (5th Cir. 1991) ...................................................................................26, 31

*In re Investment Company of the Southwest, Inc.,*
    341 B.R. 298 (10th Cir. B.A.P. 2006)......................................................................22, 23

*In re Investors Fla. Aggressive Growth Fund, Ltd.,*
    168 B.R. 760 (Bankr. N.D. Fla. 1994) ...........................................................................24

*In re Keller,*
    157 B.R. 680 (Bankr. E.D.Wash. 1993) .........................................................................22

*In re Lakeside Global Village II, Ltd.,*
    116 B.R. 499 (Bankr. S.D. Tex. 1989) ...........................................................................24

*In re Lincoln Avenue & Crawford's Home for the Aged, Inc.,*
    164 B.R. 600 (Bankr. S.D. Ohio 1994).........................................................................16

*In re Little Creek Dev. Corp.,*
    779 F.2d 1068 (5th Cir. 1986) .................................................................................29, 30

*In re M & S Assocs., Ltd.,*
    138 B.R. 845 (Bankr. W.D. Tex. 1992).....................................................................25, 26

*In re M. Long Arabians,*
    103 B.R. 211 (9th Cir. BAP 1989).........................................................................9, 16, 18

*In re Marin Town Center,*
    142 B.R. 374 (N.D.Cal 1992) .......................................................................................14

*In re Maxcy,*
    45 B.R. 268 (Bankr. D.Mass 1985) ...............................................................................11

*In re Missionary Baptist Found. of Am.,*
    712 F.2d 206 (5th Cir. 1983) ...................................................................................... xvii

*In re Monarch Beach,*
    166 B.R. 428 (C.D.Cal. 1993) .......................................................................................22

*In re Mortgage Inv. Co. of El Paso,*
    111 B.R. 604 (Bankr. W.D. Tex. 1990)..........................................................................30

*In re Murel Holding Corp.,*
    75 F.2d 941 (2nd Cir. 1935)...........................................................................................23

*In re Natural Land Corp.,*
    825 F.2d 296 (11th Cir. 1987) .......................................................................................30

*In re Orosco*,
  77 B.R. 246 (Bankr. N.D.Cal. 1987), *aff'd*, 93 B.R. 203 (9th Cir. BAP 1988)............14, 17, 18

*In re Save Our Springs Alliance, Inc.*,
  632 F.3d 168 (5th Cir. 2011) .................................................................................25, 29

*In re SIS Corp.*,
  120 B.R. 93 (Bankr. N.D. Ohio 1990).................................................................................26

*In re Snider Farms, Inc.*,
  83 B.R. 1003 (Bankr. N.D. Ind. 1988)................................................................................24

*In re Sound Radio, Inc.*,
  93 B.R. 849 (Bankr. D.N.J. 1988), *aff'd in part, remanded in part*, 103 B.R. 521
  (D.N.J. 1989) .................................................................................................................24

*In re Sparks*,
  171 B.R. 860 (Bankr. N.D. Ill. 1994) ..................................................................................22

*In re Tomlin*,
  105 F.3d 933 (4th Cir. 1997) ...............................................................................................20

*In re Transtexas Gas Corp.*,
  303 F.3d 571 (5th Cir. 2002) ...............................................................................................xv

*In re Trevarrow Lanes, Inc.*,
  183 B.R. 475 (Bankr. E.D. Mich. 1995)..............................................................................25

*In re University Commons, L.P.*,
  200 B.R. 255 (Bankr. M.D. Fla. 1996), *reconsideration denied*, 204 B.R. 80 (Bankr.
  M.D. Fla. 1996).....................................................................................................................30

*In re Webb*,
  954 F. 2d 1102 (5th Cir. 1992) ......................................................................................... xvii

*In re Wester*,
  84 B.R. 770 (Bankr. N.D. Fla. 1988)...................................................................................25

*Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler)*,
  106 B.R. 943 (N.D. Tex 1989) ......................................................................................... xvii

*McCormick v. Bank One Leasing Corp. (In re McCormick)*,
  49 F.3d 1524 (11th Cir. 1995) .............................................................................................29

*Met-L-Wood Corp. v. Gekas*,
  861 F.2d 1012 (7th Cir 1986) .......................................................................................19, 21

*Miller v. Nauman (In re Nauman)*,
  213 B.R. 355 (9th Cir. BAP 1997).......................................................................................24

*N. Nat. Gas Co. v. Conoco, Inc.,*
    986 S.W.2d 603 (Tex. 1998)...................................................................................12

*Nichols v. Petroleum Helicopters, Inc.,*
    17 F.3d 119 (5th Cir. 1994) ............................................................................. xvii

*Oppenheimer v. Oldham,*
    178 F.2d 386 (5th Cir. 1949) ...............................................................................22

*Pan Am Corp. v. Delta Air Lines, Inc.,*
    175 B.R. 438 (S.D.N.Y. 1994)...............................................................................24

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint
Venture),*
    995 F.2d 1274 (5th Cir. 1991) .........................................................................9, 15

*Primestone Investment Partners, L.P. v. Vornado PS, L.L.C. (In re Primestone
Investment Partners, L.P.),*
    272 B.R. 554 (D. Del. 2002)..................................................................................30

*Prudential Ins. Co. v. Monnier (In re Monnier Bros.),*
    755 F.2d 1336 (8th Cir. 1985) ..............................................................................24

*Rivet v. Regions Bank of Louisiana, F.S.B.,*
    108 F.3d 576 (5th Cir. 1997) ................................................................................19

*Robinson v. Nat'l Autotech, Inc.,*
    117 S.W.3d 37 (Tex.App.-Dallas 2003, pet. denied)...........................................12

*S&P, Inc. v. Pfeifer,*
    189 B.R. 173 (N.D. Ind. 1995) .............................................................................25

*Sweatman v. Comm. Union Ins. Co.,*
    39 F.3d 594 (5th Cir. 1994) ........................................................................ xviii, 22

*Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.,*
    549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)........................................11

*Travelers Indemnity Co. v. Bailey,*
    557 U.S. 137, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009).........................................20

*United States v. American Bar Endowment,*
    477 U.S. 105, 106 S.Ct. 2426, 91 L.Ed.2d 89 (1986)...........................................12

*University Creek Plaza, Ltd. v. New York Life Ins. Co. (In re University Creek Plaza,
Ltd.),*
    176 B.R. 1011 (S.D. Fla. 1995) ............................................................................30

*Walker v. Loring,*
  89 Tex. 668, 36 S.W. 246 (Tex. 1896) ................................................................12

*Winget v. JP Morgan Chase Bank, N.A.,*
  537 F.3d 565 (6th Cir. 2008) ...........................................................................19

*Zahira Spiritual Trust v. United States,*
  910 F.2d 240 (5th Cir. 1990) ............................................................................12

**STATUTES**

11 U.S.C. §101(5) ...............................................................................................11

11 U.S.C. §101(10) .............................................................................................10

11 U.S.C. § 101(51B) ...........................................................................................3

11 U.S.C. §363(f) ...................................................................................... xvi, 2, 4, 18

11 U.S.C. §501(a) ...............................................................................................10

11 U.S.C. § 502(a) .....................................................................................7, 10, 11, 13

11 U.S.C. § 502(b) ..........................................................................................13, 15

11 U.S.C. § 502(c) ...............................................................................................14

11 U.S.C. § 506(c) .................................................................................................6

11 U.S.C. § 704(5) ...............................................................................................18

11 U.S.C. §1106(a)(1) .....................................................................................18, 31

11 U.S.C. §1107 ..................................................................................................18

11 U.S.C. §1107(a) ..............................................................................................31

11 U.S.C. §§1126(a) .........................................................................................7, 9

11 U.S.C. §1126(c) ...........................................................................................9, 16

11 U.S.C. § 1129(a)(3) ...................................................................................8, 29, 30

11 U.S.C. § 1129 (a)(10) ............................................................................... passim

11 U.S.C. § 1129(a)(11) .............................................................................23, 25, 26, 27

11 U.S.C. § 1129(b)(1) .........................................................................................8

11 U.S.C. § 1129(b)(2)(A) ....................................................................................21

28 U.S.C. § 158(a)(l)...................................................................................................xv

**OTHER AUTHORITIES**

4 COLLIER ON BANKRUPTCY ¶ 502.03[3][d] at 502-32 (rev. 15th ed. 2006) ...................................22

FED. R. BANKR. P. 3018 ...........................................................................................13, 18

FED. R. BANKR. P. 3018(a)....................................................................................... passim

FED. R. BANKR. P. 8013 ................................................................................................ xvii

FED. R. CIV. P. 59 ..........................................................................................................21

FED. R. BANKR. P. 3017 ..................................................................................................13

## STATEMENT REQUESTING ORAL ARGUMENT

Appellant herein requests the Court grant oral argument on the appeal of this matter.

## REFERENCES TO THE RECORD ON APPEAL

The record on appeal is an electronic record and does not have sequentially numbered pages. The references to the record on appeal are therefore separated from text by brackets and are identified as follows:

- **[D.E. __]** refers to the document number entries as shown on the Bankruptcy Court's docket sheet in the bankruptcy case;

- **[C.R. __]** refers to the document designated by Whitney Bank with the designation number identified in its *Designation of Record on Appeal and Statement of Issues on Appeal*;

- **[R.R. at p. __]** refers to transcripts in bankruptcy court designated by Whitney Bank on appeal;

- **[Dx. __]** refers to the exhibit admitted by Whitney Bank (Appellant) at the hearing on the confirmation of the Plan; and

- **[Px. __]** refers to the exhibit admitted by the Debtor (Appellee) at the hearing on the confirmation of the Plan.

## STATEMENT OF BASIS FOR APPELLATE JURISDICTION

Jurisdiction of this appeal is vested in this Court pursuant to 28 U.S.C. § 158(a)(l).  The United States Bankruptcy Court for the Western District of Texas, Austin Division, entered its *Order Confirming Debtor's Second Amended Plan of Reorganization Under Chapter 11, Title 11, United States Code* (the "Confirmation Order") on July 1, 2013.  The Confirmation Order is a final, appealable order.  *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002). Appellant Whitney Bank timely filed a *Notice of Appeal* of the Confirmation Order on July 15, 2013.

## ISSUES PRESENTED

Whitney Bank, successor by merger to Whitney National Bank, individually, and as agent for certain prepetition lenders (collectively "Whitney Bank") presents the following issues in the appeal:

1.    The bankruptcy court erred in counting the vote of Seton Family of Hospitals before it conducted a hearing under Bankruptcy Rule 3018(a) to determine whether Seton Family of Hospitals is even a creditor within the meaning of the Bankruptcy Code that would be temporarily allowed a claim for voting purposes and the amount of any such claim.

2.    The bankruptcy court erred in confirming the Debtor's Second Amended Plan of Reorganization Under Chapter 11, Title 11, United States Code (the "Plan") over Whitney Bank's rejection of the Plan because the Plan did not have at least one accepting class of impaired creditors as required under § 1129(a)(10) to allow a cram down plan to be confirmed if the bankruptcy court counted only the ballots of creditors with valid voting claims.

3.    The bankruptcy court erred in modifying the Order Approving Sale of Real Estate to Avail Healthcare Ventures, LLC Free and Clear of Liens under 11 U.S.C. §363(f), entered on December 17, 2012, to reclassify a portion of the net sale proceeds payable to Whitney Bank under that final judgment as "prepaid interest" and to require the balance of the proceeds to be applied to principal under the confirmed Plan because amendment of the final judgment is barred by the doctrine of *res judicata*.

4.    The bankruptcy court erred in confirming the Plan because the treatment of Whitney Bank's secured claim is not fair and equitable and Whitney Bank is not provided with the indubitable equivalent of its secured claim under the Plan.

5.      The bankruptcy court erred in confirming the Plan because the Plan is not feasible and confirmation of the Plan is likely to be followed by the liquidation, or need for further financial reorganization of the Debtor.

6.      The bankruptcy court erred in confirming the Debtor's Plan because the Plan shifts the risk of failure to Whitney Bank, Debtor's secured creditor.

7.      The bankruptcy court erred in confirming the Plan because the Debtor lacked good faith in proposing the Plan and in light of the totality of the circumstances surrounding the confirmation of the Plan.

## STANDARD OF REVIEW

In reviewing a decision of the bankruptcy court, this court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *See In re Webb,* 954 F. 2d 1102, 1103-04 (5th Cir. 1992).

The bankruptcy court's legal conclusions are subject to *de novo* review. *Nichols v. Petroleum Helicopters, Inc.,* 17 F.3d 119, 122 (5th Cir. 1994); *In re Fussel,* 928 F.2d 712, 715 (5th Cir. 1991).  "De novo" review requires this Court "to make a judgment independent of the bankruptcy court without deference to that court's analysis and conclusions." *Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler),* 106 B.R. 943, 952 (N.D. Tex 1989).

Findings of fact, whether based on oral or documentary evidence, are only set aside if they are clearly erroneous. *See* FED. R. BANKR. P. 8013; *see also Herby's Foods, Inc.,* 2 F.3d 128, 130-131 (5th Cir. 1993).  A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *In re Missionary Baptist Found. of Am.,* 712 F.2d 206, 209 (5th Cir. 1983) (*quoting U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

Mixed questions of law and fact are subject to *de novo* review. *Sweatman v. Comm. Union Ins. Co.*, 39 F.3d 594, 600 (5th Cir. 1994).

In this case, the bankruptcy court made no specific findings in overruling Whitney Bank's objections in the Confirmation Order, and held that the Plan meets all the requirements of §1129 of the Bankruptcy Code. Accordingly, Whitney Bank asserts that because the bankruptcy court made no specific factual findings in overruling Whitney Bank's objections and holding that the Plan satisfied Section 1129, Whitney Bank asserts that the appropriate standard of review as to all issues on appeal should be *de novo* by this Court.

## STATEMENT OF THE CASE

**A.    Nature of Appeal**

This appeal presents the Court with novel issues of first impression in this Circuit pertaining to the confirmation of a "cram down" plan of reorganization that hinges on the validity of a single vote of Seton Family of Hospitals ("Seton") whose "contingent and unliquidated claim" against the Debtor is based on an unfulfilled five year old charitable pledge to a related entity, Seton Hays Foundation.

If Seton is not a creditor of the Debtor within the meaning of the Bankruptcy Code, then it was not entitled to vote on the proposed plan and its vote should not have been counted. Without Seton's vote, the Debtor would not be entitled to a "cram down" plan of reorganization because no class of impaired creditors would have voted in favor of the proposed plan. Notwithstanding the fact that the Debtor's eligibility to confirm the "cram down" plan rests on whether Seton's vote should be counted, the bankruptcy court confirmed the "cram down" plan over Whitney Bank's objections without first determining if Seton is a creditor of the Debtor within the meaning of the Bankruptcy Code or if Seton would be temporarily allowed to vote under Bankruptcy Rule 3018(a) and the amount of any such claim.

The is an appeal from the bankruptcy court's *Order Confirming Debtor's Second Amended Plan of Reorganization Under Chapter 11, Title 11, United States Code* (the "Confirmation Order"), signed July 1, 2013. The bankruptcy court confirmed the Debtor's Second Amended and Modified Plan of Reorganization (the "Plan") over Whitney Bank's objections that the Plan did not comply with all of the requisite provisions of § 1129 of the Bankruptcy Code, and that no class of impaired creditors voted in favor of the Plan because the Seton vote cannot be counted as Seton was not a creditor of the Debtor and did not have an allowed claim.

Specifically, the Confirmation Order should be reversed because:

- The bankruptcy court erred in counting the Seton before it conducted a hearing under Bankruptcy Rule 3018(a) to determine whether Seton is even a creditor within the meaning of the Bankruptcy Code that would be temporarily allowed a claim for voting purposes and the amount of any such claim;

- The Plan does not have at least one accepting class of impaired creditors if the bankruptcy court counted only the ballots of creditors with valid voting claims as required under § 1129(a)(10) to allow a cram down plan to be confirmed;

- The Plan improperly modifies the Order Approving Sale of Real Estate to Avail Healthcare Ventures, LLC Free and Clear of Liens under 11 U.S.C. § 363(f) to reclassify a portion of the net sale proceeds paid to Whitney Bank under that final judgment as "prepaid interest" and to require the balance of the proceeds to be applied solely to the outstanding principal balance in violation of the doctrine of *res judicata*;

- The Plan is not "fair and equitable" as to Whitney Bank's secured claim and Whitney Bank is not provided the indubitable equivalent of its claim under the Plan;

- The Plan is not feasible and is likely to be followed by liquidation or the need for further financial reorganization before the Plan payments will all be satisfied as the Debtor has no income stream or other source of funds other than speculative future sales of real estate to make payments under the Plan; and

- The Debtor did not act in good faith in proposing the Plan and in light of the totality of the circumstances surrounding the confirmation of the Plan.

**B.**    **Course of Proceeding, Disposition in the Court Below, and Statement of Facts**

The Debtor owned approximately 50.174 acres of land in "The Village at Kyle" retail center development located in Kyle, Texas (the "Property") in August of 2012 which it valued at $18,400,000 as of August 12, 2012. [D.E. 50 at p.6]. The Property serves as collateral to Whitney Bank's pre-petition claim in the amount of $14,330,445.58 against the Debtor arising

under certain loan documents between the Debtor and Whitney Bank (collectively the "Loan Documents").[1]

The indebtedness to Whitney Bank matured on January 2, 2012. [Dx. 6 at p. 2]. The Debtor defaulted under the terms of the Loan Documents and faced a foreclosure sale of the Property scheduled on September 4, 2012. [Dx. 10]. To stop the foreclosure sale, on August 31, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. [R.R. 99:18-21]. On November 9, 2012, the bankruptcy court designated the Debtor as a single asset real estate debtor pursuant to 11 U.S.C. § 101(51B). [C.R. 9]

The Debtor filed its Schedules and Statement of Financial Affairs on September 14, 2012. [C.R. 8]. In its Schedules, the Debtor listed the value of the Property to be $18,400,00.00, Whitney Bank's secured claim at $13,793,058.37, and total unsecured claims (not counting the unpaid charitable pledge) to be $6,464.06. [C.R. 8 at Sch. A, D and F]. Whitney Bank filed a Proof of Claim on January 4, 2013. [C.R. 25]. Seton Family of Hospitals filed a Proof of Claim on December 18, 2012 which it amended on January 15, 2013. [C.R. 25].

Shortly after the filing of its bankruptcy petition, Debtor requested approval to sell a portion of the Property free and clear of liens to Bridgestone Retail Operations, LLC ("Bridgestone") for $845,000.00. [C.R. 27]. The Bridgestone sale contract was fully executed on October 19, 2010, and the Debtor represented to the Court that the sale would close before year

---

[1] On or about October 31, 2007, Debtor executed and delivered a First Amended and Restated Construction Loan Agreement payable to Whitney Bank, with an initial Phase One loan amount of $58,360,000.00. [Dx. 1]. In connection therewith, Debtor also executed and delivered five (5) Multiple Advance Term Promissory Notes to the various pre-petition lenders represented by Whitney Bank in the aggregate original principal amount of up to $58,360,000.00.[Dx. 11-16].The Loan Agreement has been amended on more than one occasion to reduce the aggregate available loan amount.[Dx. 3 and 5]. On or about September 28, 2010, Debtor and Whitney Bank entered into a Modification Agreement whereby the maturity date of the Loan Agreement was extended to January 2, 2012. [Dx.6]. The Loan and Notes are secured by a Deed of Trust dated to be effective September 28, 2007 (the "Deed of Trust"), an Assignment of Leases and Rents, and an Assignment of Reimbursement Contract and Proceeds, granting Whitney Bank a purchase money first priority lien against the Property, and all rent and proceeds generated therefrom.[Dx. 2, 7 and 8].

3

end of 2012. [D.E. 24 at p. 2]. Based upon the Debtor's representations, the Court approved the Debtor's motion to sell a portion of the Property to Bridgestone. [C.R. 28].

Since the filing of the bankruptcy petition, the Debtor's condition only worsened as the Debtor did not have sufficient funds to pay the 2012 property taxes. [R.R. 97:9-15]. Whitney Bank was required to pay the 2011 property taxes because the Debtor did not generate sufficient income to pay the property taxes on the Property, much less service the mortgage debt and pay operating expenses. [R.R. 97:25-98:4]. The Debtor also failed to make any payment to Whitney Bank until the Bridgestone sale closed on or about March 26, 2013. [Dx. 17]. At closing, pursuant to the *Order Approving Sale of Real Estate to Bridgestone Retail Operations, LLC Free and Clear of Liens Under 11 U.S.C. §363(f),* signed on December 17, 2012 (the Bridgestone Sale Order"), Whitney Bank received $801,862.19 in net sale proceeds in exchange for its release of lien against the sold tract. [Dx. 17 at p.3].

On December 17, 2012, the Debtor also obtained an *Order Approving Sale of Real Estate to Avail Healthcare Ventures, LLC Free and Clear of Liens under 11 U.S.C. § 363(f)* (the "Avail Sale Order") to sell a portion of the Property for the amount of $1,533,312.00. [C.R. 11]. As with the Bridgestone Sale Order, Debtor was directed to pay "the proceeds (net only of allowable closing costs and commissions as set out in the Contract) from the Sale of the Property first for payment of 2012 and Seller's pro-rated 2013 taxes (if applicable) on the entirety of Lot 6, Block A, then to the Debtor's secured lender(s) in order of priority upon the Closing without further order of this Court, in light of the release of Interests against the Property at Closing of the Sale, such payment shall not be subject to avoidance, surcharge or disgorgement." [C.R. 11 at ¶12].

On November 29, 2012, Debtor filed its Chapter 11 Plan and Disclosure Statement. [D.E. 32 and 33]. A hearing on the Disclosure Statement was held on January 14, 2013. On January 21,

2013, Debtor filed an Amended Disclosure Statement and Amended Plan of Reorganization wherein it proposed to pay Whitney Bank's secured claim over a 5 year term, interest only quarterly payments at 4% per annum, and "net proceeds from sale of portions of the Property above a rolling reserve for one year's interest, insurance, taxes, and a contingency reserve" at the closing of any such sale. [Px. 3; C.R. 12 at art. 4.1.3]. If no sale occurs, the Debtor failed to identify the source of any income to fund the Plan. The Bankruptcy Court approved the Amended Disclosure Statement on January 22, 2013. [C.R. 29]

Whitney Bank raised numerous objections to the proposed Amended Plan of Reorganization on the grounds that proposed reorganization plan failed to comply with the requisite provisions of the Bankruptcy Code, including but not limited to, the proposed plan was not feasible, not fair and equitable with respect to Whitney Bank's claim as it did not provide it with the indubitable equivalent of its secured claim, and the plan was not proposed in good faith, and therefore confirmation of the proposed reorganization plan should be denied. [C.R. 13]. The day before the confirmation hearing, Debtor filed its First Modification to Proposed Amended Plan of Reorganization on April 3, 2013, wherein it modified the proposed treatment of Whitney Bank's secured claim to provide for Whitney Bank retaining its *"lien on the collateral currently pledged to Lender, though Debtor shall be permitted to use the proceeds from sales tax incentive programs to make payments for priority tax claims and unsecured creditors."* [C.R. 14 at ¶2]. The plan modification also altered the treatment of "Seton Hospital" to provide for payments totaling $250,000 during 16 quarters with balance payable after Whitney Bank is paid in full. [C.R. 14 at p.2].

The Confirmation Hearing occurred on April 4, 2013 and April 16, 2013. In between the hearing dates, on April 8, 2013, Debtor filed a Second Modification to Proposed Amended Plan

of Reorganization (the "Second Modification") that again altered the treatment of Whitney Bank's secured claim under the proposed plan and for the first time, stated as follows:

> With respect to the pending sale to Avail, Debtor will remit the net sale proceeds to Lender, provided, however, that a portion of the proceeds necessary to pay one-year's interest (at the rate determined by the Court) shall be credited as prepaid interest.

[C.R. 15 at p.2]. Whitney Bank filed its Supplemental Objection to Amended Plan of Reorganization on the grounds that the proposed amendment of the Avail Sale Order by the Second Modification is barred by *res judicata*. [C.R. 16]. On the morning of the reconvened Confirmation Hearing on April 16, 2013, Debtor filed its Amended Second Modification to Proposed Amended Plan of Reorganization that again modified the treatment of Whitney Bank in the event the bankruptcy court did not allow the amendment of the final Avail Sale Order to provide:

> To the extent that the Court does not allow this process, interest will accrue at the rate determined by the Court until the next sale, at which time the accrued interest will be paid. Such payment shall occur on or before December 31, 2013.

[C.R. 17]. At the Confirmation Hearing, Whitney Bank objected to the Seton vote on the proposed Plan and argued that the Debtor is not entitled to a cram down over Whitney Bank's objection because the Seton vote should not be counted for purposes of confirmation of the Plan as it is not a creditor entitled to vote on the Plan. [R.R. 109:5-14]. Whitney Bank filed a written Objection to Claim of Seton Family of Hospitals prior to confirmation and reasserted that Seton is not a creditor within the meaning of the Bankruptcy Code entitled to vote on the Plan and that the bankruptcy court should not consider its vote with respect to the Plan. [C.R. 19 at p. 6]. The bankruptcy court did not conduct a hearing under Bankruptcy Rule 3018(a), or estimate the claim under § 506(c) of the Bankruptcy Code, to determine whether Seton was eligible to vote and the amount of its claim, if any, prior to issuing its order confirming the Debtor's plan of

reorganization despite Whitney Bank's objection and the Debtor itself stating the "Seton Hospital" claim is contingent and unliquidated in its Schedules and will be considered "Disputed" pursuant to the Disclosure Statement and Plan. [Px. 3 at art. 6.05].

On April 25, 2013, after the Confirmation Hearing, the Debtor filed its Second Amended Second Modification to Proposed Amended Plan of Reorganization, amending the treatment of the Priority Tax Claim (Class II) and of Whitney Bank's Secured Claim (Class III), to require Whitney Bank to release its lien on any portion of the Property sold if the gross sale price is at least 85% of the appraised value of the tract obtained by the Debtor, and to add some detail concerning how the one year rolling reserve is to be calculated. [C.R.4]. On June 14, 2013, the bankruptcy court issued its Consolidated Opinion Regarding Confirmation of Plan of Reorganization and Related Motions without any determination of the merits of the claim of Seton or whether it is even a creditor within the meaning of the Bankruptcy Code. [C.R. 22]. The bankruptcy court instead ruled that "Seton Hospital held an 'allowed claim' under § 502(a) of the Bankruptcy Code at the time of Plan voting and therefore was entitled to vote on the Plan under § 1126(a) of the Bankruptcy Code." [C.R. 22 at p.38].

Debtor filed its Second Amended and Modified Plan on June 28, 2013, which the bankruptcy court confirmed. [C.R. 23]. The confirmed "cram down' Plan in essence forces Whitney Bank to make a five year loan in the approximate amount of $13,000,000 to a single asset real estate Debtor with no employees, no ongoing business operations, no cash flow or other sources of income sufficient to pay the property taxes, debt service or insurance on the Property other than through speculative future real estate sales to unnamed buyers at speculative prices on undetermined future dates. Whitney Bank timely filed its Notice of Appeal on July 15, 2013. [C.R. 24].

7

## ARGUMENT AND AUTHORITIES

To confirm a plan of reorganization, a debtor must demonstrate that it has satisfied the sixteen subsections of Section 1129(a) of the Bankruptcy Code by a preponderance of the evidence. *See Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II),* 994 F.2d 1160, 1165 (5th Cir. 1993), *cert. denied,* 510 U.S. 992 (1993). If an impaired class of creditors votes to reject a plan, thereby causing the plan to fail § 1129(a)(8), a plan still may be confirmed through a "cram down" under §1129(b), but only if the plan meets all subsections of Section 1129(a), other than Section 1129(a)(8), and "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." See 11 U.S.C. § 1129(b)(1); *see also Good v. RMR Invest., Inc.,* 428 B.R. 249, 253-54 (E.D. Tex. 2010). If a "cram down" is required and the requisite provisions of § 1129(a) are not met, then the bankruptcy court cannot confirm the plan. A "cram down" was required in this bankruptcy case because Whitney Bank rejected the Plan.

The Bankruptcy Code requires that for a bankruptcy court to confirm a plan "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance by any insider." 11 U.S.C. § 1129 (a)(10). In this case, there were two classes of impaired creditors, Whitney Bank's secured claim (Class III) and the general unsecured creditor claims (Class IV). Whitney Bank voted to reject the Plan. [Px. 1]. Therefore, the bankruptcy court can only confirm the "cram down" Plan if Class IV accepted the Plan. The only vote in favor of the Plan was submitted by Seton. [Px.1].  As discussed below, if the bankruptcy court erred in counting the Seton vote in favor of the Plan, the class of general unsecured creditor (Class IV) also rejected the Plan and the any further analysis of the Plan is unnecessary because the Plan fails as a matter of law under 11 U.S.C. § 1129(a)(10).

8

I.     **The bankruptcy court erred in counting the Seton vote before it conducted a hearing under Bankruptcy Rule 3018(a) to determine whether Seton is even a creditor within the meaning of the Bankruptcy Code that would be temporarily allowed a claim for voting purposes and the amount of any such claim.**

A.     *Only Holders of Allowed Claims may Vote to Accept or Reject Plan*

The purpose of the voting requirements under the Bankruptcy Code is to protect the rights of legitimate creditors to determine the outcome of the Plan. *In re Coral Petroleum, Inc.*, 60 B.R. 377, 383 (Bankr. S.D.Tex. 1986). Pursuant to Sections 1126(a) and (c), only the holders of allowed claims may accept or reject a proposed plan. 11 U.S.C. §§1126 (a) and (c); *see also Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1281 (5th Cir. 1991); *Avery v. Fisher*, 360 F.2d 719, 725 (5th Cir. 1966); *see also Coral Petroleum*, 60 B.R. at 382. "Acceptances, therefore, are to be computed only on the basis of proofs of claim ... actually filed and allowed in the proceeding." *Avery, 360 F.2d at 725, citing* 6 Collier, Bankruptcy ¶7.36, at 2099 (14th ed. 1964).

A claim which is disputed on which there is any objection is not deemed allowed and ordinarily would not be permitted to vote on a plan of reorganization. *See In re M. Long Arabians*, 103 B.R. 211, 215 (9th Cir. B.A.P. 1989); and *In the Matter of Gardinier*, 55 B.R. 601, 604 (Bankr. M.D.Fla. 1985). Under the Disclosure Statement approved by the bankruptcy court, a "Disputed" claim is one which is listed in the Debtor's Schedules as "contingent or unliquidated." [Dx. 2 at art. 1.26]. The Debtor listed the "Seton Hospital" claim in its bankruptcy schedules as "contingent and unliquidated." [C.R. 8, Sch. F]. When asked what the claim was contingent upon, Scott Deskins ("Deskins"), the Debtor's principal, stated unabashedly that the claim was contingent on the confirmation of the Plan; and if the Plan was not confirmed, the Debtor had no intention of paying the claim because as a charitable donation it has no legal obligation to pay it. [R.R. 99:9-17]. The Debtor admitted under cross-examination that Seton

would not be able to sue to collect the unfulfilled charitable pledge because it was unenforceable under Texas law. [R.R. 135: 9-15]. The Disclosure Statement makes clear that "[u]ntil a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan." [Px. 3 at art. 6.05].

In addition to the Debtor designating the "Seton Hospital" claim as "contingent and unliquidated," and thus characterizing the Seton claim as "disputed," at the confirmation hearing, Whitney Bank objected to the Seton claim and argued that the vote should not be counted because Seton was not a creditor, an equity security holder or an indenture trustee holding an allowed claim against the Debtor. [R.R. 109:5-14]. Whitney Bank filed its Objection to Claim of Seton Family of Hospitals on April 23, 2013. [C.R. 19]. Given Seton's claim was objected to by Whitney Bank and disputed by the Debtor, it cannot be considered "deemed" allowed under § 502(a).

### B. Seton does not have an Allowed Claim

Only a creditor, indenture trustee or equity security holder of the Debtor may file a proof of claim in the bankruptcy case. See 11 U.S.C. §501(a). Seton is not an indenture trustee or equity security holder of the Debtor. A creditor of the Debtor is an entity that has a claim against the Debtor that arose at the time or before the petition date. 11 U.S.C. §101(10). Therefore, in order to have an allowed claim in the case, it must establish itself as a creditor of the Debtor.

A claim under the Bankruptcy Code means –

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

See 11 U.S.C. §101(5). A claim is not allowed if such claim is unenforceable against the Debtor under any agreement or applicable law. 11 U.S.C. §502(a). The United States Supreme Court held that a "claim" under the Bankruptcy Code refers to a right of payment recognized under state law. *Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 1205, 167 L.Ed.2d 178 (2007). A bankruptcy court must disallow a claim that is not enforceable against the Debtor under applicable state law. See *In re Maxcy*, 45 B.R. 268, 270 (Bankr. D.Mass 1985).

The Debtor is correct that it has no legal obligation to pay a charitable pledge and such a pledge is unenforceable under Texas law.[2] The pledge form on its face states as follows:

> *"I/We understand that The Seton Hays Foundation will use my gift to help defray the cost to plan, construct, equip facilities and/or fund on-going programs at Seton. The Seton Hays Foundation affirms that no goods or services were provided to the donor in exchange for their contribution. Please consult your tax advisor as to the deductibility of your donation."*[3]

Therefore, the express terms of the pledge state it is a "gift" for which no consideration was given in exchange.[4] [C.R. 19 at p. 11]. The Texas Supreme Court has adhered to the maxim that

---

[2]    Not surprisingly, after Deskins testified that the Debtor had no legal obligation to pay the charitable pledge, Seton agreed on the record to accept a material modification of the treatment of its claim under the Plan, i.e. instead of being paid in 16 equal quarterly installments like the other Class IV claimants, it agreed to disparate treatment whereby only half of its claim would be paid in quarterly payments with a balloon payment after Whitney Bank is paid in full. [R.R. 136:10-24].

[3]    The Seton Hays Foundation is a Texas non-profit corporation, charter no. 800984513, was formed May 28, 2008. The Daughters of Charity Health Services of Austin d/b/a Seton Family of Hospitals is a separate Texas non-profit corporation, charter no. 919001, formed on April 5, 1900. The pledge form on its face states the payment is to be made to "The Seton Hays Foundation." Seton Family of Hospitals lacks standing to file a claim against the Debtor in the bankruptcy case based on a pledge to The Seton Hays Foundation, a separate non-profit corporation. This is an issue that the bankruptcy court should have been resolved before the Seton vote was counted.

[4]    Indeed, the "*sine qua non* of a charitable contribution is a transfer of money or property without adequate consideration." *United States v. American Bar Endowment,* 477 U.S. 105, 118, 106 S.Ct. 2426, 2433, 91 L.Ed.2d 89 (1986). Even assuming some value was received by Debtor, it was not in exchange for the charitable contribution. *Quid pro quo* is inconsistent with charitable contribution. See *Hernandez v. Commissioner,* 490 U.S. 680, 691, 109 S.Ct. 2136, 2144-45, 104 L.Ed.2d 766 (1989).

"a man must be just before he is generous." *Walker v. Loring*, 89 Tex. 668, 673, 36 S.W. 246, 247 (Tex. 1896); *Zahira Spiritual Trust v. United States*, 910 F.2d 240, 249 (5th Cir. 1990)(refusing to recognize spiritual fulfillment as fair consideration for a transfer to charity because "[t]he relevant inquiry ...is whether the debtor received monetary, not spiritual, consideration.").

A contract lacking consideration is unenforceable under Texas law. *Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex.App.-San Antonio 2011, pet. denied). Consideration is a bargained-for exchange of promises. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997). Consideration consists of either a benefit to the promisor or a detriment to the promisee. *N. Nat. Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998); *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 41 (Tex.App.-Dallas 2003, pet. denied). A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Fed. Sign*, 951 S.W.2d at 409. Seton's claim is not an enforceable contract because it was not supported by valid consideration. The law is clear that a claim against the bankruptcy estate based upon a charitable pledge that is not supported by consideration should be disallowed. *See In re Bashas' Inc*, 482 B.R. 611, 612 (D. Ariz. 2012).

### C. Bankruptcy Court Erred in Counting the Vote of Seton Family of Hospitals Without First Conducting a Hearing Under Bankruptcy Rule 3018

The bankruptcy court erred in counting the ballot of Seton because it is not a creditor of the bankruptcy estate within the meaning of § 502 of the Bankruptcy Code. While a claim is deemed allowed unless a party in interest objects under Section 502(a). Section 502(b) provides that once an objection to a claim is made, the bankruptcy court is to determine the amount of the claim after notice and hearing. 11 U.S.C. § 502(b). Whitney Bank objected to the vote and claim of Seton prior to confirmation of the Plan. [R.R. 109:5-140; C.R. 19].

Section 502(b) is supplemented by Bankruptcy Rule 3018(a), under which a disputed claim may be temporarily allowed for purposes of voting in the amount the bankruptcy court deems proper after notice and a hearing. Bankruptcy Rule 3018(a) provides as follows:

> (a) ENTITIES ENTITLED TO ACCEPT OR REJECT PLAN; TIME FOR ACCEPTANCE OF REJECTION. A plan may be accepted or rejected in accordance with §1126 of the Code within the timed fixed by the court pursuant to Rule 3017. … Notwithstanding an objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

At least one bankruptcy court has held that it is appropriate to delay confirmation until the bankruptcy court determines the merits of the objection to the creditor's claim at a hearing scheduled in the near future particularly where a disputed vote could control the outcome of the balloting. *See In re Goldstein*, 114 B.R. 430, 431 (E.D. Pa. 1990). That is what should have been done in this case.

After Whitney Bank objected to the vote and claim of Seton, neither the Debtor, nor Seton, requested a temporary allowance of its claim for purposes of voting, and thus to participate in the balloting process under Bankruptcy Rule 3018(a). Once Whitney Bank objected to the Seton claim, at a minimum, the bankruptcy court was required to make its determination pursuant to Bankruptcy Rule 3018(a) of the amount, if any, for which the claim of Seton should be allowed for purposes of voting. *See In re Marin Town Center*, 142 B.R. 374, 379 (N.D.Cal 1992).

The bankruptcy court, however, appears to have decided that Whitney Bank did not object soon enough. Whitney Bank objected at the Confirmation Hearing and filed a written objection to the claim two months before the bankruptcy court ruled on the confirmation of the Plan. No deadline is established by the Bankruptcy Code or Rules for filing of objections to claims, and nothing in the Bankruptcy Code or Rules expressly prohibits the filing of an

objection to a claim after a ballot has been filed. *See In re Orosco*, 77 B.R. 246, 249 (Bankr. N.D.Cal. 1987), *aff'd*, 93 B.R. 203 (9th Cir. BAP 1988). In fact, the only deadline set for filing objections to claims is contained in the Plan which provides for objections to be made no later than 60 days after its Effective Date. [C.R. 32 at art. 7.01].

The bankruptcy court also ignored the Disclosure Statement it approved that states "[u]ntil a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. [Px. 3 at art. 6.05]. A "Disputed" claim is one which is listed in the Debtor's Schedules as "contingent or unliquidated." [Dx. 2 at art. 1.26]. The Debtor listed the "Seton Hospital" claim as "contingent and unliquidated" in its Schedules. [C.R. 8 at 10]. Section 502(c) of the Bankruptcy Code provides that for purposes of allowance, any contingent or unliquidated claim shall be estimated if fixing or liquidating the claim would unduly delay the administration of the estate. 11 U.S.C. §502(c); *see also In the Matter of Gardinier, Inc.*, 55 B.R. at 604. Despite the mandatory language of the statute, the bankruptcy court did not liquidate or otherwise estimate the contingent or unliquidated claim of Seton prior to counting its vote in favor of the Plan.

The bankruptcy court had ample time to conduct such a hearing as 60 days past from the time Whitney Bank first objected to the vote and claim of Seton until the bankruptcy court issued its Consolidated Opinion Regarding Confirmation of Plan of Reorganization and Related Motions on June 14, 2013. [C.R. 22]. The bankruptcy court did not enter its Confirmation Order until July 1, 2013. [C.R. 23]. Only after the appeal the Confirmation Order did the bankruptcy court set a hearing for Whitney Bank's Objection to Claim of Seton Family of Hospitals on August 29, 2013. [C.R. 1 at 3].[5] On that date, the bankruptcy court conducted a hearing on the

---

[5]      Whitney Bank has sought leave to supplement the record on appeal to include the transcript of the hearing on the Objection to Claim of Seton Family of Hospitals as the record will show that Seton

objection to the Seton claim but has not yet ruled on the issue whether Seton is even a creditor of the Debtor, much less whether it has an allowed claim in any amount. To date, the bankruptcy court has not ruled on the merits of the Seton claim, thus leaving the issue whether it even had a right to vote on the Plan and the allowed amount of any such claim unresolved. The bankruptcy court's failure to conduct a hearing on the eligibility of Seton to vote on the Plan defeated the very purpose of the voting requirements under the Bankruptcy Code, i.e. to protect the rights of legitimate creditors to determine the outcome of the Plan. *See In re Coral Petroleum, Inc.*, 60 B.R. at 383. The bankruptcy court's failure to conduct a hearing under §§ 502(b) or (c), or under bankruptcy Rule 3018(a) constitutes error.

**II.     The Debtor does not have at least one accepting class of impaired creditors if the bankruptcy court counted only the ballots of creditors with valid voting claims as required under § 1129(a)(10) to allow a cram down plan to be confirmed.**

Because Seton does not occupy the position of either a creditor, an equity security holder or an indenture trustee holding an allowed claim against the Debtor, it does not hold a voting interest in the bankruptcy case and is not entitled to vote on a plan of reorganization. *See In re Greystone III Joint Venture, 995 F.2d at 1281* (rejecting votes of tenants because they were not "creditors" under 502(a) with allowed claims because leases were not rejected), *and In re Lincoln Avenue & Crawford's Home for the Aged, Inc.*, 164 B.R. 600, 601 (Bankr. S.D. Ohio 1994)(rejecting votes of members of the Board of Trustee of non-profit corporation because not they were "creditors" or interest holders under Bankruptcy Code.). In order to determine whether the Class IV voted to accept the Plan the bankruptcy court should not have considered the Seton vote and the Court must look at how the other unsecured creditors in Class IV voted. *See In re M. Long Arabians,* 103 B.R. at 216.

---

was not even the party entitled to receive the charitable pledge. The Seton Hays Foundation, a separate and distinct nonprofit corporation, was the party to whom the pledge was made.

For a class to approve the Plan, at least one-half of the claims holding two-thirds of the total dollar amount must vote in favor. 11 U.S.C. §1126(c). Section 1129(a)(8) deals with acceptance of the Plan and provides that:

> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> (8) With respect to each class of claims or interests-
> (A) such class has accepted the plan; or
> (B) such class is not impaired under the plan.

A creditor who does not vote on a plan does not accept the plan if it is impaired. *In re M. Long Arabians*, 103 B.R. at 215. The holder of a claim must affirmatively accept the plan. 11 U.S.C. § 1126(c). Disregarding the Seton vote, no other creditor in Class IV voted to accept the Plan so that class cannot be found to have accepted the Plan. For such reason, the bankruptcy court erred in confirming the Plan under the "cram down" provision over Whitney Bank's objection because no impaired class of creditors voted in favor of the Plan. See 11 U.S.C. § 1129(a)(10).

As the bankruptcy case is currently postured, the bankruptcy court could eventually decide that Seton did not in fact have an allowed claim against the Debtor yet the entire confirmation of the Plan was based upon the its single vote. In light of the fact the disputed vote of Seton controls the outcome of the balloting and the Debtor's eligibility to the "cram down" Plan, the bankruptcy court erred in not delaying confirmation to determine the merits of the objection to its claim. *See In re Goldstein*, 114 B.R. at 431.

To the extent the Debtor argues that Whitney Bank waived its objection to the Seton claim, such an argument has been rejected by the only bankruptcy court that has addressed the issue. *See In re Orosco*, 77 B.R. at 249-250. In *Orosco*, the bankruptcy court rejected the argument that failure to object to a claim until after a ballot is filed constitutes a waiver for a number of sound reasons.

First, the bankruptcy court noted that §§ 502 and 1126 contemplate that a plan not be rejected or confirmed on the basis of disputed claims which are not deemed allowed, except to the extent that such claims have been temporarily allowed pursuant to Bankruptcy Rule 3018(a). *Id.* at 249. To hold otherwise could subject debtors and holders of allowed claims to substantial and irreparable prejudice as "a variety of objectionable claims, including claims that have been paid, or which are invalid on their face, or which are grossly inflated as to amount, or which were filed in respect of non-existent obligations" would be allowed to vote on a proposed plan and the "fate of the plan could be left to the will of the holder of a paid, inflated or fabricated claim, while the remaining parties in interest with a legitimate financial stake in the outcome of the balloting would be deprived of a practical remedy." *Id.* at 249. The concern raised by *Orosco* that the fate of a plan could be left to the will of a party with no stake in the case is precisely what has occurred in the case at hand.

Second, "a rule requiring parties in interest to review and object to claims before the balloting in order to avoid a waiver of all potential objections would not be conducive to the efficient administration of the bankruptcy case." *Id.* As the *Orosco* court stated, such a rule would compel parties in interest to review claims and file objections before it is known whether any distributions can be made in respect of such claims or whether the votes by holders of claims potentially in dispute will affect the outcome of the balloting and subject to estate to an unnecessary risk of needless expense. *Id.* "It would also conflict with the policy embodied in Bankruptcy Code Section 704(5) (which is applicable in Chapter 11 cases pursuant to Section 1106(a)(1)), under which a Trustee is required to examine proofs of claim and object to the allowance of improper claims only 'if a purpose would be served.'" *Id.* at 250. Section 704(5) applies to a debtor-in-possession in a Chapter 11 case pursuant to 11 U.S.C. §1107.

The Seton claim was not deemed allowed because the Debtor listed the claim as contingent and unliquidated on its Schedules, and the Disclosure Statement approved by the bankruptcy court specifically provides that until a "Contingent Claim" becomes an allowed claim or is disallowed, the claim will be treated as a Disputed Claim for all purposes under the Plan. [Px. 3; art. 6.05]. In addition, Whitney Bank objected to the Seton claim prior to confirmation of the Plan. Seton should not have been allowed to vote on the Plan because it did not seek a temporary allowance of its disputed claim under Bankruptcy Rule 3018. *See In re M. Long Arabians,* 103 B.R. at 216. At a minimum, the Seton claim should not have been considered allowed for voting purposes until the bankruptcy court held a hearing on the claim under Bankruptcy Rule 3018.

**III. The Plan improperly modifies the Order Approving Sale of Real Estate to Avail Healthcare Ventures, LLC Free and Clear of Liens under 11 U.S.C. § 363(f) to reclassify a portion of the net sale proceeds payable to Whitney Bank under that final judgment as "prepaid interest" and to require the balance of the proceeds to be applied solely to the outstanding principal balance in violation of the doctrine of *res judicata.***

On December 17, 2012, the Court entered the Avail Sale Order directing Debtor to pay the proceeds (net only allowable closing costs and commissions as set out in the Contract) first to 2012 and pro-rated 2013 taxes on entirety of Lot 6, Block A then to Whitney Bank upon the closing without further order of the Court. [C.R. 11; Dx. 22, *Avail Sale Order* at ¶12]. The Avail Sale Order expressly provides that it is a "final and enforceable order immediately upon entry." Avail Sale Order at ¶14. No party timely appealed the Avail Sale Order.

The Fifth Circuit and other circuits have held bankruptcy sale orders to be final orders for *res judicata* purposes. *See In re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993)("Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for *res judicata* purposes."); *Rivet v.*

*Regions Bank of Louisiana, F.S.B.*, 108 F.3d 576, 588 (5th Cir. 1997) ("An order by a bankruptcy court authorizing or approving a sale is a final judgment on the merits for res judicata purposes even if the order neither closes the bankruptcy case nor disposes of any claim."); *Met-L-Wood Corp. v. Gekas*, 861 F.2d 1012, 1216 (7th Cir 1986); *and Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008). Therefore, there can be no question that the Avail Sale Order is a final judgment.

Debtor is barred by res judicata from re-litigating the issues pertaining to the manner by which the net proceeds of the Avail Sale were to be distributed to Whitney Bank. The elements of *res judicata* are: (1) the parties in the later action are identical to, or at least in privity with, the parties in the prior action; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Rivet*, 108 F.3d at 586. As in *Rivet*, all four elements beyond peradventure subsist in the instant case.

The argument that the bankruptcy court is in "the best position to interpret its own orders" does not apply to requests to amend final non-appealable judgments. Without question a bankruptcy court retains jurisdiction to interpret its own order to determine whether a party violated the automatic stay order, or whether it dismissed a claim with or without prejudice. *See In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997) (interpreting whether ambiguous dismissal order was with prejudice or without prejudice); *and In re Fisher*, 242 B.R. 908, 911 (Bankr. E.D. Tex. 1999) (interpreting automatic stay order to determine if violated). But that is quite different from modifying a final judgment after the time to appeal has expired. As the United States Supreme Court stated:

> But once the [the orders] became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they become

> res judicata to the "'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" Nevada v. United States, 463 U.S. 110, 130 (1983) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1877)).

*Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009). In *Travelers Indemnity*, the Supreme Court noted that the bankruptcy court explicitly retained jurisdiction over its 1986 Orders to enforce its injunctions and held that a party had a fair opportunity to challenge the subject matter jurisdiction of the bankruptcy court at the time the orders were issued and may not later challenge the bankruptcy court's subject matter jurisdiction by resisting enforcement of the 1986 Orders. *Id.* at 151-153.

In the case at hand, the bankruptcy court did not *sua sponte* interpret its prior order to determine whether it had been violated or to clarify an ambiguity. The Debtor through its proposed plan modification sought to amend the final judgment after Whitney Bank released its liens in exchange for receipt of the net sale proceeds. Debtor's First Modification and Second Modification to Proposed Amended Plan of Reorganization were improperly disguised collateral attacks on the Avail Sale Order that sought to modify the Avail Sale Order after the deadline to appeal had past to allow the Debtor to reclassify a portion of the proceeds as "prepaid interest" to initially "fund" its Plan. *See In re Met-L-Wood Corp.*, 861 F.2d at 1018; *see also, Futuresource LLC v. Reuters, Ltd.,* 312 F.3d 281, 285-286 (7th Cir. 2002).

The issue concerning the application of the net proceeds from the Avail Sale was litigated, or should have been litigated, in connection with the bankruptcy court's approval of the sale. The bankruptcy court had no authority to alter the final judgment with respect to the application of the sale proceeds in exchange for the partial release of lien after the fact. No appeal or other review under Fed. R. Civ. P. 59 or 60 was sought in connection with the Avail

Sale Order.   Unlike the case for objections to claims against a Debtor, there are statutory deadlines for appealing final judgments and § 363 orders. For such reasons, the bankruptcy court erred in amending the Avail Sale Order to reclassify the payments received by Whitney Bank in exchange for its partial release of lien against the sold tract as "prepaid interest" and principal payments and not allow the sale proceeds to be applied to the $845,942.86 in accrued and unpaid interest that was owing to Whitney Bank as of March 28, 2013. [Dx. 17 at 3].

**IV.    The bankruptcy court erred in confirming the Plan because the treatment of Whitney Bank's secured claim is not fair and equitable and Whitney Bank is not provided with the indubitable equivalent of its claim under the Plan.**

To be "fair and equitable" the Plan must satisfy, with respect to Whitney Bank's claim, one of the following three tests:

(1) Whitney Bank is to retain the lien securing its claim and is to receive deferred cash payments with a present value at least equal to the claim;

(2) The Property securing the claim is to be sold and the lien is to attach to the proceeds of the sale; the lien on the proceeds is then to be described in test (1) or (3);

(3) Whitney Bank is to realize the indubitable equivalent of its secured claim.

See 11 U.S.C. § 1129(b)(2)(A); *and In re Arnold & Baker Farms*, 85 F.3d 1415, 1420 (9th Cir. 1996). Indubitable equivalence requires more than the payment of interest; it requires the protection of the creditor's rights "to get his money or at least the property." *See In re Sparks*, 171 B.R. 860, 866 (Bankr. N.D. Ill. 1994) *citing In re Murel Holding Corp.*, 75 F.2d 941, 942 (2nd Cir. 1935). Whether a plan provides a secured creditor with the indubitable equivalent of its claim is a mixed questions of law and fact. *In re Investment Company of the Southwest, Inc.*, 341 B.R. 298, 317 (10th Cir. B.A.P. 2006). Mixed questions of law and fact are subject to de novo review. *Sweatman v. Comm. Union Ins. Co.*, 39 F.3d at 600.

It has always been a fundamental principle of bankruptcy law that valid liens are not impaired in the administration of the estate. 4 COLLIER ON BANKRUPTCY ¶ 502.03[3][d] at 502-32 (rev. 15th ed. 2006); *Oppenheimer v. Oldham*, 178 F.2d 386, 389 (5th Cir. 1949). To the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the "indubitable equivalent" requires that the substitute collateral not increase the creditor's risk exposure. *In re Arnold & Baker Farms*, 85 F.3d at 1422; *In re Keller*, 157 B.R. 680, 683-84 (Bankr. E.D.Wash. 1993); *see also In re Monarch Beach*, 166 B.R. 428, 436 (C.D.Cal. 1993)(fair and equitable prohibits shifting risk of plan failure to the creditor). The Plan is not fair and equitable with respect to Whitney Bank's secured claim because it requires Whitney Bank to partially release its lien on any tract sold, but not receive the net sale proceeds it is entitled to receive under the Deed of Trust. Instead, the Debtor can use Whitney Bank's collateral to "fund" the Plan and to pay other creditors and expenses. The Debtor concedes the Plan does in fact shift the risk of failure on Whitney Bank. [R.R. 134:22-135:5].

The Plan is speculative at best and not feasible on its face as it is contingent entirely on undocumented and uncertain future sales of tracts based solely upon the Debtor's optimism. The Debtor has no source of funding to make plan payments if future sales of tracts do not occur as it wishes. Judge Learned Hand held that where a plan "is wholly speculative, based upon expectations of those who have everything to gain and nothing to lose," the plan does not provide a creditor with the indubitable equivalence of its claim. *In re Murel Holding Corp.*, 75 F.2d at 942. The confirmed Plan allows the Debtor to engage in land speculation with the Whitney Bank's money. The Debtor has nothing to lose under the Plan because it is not required to put any of its money in the deal or guarantee Plan payments.

Evidence of the requisite indubitable equivalent is present if, under the treatment proposed under the Plan, there is no doubt that Whitney Bank will receive the full value of what it bargained for when it made the contract with the Debtor. *See In re Investment Company of the Southwest, Inc.*, 341 B.R. at 319.   When a plan proposes to alter the collateral of the secured creditor, as the Plan at issue does, a creditor receives the indubitable equivalent of its claim only when the substitute collateral does not increase Whitney Bank's exposure to risk. *Id.*  Regardless whether the Property is valued at $18,800,000 or $15,100,000 "as is" if sold in bulk, without question, the treatment of Whitney Bank's claim under the Plan increases its exposure to risk as Whitney Bank is the party that bears the risk of lose if there is a downturn in the real estate market. [Px.5; Dx. 9]. Therefore, the bankruptcy court erred in confirming the Plan over Whitney Bank's objection because Whitney Bank is not receiving the indubitable equivalent of it secured claim under the Plan.

**V.    The bankruptcy court erred in confirming the Plan because the Plan is not feasible and confirmation of the Plan is likely to be followed by the liquidation, or need for further financial reorganization of the Debtor.**

*A.    Standards for Feasibility under Section 1129*

Section 1129(a)(11) requires a court to prevent confirmation of "visionary schemes" which promise creditors more under a proposed plan than a debtor can possibly attain after confirmation. *See In re Bowman*, 253 B.R. 233, 238-39 (8th Cir. BAP 2000); *Berkeley Federal Bank & Trust v. Sea Garden Motel and Apts. (In re Sea Garden Motel and Apts.)*, 195 B.R. 294, 304 (D.N.J. 1996) (quoting *In re Trail's End Lodge*, 54 B.R. 898, 903-04 (Bankr. D. Vt. 1985)); *see also In re Sound Radio, Inc.*, 93 B.R. 849, 855 (Bankr. D.N.J. 1988), *aff'd in part, remanded in part*, 103 B.R. 521 (D.N.J. 1989).  The court has an independent and affirmative obligation to scrutinize a plan to determine whether it is feasible. *See In re Treasure Bay* Corp., 212 B.R. 520,

547 (Bankr. S.D. Miss. 1997) (quoting *In re Lakeside Global Village II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989)).

A court's examination of feasibility must be based on objective facts. The Court must look at the probability of *actual* performance of the proposed plan. "Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are any visionary promises." *Clarkson v. Cooke Sales and Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985); *In re Investors Fla. Aggressive Growth Fund, Ltd.*, 168 B.R. 760, 765 (Bankr. N.D. Fla. 1994); *In re Lakeside Global Village II, Ltd.*, 116 B.R. at 507; *In re Cheatham*, 78 B.R. 104 (Bankr. E.D.N.C. 1987). A court may not rely on highly speculative and unduly optimistic assumptions and must base its findings of feasibility on the evidence presented. *See Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 508 (S.D.N.Y. 1994); *In re Snider Farms, Inc.*, 83 B.R. 1003, 1014 (Bankr. N.D. Ind. 1988). In effect, a court is required to predict, based on the historical data provided by the parties, whether the debtor will be able to make all payments under the plan and to otherwise comply with the plan. *In re Snider Farms, Inc.*, 83 B.R. 1003, 1006 (Bankr. N.D. Ind. 1988).

The word "feasible" is applied in its ordinary meaning – that something is capable of being done or carried out. It does not connote absolute assurance of success but does require a reasonable assurance of success. *See Miller v. Nauman (In re Nauman)*, 213 B.R. 355, 358 (9th Cir. BAP 1997); *Prudential Ins. Co. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1341 (8th Cir. 1985); *Beal Bank, S.S.B. v. Way Apts., D.T. (In re Way Apts., D.T.)*, 201 B.R. 444, 453 (N.D. Tex. 1996); *In re M & S Assocs., Ltd.*, 138 B.R. 845 (Bankr. W.D. Tex. 1992).

A plan is feasible if it is "not likely to be followed by … liquidation or the need for further reorganization." 11 U.S.C. § 1129(a)(11); *In re Save Our Springs Alliance, Inc.,* 632 F.3d

168, 172 (5th Cir. 2011). To demonstrate feasibility, the plan proponent must establish that there will be sufficient cash flow to fund the plan and maintain operations according to the plan. *See Canal Place Ltd. Partnership v. Aetna Life Ins. Co. (In re Canal Place Ltd. Partnership)*, 921 F.2d 569, 579 (5th Cir. 1991); *S&P, Inc. v. Pfeifer*, 189 B.R. 173, 186 (N.D. Ind. 1995).

Bankruptcy courts frequently consider past financial performance and financial performance during the case may be probative of a plan's feasibility. *See In re Canal Place Ltd. Partnership,* 921 F.2d at 579 ("Debtor's prior performance is probative of the feasibility of any plan of reorganization. . . ."); *see, also, In re Trevarrow Lanes, Inc.*, 183 B.R. 475, 482 (Bankr. E.D. Mich. 1995) (plan not feasible where debtor had never earned projected net income); *In re Wester*, 84 B.R. 770 (Bankr. N.D. Fla. 1988) (plan not feasible where debtors are currently spending more on monthly basis than they earn); *In re Anderson*, 52 B.R. 159 (Bankr. D.N.D. 1985) (debtor averaged net loss of $5,000 per year; proposed plan required funding of $80,000 in first year). The Debtor's past financial performance does not support a finding that the Plan is feasible.

In this case, the funding of the Plan is solely dependent on future speculative sales of portions of the Property. Debtor has no operations from which it generates a cash flow. The Debtor is not proposing to promptly liquidate the Property and use the proceeds to pay Whitney Bank and the other creditors; it is proposing that Whitney Bank be forced to invest in the Property and accept the investment in lieu of its rights as a secured creditor. Bankruptcy courts are skeptical of plans that allow debtors to postpone the inevitable and gamble with creditors' money on a long-shot possibility of drastic improvement in the Debtor's businesses. *See, e.g., In re M & S Assocs, Ltd.*, 138 B.R. at 851.

Plans containing provisions for negative amortization, *see, e.g., In re M & S Assocs., Ltd.*, 138 B.R. at 851; *In re Apple Tree Partners*, L.P., 131 B.R. 380 (Bankr. W.D. Tenn. 1991), and "balloon" payments, *see, e.g., In re M & S Assocs., Ltd.*, 138 B.R. at 851; *In re Guilford Telecasters, Inc.*, 128 B.R. 622, 627-28 (Bankr. M.D.N.C. 1991); *In re Sovereign Oil* Co., 128 B.R. 585, 586-87 Bankr. M.D. Fla. 1991), are regularly found not to be feasible, such as where a plan is based upon the fulfillment of a particular condition.  *See In re SIS Corp.*, 120 B.R. 93 (Bankr. N.D. Ohio 1990) (submission of reorganization plan on conditional basis renders plan not feasible). Based on the Debtor's historical lack of positive cash flow, confirmation of the Plan will almost certainly be followed by the liquidation or the need for further financial reorganization. Thus, the Plan cannot satisfy 11 U.S.C. §1129(a)(11).

### B.      *Debtor's Plan is Not Feasible*

Debtor filed a Single Asset Real Estate case. The Property for all intents and purposes is the Debtor's only asset. Whitney Bank's liens and the taxing authorities' liens encumber the Property. Debtor has no employees. Debtor has insufficient incoming cash flow to pay the property taxes and other costs associated with the Property, to service the mortgage indebtedness, or to sustain a plan of reorganization. As the Fifth Circuit has noted in the past, the Debtor's business is essentially "mowing the grass and waiting for market conditions to turn." *In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991). Indeed, the Debtor's operating budget consists of $1,200 to a landscaping company (presumably to mow the grass) and $1,000 for a bookkeeper. Debtor has no reasonable likelihood of an effective reorganization. "A Debtor lacks a reasonable likelihood of rehabilitation where, for example, it lacks income, lacks operating funds, or lacks employees, capital, or continuing revenue generating activity." *In re Bay Area Material Handling*, No. 94-15815, 1996 U.S. App. LEXIS 2272, at 4-5 (9th Cir. Jan. 25, 1996).

The feasibility requirement of § 1129(a)(11) requires that the Debtor provide "reasonable assurance that the plan can be effectuated." *In re Ames*, 973 F.2d 849, 851 (10th Cir. 1992). The Debtor has the burden of proof of proving feasibility of a plan. *Id.* The pre-approved sale contracts with Bridgestone, Avail and Horizon Land only cover approximately one-fourth of the amount owed to Whitney Bank. [R.R. 227:11-19]. The Debtor has no business plan to generate additional sales of the Property other than hire a broker and post a "for sale" sign on a roadside billboard.[6]

The success of the Plan is entirely conditioned upon the undocumented and uncertain future sales of the Property for which the potential sale agreements do not exist. The identities of the potential purchasers are unknown under the Plan, the timing of any future sales and sale prices are pure guess on the part of the Debtor. Further, the Debtor has made clear that its partners will not contribute any additional funds to the real estate venture and will not guarantee any Plan payments. [R.R. 95:25-96:6]. The funding of the Plan is going to come from proceeds of future sales of the Property. [R.R. 96:1-2]. Thus, the Debtor's "business plan" solely is based upon the Debtor's optimism and is speculative at best.

In a nutshell, the Debtor's future sale projections based on the conjecture of its principal are as follows:

| Prospective Buyer | Projected Sale Tract | Projected Sale Price | Projected Timing of Sale |
|---|---|---|---|
| Unknown | Lot 3 | $2,000,000 | 2014 Q1 |
| Chicken Express | Lot 1-D | $960,038 | 2014 Q2 |

---

[6]   SCC Interests, Inc., another Deskins business, is the exclusive broker, that stands to benefit under the Plan. R.R. 128:8-129:18. Deskins, Debtor's principal, will receive payment of commissions on sales before the creditors or equity holders are paid in full. R.R. 129:8-15.

| Unknown | Lot 1-C | $940,160 | 2014 Q3 |
| Unknown | Lot 1-H | $1,314,913 | 2017 |
| Unknown | Lot 1-Q | $1,039,886 | 2017 |
| Unknown | Lot 1-N | $880,121 | 2014 Q4 |
| Unknown | Lot 4 | $1,339,412 | 2015 |
| Unknown | Lot 5 | $1,024,894 | 2016 |
| Unknown | Lot 1-M | $1,439,571 | 2016 |
| Unknown | Lot 1-K | $3,374,680 | 2016 |
| Unknown | Lot 1-L | $5,003,100 | 2017 |
| Unknown | Portion of Lot 6 | $2,459,581 | 2015 |

*See Px. 4.*

As to establishing sufficient cash flow to fund the Plan and maintain operations, the Debtor does not have sufficient cash on hand to pay the past due property taxes for 2012. [R.R. 97:9-15]. In fact, the Debtor did not timely pay its property taxes on the Property for the tax years 2009, 2010, and 2011 because it did not generate enough cash from operations to cover the tax obligations. [R.R. 97:25-98:4]. Whitney Bank was required to pay the property taxes for 2009-2011 to protect its lien position. [R.R. 96:10-97:8]. In sum, because the Debtor failed to provide reasonable assurance it can fund the Plan aside from pure speculation the Plan is not feasible. *See In re Save Our Springs Alliance, Inc.*, 632 F.3d at 173-74. For such reasons, the bankruptcy court erred in confirming the Plan.

**VI.    The bankruptcy court erred in confirming the Plan because the Debtor lacked good faith in proposing the Plan and in light of the totality of the circumstances surrounding confirmation of the Plan.**

   *A.    Standards for Good Faith under Section 1129*

Section 1129(a) lists several requirements which must be met for a plan to be confirmed. *See generally* 11 U.S.C. § 1129(a).  Included in those requirements is that it be proposed in good faith.  *See* 11 U.S.C. § 1129(a)(3).  The term "good faith" is not defined in the Bankruptcy Code or in the legislative history thereto.  *See In re American Family Enters.*, 256 B.R. 377, 401 (D.N.J. 2000).

Although different courts have formulated the "good faith" requirement in different ways, they have generally concluded that for the purposes of section 1129, good faith requires that the court find "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *See, e.g., McCormick v. Bank One Leasing Corp. (In re McCormick)*, 49 F.3d 1524, 1526 (11th Cir. 1995). Courts have further held that good faith, in the context of the proposal of a plan, is to be judged in light of the "totality of the circumstances" surrounding confirmation of the plan.  *See Financial Sec. Assurance v. T-H New Orleans Ltd. Partnership (In re T-H New Orleans Ltd. Partnership)*, 116 F.3d 790, 802 (5th Cir.1997). The term "good faith" is not limited to a distinction between good and bad intentions or motives, but also includes the objective standards of good faith outlined in *See In re Little Creek Dev. Corp.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986).[7]

---

[7] In determining bad faith under the rubric established by *Little Creek* and its progeny, courts have considered whether: (i) the debtor has only one asset, such as a tract of undeveloped or developed real property; (ii) there are any employees except for the principles; (iii) there are cash flows from the property and or other available sources of income to sustain a plan of reorganization or make adequate protection payments; (iv) the debtor has only a few unsecured creditors with relatively small claims; (v) the property was posted for foreclosure because of arrearages, and the debtor was unsuccessful in state court in preventing foreclosure; (vi) there are allegations of wrongdoing on behalf of the debtor's principals; (vii) the filing was affected on the eve of foreclosure; (viii) a new entity, which only assets are in imminent and substantial danger of foreclosure, was formed for the purpose of filing for bankruptcy

Numerous courts have held that consideration of the debtor's prepetition conduct is relevant to the section 1129(a)(3) determination.  For example, in *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987), the Eleventh Circuit stated that "[i]t seems unquestionable to us that the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed its petition in bad faith would fail to meet § 1129's good faith requirement." *See Id.*; *Primestone Investment Partners, L.P. v. Vornado PS, L.L.C. (In re Primestone Investment Partners, L.P.)*, 272 B.R. 554, 557 (D. Del. 2002) (considering improper pre-petition conduct a factor to be considered in court's determination of good faith.); *In re University Commons, L.P.*, 200 B.R. 255, 259 (Bankr. M.D. Fla. 1996), *reconsideration denied*, 204 B.R. 80 (Bankr. M.D. Fla. 1996) ("The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith."); *University Creek Plaza, Ltd. v. New York Life Ins. Co. (In re University Creek Plaza, Ltd.)*, 176 B.R. 1011, 1020 (S.D. Fla. 1995) ("Moreover, the Court correctly held that University's plan could not meet the good faith requirement set forth in 11 U.S.C. § 1129(a)(3) since it was determined that University's petition was filed in bad faith."); *In re Mortgage Inv. Co. of El Paso*, 111 B.R. 604, 611 (Bankr. W.D. Tex. 1990) (in determining the good faith of a plan, the court may consider a debtor's pre-filing conduct as well as the feasibility of the plan itself).

## B.    *Debtor's Plan does not meet the "Good Faith" Requirement of Section 1129*

Debtor came to the Court bearing numerous of the badges of bad faith.  Specifically,

- Debtor has but one significant asset

---

protection; (ix) the only significant creditors are those seeking foreclosure; (x) previous bankruptcy petitions by the debtor or a related entity (*i.e,* serial filing); (xi) reorganization essentially involves the resolution of a two-party dispute; (xii) and the debtor filed for bankruptcy protection solely to create the automatic stay. *See, e.g., In re Little Creek Dev. Corp.*, 779 F.2d at 1072-73; *Duggan v. Highland-First Ave. Corp.*, 25 B.R. 955, 961 (Bankr. C.D. Ca. 1982).

- Debtor has no employees only its principals
- Debtor has no ongoing business to reorganize (Debtor's Operating Reports speak for themselves – they show that the Debtor does not generate sufficient income to pay its obligations in the ordinary course of business)
- Debtor has no cash flows of its own or sources of income to sustain a Plan
- Debtor has only two non-insider unsecured creditors who are owed $5,897.00 in total.
- Debtor's filing is a tactical filing geared towards resolving a two-party dispute and is a litigation/negotiation tactic rather than a legitimate attempt to reorganize.

As debtor in possession, the Debtor was required under the Bankruptcy Code to examine proofs of claims and object to allowance of any claim that is improper if a purpose would be served. See 11 U.S.C. §1107(a) (incorporating 11 U.S.C. §1106(a)(1) which incorporates §704(a)(5)). The Debtor intentionally and knowingly turned a blind eye to the claim and vote of Seton and did not object to the claim even though it knew the claim was unenforceable under Texas law because it needed the vote to be eligible to confirm a "cram down" Plan over Whitney Bank's objection.

The Debtor did not act in good faith in connection with the confirmation of the Plan when it knowingly allowed the vote of an invalid claim it previously designated as "disputed" to go unchallenged. Whitney Bank was required to object to Seton claim to preserve its collateral. Use of the bankruptcy process merely to frustrate the rights of creditors, particularly in single asset real estate cases, and the absence of any likelihood of rehabilitation or reorganization are indicia of the Debtor's bad faith. See Fid. Assurance Ass'n v. Sims, 318 U.S. 608, 618 (1943); Humble Place, 936 F.2d at 818. This bankruptcy case involves a two-party dispute and was commenced to stop a scheduled foreclosure sale. [R.R. 99:18-21]. There is no reasonable possibility the Debtor will be reorganized, and in reality, the Plan is merely a protracted liquidation of the Debtor's only asset - Whitney Bank's collateral. There is sufficient cash on hand to pay the legitimate unsecured creditor claims that are de minimis.

Because Debtor did not come to the bankruptcy court in good faith, and has not acted in good faith while under the jurisdiction of the bankruptcy court, the Plan is not proposed in good faith. Debtor cannot meet the good faith requirement of §1129. Therefore, the bankruptcy court erred in confirming the Debtor's Plan.

**PRAYER**

WHEREFORE, Whitney Bank respectfully requests that this Court reverse the determinations and rulings of the bankruptcy court's Confirmation Order, that such order be vacated and the case remanded to the bankruptcy court for further consideration of the merits of Seton's claim and whether Debtor obtained the approval of a class of creditors required under §1129(b)(10) to be eligible for a cram down plan of reorganization and, if necessary, the feasibility of the proposed Plan without the Debtor's ability to amend the Avail Sale Order to allow a portion of the proceeds to be credited as "prepaid interest" to fund the Plan, and that it have and recover any and all other general relief to which they may be entitled.

DATED:  September 20, 2013

Respectfully submitted,

**WINSTEAD PC**
401 Congress Ave., Suite 2100
Austin, Texas 78701
(512) 370-2800 – telephone
(512) 370-2850 – facsimile

By:___/s/ James G. Ruiz_____
James G. Ruiz
State Bar No. 17385860

**ATTORNEYS FOR APPELLANT
WHITNEY BANK**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 20, 2013, a true and correct copy of this document was served electronically on all registered ECF users in this case, and by Certified Mail, Return Receipt Requested on all persons identified below.

Eric J. Taube
Mark Taylor
Hohmann Taube & Summers, LLP
100 Congress Ave., Suite 1800
Austin, TX 78701

/s/ James G. Ruiz
James G. Ruiz