IN THE
## UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

### Civil Action No. 1:13-cv-00756-LY

_____

IN RE:
SCC KYLE PARTNERS, LTD.

WHITNEY BANK

Appellant,

v.

SCC KYLE PARTNERS, LTD.

Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

_____

### APPENDIX TO BRIEF OF APPELLANT

**Appendix Tab 1.**   Order Confirming Debtor's Second Amended Plan of Reorganization under Chapter 11, Title 11, United States Code.

**Appendix Tab 2.**   Whitney Bank's Objections to Claim of Seton Family of Hospitals

**Appendix Tab 3.**   Debtor's Amended Disclosure Statement for Debtor's Amended Plan of Reorganization

**Appendix Tab 4.**   Debtor's Amended Plan of Reorganization

# Appendix Tab 1

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 01, 2013.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCC KYLE PARTNERS, LTD | § | Case No.  12-11978-hcm |
| | § | |
| Debtor. | § | |

**ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN OF
REORGANIZATION UNDER CHAPTER 11, TITLE 11, UNITED STATES CODE**

CAME ON FOR CONSIDERATION the Debtor's Amended Plan of Reorganization, as modified, filed January 21, 2013, under Chapter 11, Title 11, United States Code [Docket No. 49], as modified by the First Modification filed with the Court on April 13, 2013 [Docket No. 98], and the Amended Second Modification filed with the Court on April 16, 2013 [Docket No. 102], all of which have been combined in the "Second Amended and Modified Plan of Reorganization" attached hereto as Exhibit A (the "Plan"). The Plan has been submitted for confirmation by the Debtor in the

1

00251882.000.DOCX

above captioned Chapter 11 case ("Debtor") and was the subject of a confirmation hearing held on April 4 and 16, 2013.

IT APPEARING TO THE COURT that a plan and disclosure statement were filed by the Debtor on November 29, 2013; a hearing was held on January 13, 2012 the adequacy of the proposed Disclosure Statement, that an Amended Disclosure Statement (the "Disclosure Statement") was approved by the Court by Order dated January 22, 2013, along with an Amended Plan.

IT FURTHER APPEARING TO THE COURT that the Debtor filed non-material modifications (as described above) [Docket Nos. 98 and 102].

IT FURTHER APPEARING TO THE COURT that the Amended Disclosure Statement and an Amended Plan were transmitted to the holders of claims on January 23, 2013, acceptances and rejections of the Plan were solicited and obtained; according to the vote and results announced by the Debtor, the Plan was accepted by at least one impaired class (Class IV) and was rejected by Whitney Bank (Class III).

IT FURTHER APPEARING TO THE COURT that certain parties filed objections to confirmation of the Plan and that such objections have either been resolved by agreement or by the provisions of this Order.

IT FURTHER APPEARING TO THE COURT that the Debtor presented testimony evidence and argument of counsel in support of the confirmation of the Amended Plan; and that the Court made certain findings of fact and conclusions of law in its Consolidated Opinion Regarding Confirmation of Plan of Reorganization and Related Motions, which are incorporated herein by reference pursuant to Bankruptcy Rules 7052 and 9014.

THEREFORE, based upon the foregoing, the Court having determined after hearing on notice that:

2

00251882.000.DOCX

1. The Plan complies, and the Debtor as proponent of the Plan has complied, with the applicable provisions of Chapter 11 of the Bankruptcy Code; and the Plan has been proposed in good faith and not by any means forbidden by applicable law;

2. Any payment made or to be made by the Debtor for services or for costs and expenses in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable;

3. There is no regulatory commission having jurisdiction after confirmation of the Plan over the rates of the Debtor; and, there is no rate change provided for in the Plan requiring approval of any such commission;

4. With respect to each impaired class of claims contained in the Plan, each holder of a claim either has accepted the Plan or will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date;

5. Each class of claims has accepted the Plan or is not impaired under the Plan, or is subject to cramdown pursuant to 11 U.S.C. §1129, and the Court has determined that the Plan complies with the cram-down provisions of §1129(b)(2)(A) and is fair and equitable as to Whitney Bank provided that the interest rate on its allowed secured claim shall be seven percent (7%), additionally, the Court approves and allows a portion of proceeds from the sale to Avail received by Whitney Bank to be credited as pre-paid interest at the rate of 7% per annum for the period of May 1, 2013 through December 31, 2013 with the balance to be applied as principal reduction of Whitney Bank's claim as provided for in the Plan;

6. Except to the extent that a holder of a particular claim has agreed to different treatment of such claim, the Plan provides that with respect to a claim of the kind specified in 11 U.S.C. § 507(a)(1) through (8), the holder of such claim will receive on the Effective Date or on account of such claim, cash equal to the allowed amount of such claim as it may become due;

7. Excluding all acceptances of the Plan by any insider, at least one class of claims that is impaired under the Plan has accepted the Plan;

8. The Plan is feasible and is not likely to be followed by Chapter 7 liquidation, or the need for further financial reorganization of the Debtor;

9. The Debtor is not subject to any order or statute for payment of any domestic support obligations;

3

00251882.000.DOCX

10.     All fees payable under 28 U.S.C. § 1930 have been or will be paid prior to the Effective Date;

11.     No holder of an allowed unsecured claim has objected to the Plan;

12.     The Modifications proposed by the Debtor are not material and do not require additional disclosure pursuant to 11 U.S.C. §1127, and no party in interest has either opposed or requested a vote change based upon such modifications except as reflected in this Order;

13.     All objections to the Plan have either been resolved or overruled, including the objections made by Whitney Bank.

14.     At the confirmation hearing, the Debtor announced it would assume certain executory contracts, including all pending sales contracts, the brokerage/listing agreement with SCC Interests, Inc., and the Economic Development Incentive Agreements with the City of Kyle and Hays County, and such assumptions are approved.

NOW, THEREFORE, IT IS HEREBY

ORDERED, ADJUDGED and DECREED that the Second Amended and Modified Plan, is confirmed.

# # #

ENTRY REQUESTED BY:

Mark C. Taylor
Hohmann, Taube & Summers, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Telephone: 512/472-5997
Telecopier: 512/472-5248

4

00251882.000.DOCX

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **SCC KYLE PARTNERS, LTD** | § | **Case No.  12-11978-hcm** |
| | § | |
| **Debtor.** | § | |

## DEBTOR'S SECOND AMENDED AND MODIFIED PLAN OF REORGANIZATION

HOHMANN, TAUBE & SUMMERS, L.L.P.
Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Phone: (512) 472-5997
Fax: (512) 472-5248

ATTORNEYS FOR DEBTOR

i

## INTRODUCTION

SCC Kyle Partners, Ltd. ("Debtor") the Debtor in Possession in this chapter 11 case, proposes the following Second Amended and Modified Plan of Reorganization for the resolution of its outstanding claims and equity interests.

**All holders of Claims against, and Equity Interests in, the Debtor are encouraged to read this Plan, the Disclosure Statement, and the related materials in their entirety.**

Subject to the restrictions on modifications set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Article XIII of this Plan, the Debtor reserve the right to alter, amend, or modify this Plan one or more times before its substantial confirmation.

### ARTICLE I
### DEFINITIONS AND RULES OF INTERPRETATION

**1.01.  Defined Terms**. Capitalized terms used in the Plan have the meanings set forth in Article I. Capitalized terms used in the Plan which are not defined in the Article I but which are defined in the Bankruptcy Code shall have the respective meanings specified in the Bankruptcy Code.

**1.02.  Rules of Interpretation**. Unless otherwise provided herein for purposes of the Plan: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms **and** conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to any Entity as a holder of a Claim includes that Entity's successors and assigns; (e) all references in the Plan to sections, Articles, and exhibits are references to sections, Articles, and exhibits of or to the Plan; (f) the words "herein," "hereof," "hereunder," "hereto" and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

**1.03.  Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the **provisions** of Bankruptcy Rule 9006(a) will apply.

As used in this Plan, the following terms have the following meanings:

**1.04.  "Administrative Claim"** or **"Administrative Expense Claim"** means a Claim for any cost or expense of administration of the Chapter 11 Case Allowed under Bankruptcy Code §§ 503(b), 507(b) **or** 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(1), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of a Debtor' business; (c) actual and necessary costs and

1

expenses of preserving an Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**1.05.** **Administrative Claims Bar Date**. The first Business Day that is 30 days after the Confirmation Date.

**1.06.** **"Allowed"** means, in reference to a Claim or Equity Interest, (a) a Claim or Equity Interest that has been allowed by a Final Order; or (b) with respect to any Claim against, or Equity Interest in, a Debtor: (i) (A) proof of which, request for payment of which, or application for **allowance** of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against a Debtor or other applicable date established by order of the Bankruptcy court, even if that date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or (B) a Claim or Equity Interest that is allowed by a Debtor; (ii) listed as undisputed, liquidated, and non-contingent in the Schedules and as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; and (iii) in each instance, a Claim or Equity Interest as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or motion has been interposed, to the extent allowed by a Final Order. The term "Allowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so Allowed.

**1.07.** **"Avoidance Action"** means causes of action arising under chapter 5 of the Bankruptcy Code, or under related state or federal statutes and common law, including, without limitation, fraudulent **transfer** and fraudulent conveyance laws, whether or not litigation has commenced to prosecute such causes of actions.

**1.08.** **"Ballot"** means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

**1.09.** **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and **applicable** to the Chapter 11 Case.

**1.10.** **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other court as may have jurisdiction over the Chapter 11 Case.

**1.11.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. § 2075, applicable to the captioned Chapter 11 Case.

**1.12.** **"Bar Date"** means the date or dates fixed by the Bankruptcy Court or by this Plan by which Persons asserting a Claim against, or Equity Interest in, a Debtor (except Administrative Claims, Professional Fee Claims, and Rejection Damages Claims) are required to

2

file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against or Equity Interest in a Debtor or its property, from voting on this Plan, and from sharing in distributions under this Plan.

**1.13.** **"Business Day"** means any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

**1.14.** **"Cash"** means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.15.** **"Chapter 11 Case"** or **"Case"** means the case under Chapter 11 of the Bankruptcy Code in which the Debtor is the Debtor and Debtor-in-possession, pending before the Bankruptcy Court.

**1.16.** **"Claim"** has the meaning assigned to such term by Section 101(5) of the Bankruptcy Code.

**1.17.** **"Class"** or **"Classification"** means the particular class designated in the Plan, pursuant to Section 1122 and Section 1129 of the Bankruptcy Code, into which the Claims of all Creditors have been segregated for purposes of voting and distributions.

**1.18.** **"Confirmation Date"** means the date the Bankruptcy Court enters the Confirmation Order.

**1.19.** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan under Bankruptcy Code § 1129.

**1.20.** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code.  The Confirmation Order need not necessarily be a Final Order.

**1.21.** **"Consummation of Plan"** means the accomplishment of substantially all things contained or provided for in the Plan.

**1.22.** **"Contingent Claim"** means any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

**1.23.** **"Creditor"** has the meaning assigned to such term by Section 101(1) of the Bankruptcy Code.

**1.24.** **"Debtor"** means SCC Kyle Partners, Ltd.

**1.25.** **"Disallowed"** means a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn or expunged by Final Order. The term "Disallowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity

3

Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so Disallowed.

**1.26.** **"Disputed"** means (i) a Claim, Interest or Administrative Expense Claim that is subject to a pending objection; or (ii) until the deadline in the Plan for filing objections to claims:

(a) a claim for which a corresponding Claim has not been listed in the Debtor' Schedules or for which the corresponding Claim is listed in the Debtor' Schedules with a differing amount, with a differing classification, or as a disputed, contingent, or unliquidated Claim;

(b) a Claim which a Debtor in good faith believes is held by a holder either (i) from which property is recoverable by the applicable Debtor under any of Sections 542, 543, 550 or 553 of the Bankruptcy Code or (ii) that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code unless the holder has paid the amount, or turned over any such property for which such holder is liable under the terms of Sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; and

(c) in any event, a Claim which has been paid during the pendency of this Chapter 11 Case pursuant to an order of the Court allowing the payment of such pre-petition claim.

**1.27.** **"Effective Date"** means the first Business Day that is ten (10) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in Section 8.02 of this Plan have been satisfied or waived in accordance with the terms of this Plan.

**1.28.** **"Entity"** shall have the meaning assigned to such term by section 101(15) of the Bankruptcy Code.

**1.29.** **"Equity Interest"** means any equity interest in the Debtor represented by (i) any class or series of common or preferred stock, (ii) any member interest; or (iii) any general or limited partnership interest issued before the Effective Date, and any warrants, options, or rights to purchase any common or preferred stock.

**1.30.** **"Estate"** means the estate for the Debtor created in the Chapter 11 Case under Bankruptcy Code § 541.

**1.31.** **"Exculpated Party"** or **"Exculpated Parties"** means the Debtor, the Reorganized Debtor, the holders of Equity Interests and their agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns.

**1.32.** **"Executory Contract"** means any contract or agreement between the Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

4

**1.33.** "**Fee Applications**" means the applications of Professional Persons for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

**1.34.** "**Final Order**" means an order of a court: (a) to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing or reconsideration has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing, or reconsideration shall then be pending; or (b) as to which any right to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (c) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing, or reconsideration thereof has been sought, which shall have been affirmed by the highest court to which such order was appealed, from which writ of certiorari or other appellate review or reargument, rehearing, or reconsideration was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing, or reconsideration shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or under section 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.35.** "**Insider**" has the meaning assigned to such term by Section 101(31) of the Bankruptcy Code.

**1.36.** "**Insider Claims**" means any Claims held by Insiders of the Debtor.

**1.37.** "**Lender**" means Whitney National Bank, Amegy Bank, American Bank, Capitol One and Trustmark National Bank, with Whitney National Bank acting as Agent for such banks.

**1.38.** "**Lender Secured Claim**" means all claims, liens, security interests and rights of the lender against the Debtor, the Estate, and its property, as set forth in the Lender loan documents.

**1.39.** "**Lien**" has the meaning assigned to search term by Bankruptcy Code § 101(37), except for a lien that has been avoided in accordance with Bankruptcy Code §§ 544, 545, 546, 547, 548, or 549.

**1.40.** "**Litigation Claims**" means any of the Debtor' causes of action, including, without limitation, collections actions, Claims objections, defenses setoffs and counterclaims to any Claims, and any other Avoidance Actions.

**1.41.** "**Paid in Full**" or "**Payment in Full**" means, with respect to the Plan, paid in Cash the Allowed Amount of the Claim.

**1.42.** "**Person**" means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

5

**1.43.** **"Petition Date"** means August 31, 2012, the date when the Chapter 11 Case was instituted by the Debtor filing their voluntary Petition pursuant to chapter 11 of the Bankruptcy Code.

**1.44.** **"Plan"** means this Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

**1.45.** **"Priority Claim"** means any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Administrative Claims or a Priority Tax Claim.

**1.46.** **"Priority Tax Claim"** means any Claim of a governmental unit entitled to priority under Bankruptcy Code § 507(a)(8).

**1.47.** **"Priority Secured Tax Claim"** means a Secured Claim of a governmental entity whose claim would be a Priority Tax Claim under Sections 502(i) or 507(a) of the Bankruptcy Code if it was not a Secured Claim.

**1.48.** **"Professional"** means a Person: (a) employed in the Chapter 11 Case in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and to be compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

**1.49.** **"Professional Fee Bar Date"** means the first Business Day that is 30 days after the Confirmation Date.

**1.50.** **"Professional Fee Claim"** means an Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

**1.51.** **"Property of the Estate"** means all property in which the Debtor hold a legal or equitable interest, including all property described in Section 541 of the Bankruptcy Code.

**1.52.** **"Pro Rata"** means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

**1.53.** **"Rejection Claim"** means a Claim arising under Section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

**1.54.** **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

**1.55.** **"Schedules"** means the schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by a Debtor under Bankruptcy Code § 521

and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

**1.56.** **"Secured"** means any Claim (a) listed in the Schedules as a liquidated, non-contingent, and undisputed secured Claim; or (b) reflected in a proof of claim as a Secured Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if the Claim is subject to setoff under Bankruptcy Code § 553, net of the setoff. The term "Secured," when used to modify a reference in this Plan to any Claim or Class of Claims means a Claim (or any Claim in any Class) that is so Secured.

**1.57.** **"Unsecured"** means any Claim against the Debtor' Estates for which the holder has no security for the repayment thereof and for which the holder is not entitled to any priority under the Bankruptcy Code. The term "Unsecured," when used to modify a reference in this Plan to any Claim or Class of Claims, means a Claim (or any Claim in any Class) that is so Unsecured.

## ARTICLE II
## LEGAL BACKGROUND AND GENERAL CONCEPT

**2.01.** **Legal Background.** On August 31, 2012, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Plan is proposed by the Debtor in the belief that the Creditors will receive more through the payments contemplated hereby than would be received if the assets of the Debtor was liquidated by a Chapter 7 trustee pursuant to Chapter 7 of the Bankruptcy Code.

**2.02.** **General Concept of the Plan.** The Plan provides for the implementation of a restructuring the Debtor and the Lender providing for, among other things, the assets of the Debtor to remain in the Reorganized Debtor and the Reorganized Debtor to make Distributions upon Allowance of Claims by agreement or by resolution through the Bankruptcy Court in a Final Order.

**2.03.** **Operation Pending Effective Date.** Until the Effective Date, the Reorganized Debtor will continue to operate its business subject to all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the provisions of this Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

**3.01.** **Unclassified Claims.** As provided in Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of Administrative Expense Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Article 3.02 of this Plan and under Bankruptcy Code § 1129(a)(9)(A).

**3.02.** **Administrative Claims.** Each holder of an Allowed Administrative Claim (except any holder that agrees to a lesser or otherwise different treatment) shall be paid in full, in Cash, in full satisfaction of such Claim, on the later of the Effective Date or the date on which

7

such Administrative Claims becomes an Allowed Claim, *provided, however*, that (a) Allowed Administrative Claims representing (1) post-petition liabilities incurred in the ordinary course of business by the Debtor or (2) post-petition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto and (b). Professional Fee Claims shall be paid from Distributable Cash on the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days following the date of a Final Order determining and Allowing such Claim as a Professional Fee Claim. In the event the Distributable Cash as of the distribution date is insufficient to pay all Allowed Professional Fee Claims in full, Allowed Professional Fee Claims shall be paid from Distributable Cash on a Pro Rata basis in installments commencing thirty (30) days after the Effective Date and continuing on each ninety (90) day anniversary of the Effective Date until all Allowed Professional Fee Claims are paid in full.

3.03.   **Statutory Fees**. On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. Section 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid in Cash equal to the Allowed amount of such Administrative Expense Claims. All fees payable pursuant to 28 U.S.C. Section 1930 subsequent to the Confirmation Date will be paid by the Reorganized Debtor in accordance therewith until the entry of a Final Decree.

3.04.   **Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim (except any holder that agrees to lesser or otherwise different treatment), at the election of the Debtor, shall (1) be Paid in Full, in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the later of (a) the Effective Date, (b) the date on which the Secured Tax Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation or (2) receive treatment in any other manner such that its Allowed Priority Tax Claim shall not be impaired pursuant to section 1124 of the Bankruptcy Code, including, but not limited to, payment in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code.

3.05.   **Bar Dates for Administrative Claims**.

(a)      **General Bar Date Provisions**. The holder of an (i) Administrative Expense Claim, (ii) Professional Fee Claim; (iii) Priority Secured Tax Claims; and (vi) statutory fee Claims must file with the Bankruptcy Court and serve on the Debtor and their counsel no later than thirty (30) days after the Confirmation Date, a request for payment of the Claim. Such request for payment must conform to the requirements provided for in the Bankruptcy Code and Bankruptcy Rules and at a minimum identify the name of the claimant, the nature of and basis for the Claim, and the amount of the Claim. Holders of Administrative Expense Claims required to file a request for payment hereunder who fail to Timely File and serve a request for payment will be forever barred from asserting such Administrative Expense Claims against the Debtor, the Reorganized Debtor and their respective property, and such Administrative Expense Claims shall be deemed discharged as of the Effective Date. An Administrative Expense Claim will be Allowed if no objection is filed within thirty days (30) after filing and service of a request for payment. If an objection is filed to the Allowance of an Administrative Expense Claim, such

8

Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by a Final Order.

(b)    **Post-Effective Date Professional Fee Claims.**  Any Professional's Fee Claim incurred subsequent to the Effective Date by the Reorganized Debtor, may be paid without application to the Bankruptcy Court.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS
## AND EQUITY INTERESTS

**4.01.  Summary of Classification.**  In accordance with Bankruptcy Code § 1123(a)(1), all Claims and Equity Interests are placed in the Classes described below for all purposes, including voting on, confirmation of, and distributions under, this Plan. .

**4.02.  Designation of Unimpaired and Impaired Classes.**  Classes 3, 4 and 5 are Impaired. Classes 1, 2 and 6 are unimpaired.

**4.03.  Acceptance of the Plan.**  An impaired Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or such Class that have accepted or rejected the Plan. Any impaired Class of Creditors in which no member votes to accept or reject the Plan will be deemed to have accepted the Plan.

**4.04.  Confirmation of Plan.**  In the event any impaired Class fails to accept the Plan, in accordance with § 1129(a) of the Bankruptcy Code the Debtor, as the Plan proponent, reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code.

**4.05.  Classification and Treatment of Claims and Equity Interests.**

4.1.1   Class I – Administrative Claims.  Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date. All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor,

9

and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability.  This class is not impaired.

4.1.2   Class II – Priority Tax Claims.   Notwithstanding anything to the contrary contained within the Plan or approved Disclosure Statement, the Priority/Secured Tax Claims owing to Hays County and Hays CISD (Taxing Entities) shall be paid by the Debtor, pursuant to the provisions of 11 USC §1129 (a) (9) (C), in equal monthly installments, commencing thirty days from the Plan's Effective Date and ending sixty (60) months from the petition date. The Claims shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said taxes are paid in full.

In the event that any tract(s) which is secured by the Secured Tax Claims is sold during the term of the Plan, the unpaid taxes secured by the tract(s) shall be paid in full upon the sale of the property.

The 2013 ad valorem taxes owing to the Taxing Entities shall be paid in the ordinary course of business and Taxing Entities shall not be required to file a request for allowance and payment of its claim.

Taxing Entities shall retain all liens until such taxes are paid in full.

Default shall occur if one monthly installment due to Taxing Entities under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including the 2013 taxes) are not paid timely pursuant to state law.  In the event of default, Taxing Entities or either of them shall send written notice of default to Debtor's attorney and Debtor.  If the default is not cured within twenty (20) days after notice of the default is mailed, Taxing Entities may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.  The Debtor has the opportunity to cure two (2) times over the life of the Plan.  In the event of a third default, Taxing Entities may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.

4.1.3   Class III – Secured Claim of Lender.   The secured claim of the Lender group will be paid over 5 years from the Effective Date from cash proceeds on hand at the time of confirmation and ongoing sales of the remaining Property and future tax incentive revenues, with interest-only payments to be made monthly beginning on the 15th day after the Effective Date at 7% per annum, or such other rate as is determined by the Court not to exceed 8%. All remaining principal, interest and costs will be due and payable on the 15th day of the 60th month from the Effective Date.  Lender will retain its liens on the collateral currently pledged to Lender, though Debtor shall be permitted to use the proceeds from sales tax incentive payments and existing cash to make the payments for allowed administrative claims,  priority tax claims and unsecured creditors. This Class is impaired.

10

Debtor shall be entitled to close any sale and the Lender shall be required to release its lien on any property for which the gross sale price is at least 85% of the appraised value of the tract, based on the market/retail appraised value from the April 4, 2013 Aegis appraisal, as set forth in Exhibit "A" hereto.  Lender will receive the net proceeds after payment of customary closing costs (including broker's fees, title insurance fees, and other typical closing costs) and taxes attributable to the tract, and less any amounts necessary for funding a one-year rolling reserve for taxes, insurance and interest, and operating expenses (bookkeeping/accounting, and landscaping/ maintenance not to exceed $1000 per month).  The rolling reserve will be calculated based on the estimates, as of the date of the closing of a sale, for payment of one-year's interest on the then-existing amount of the Lender's Allowed Claim at the rate determined by the Court, ad valorem taxes [based upon the amount assessed for the year by the applicable taxing authorities] and insurance, and operating expenses (with such operating expenses not to exceed $1000 per month).  The reserve account will be held at Whitney Bank and Lender shall maintain a lien on the account.  Interest will be paid monthly, and taxes and insurance when due. Debtor shall also be entitled to utilize its cash on hand and, if available, from Sales Tax Incentive payments, as of the Effective Date to pay administrative claims or any of the items covered by the reserve funds or payments to unsecured creditors or tax authorities.

With respect to the pending sale to Avail, Debtor will remit the sale proceeds (net of closing costs, taxes and commissions) to Lender, provided, however, that a portion of the proceeds paid shall be credited as pre-paid interest (at 7% per annum) for the period May 1, 2013 through December 31, 2013 with the balance to be applied as principal reduction.

In the event of a default under these provisions, Debtor shall be entitled to five (5) days' written notice and opportunity to cure, after which Lender shall be entitled to pursue its available remedies.  Debtor shall be entitled to three (3) such notices and opportunities to cure, after which Lender shall be entitled to pursue its available remedies.

4.1.4  Class IV -- General Unsecured Creditors.  Holders of General Unsecured Claims will receive payment of their claims, in full, in equal quarterly payments beginning ninety (90) days from the Effective Date and continuing each quarter for 16 quarters on the same date of the month as the initial payment until paid; *provided, however, that the claim of Seton Hospital shall receive payments totaling $250,000 during the 16 quarters, with the balance payable after the Class III Allowed Claim is paid in full.*  The source of the payments will be the revenue received from the Incentive Agreements above amounts necessary for the Debtor's business operations. This Class is impaired.

4.1.5  Class V -- Subordinated Claims.  This class consists of any claims held by insiders or affiliates of the Debtor.  Holders of Subordinated Claims will retain their claims, but shall not receive any payment until senior classes are paid in full, after which holders of Subordinated Claims will be paid pari passeu on a pro-rata basis from sales of remaining Property and any revenues from the Incentive Agreements above amounts necessary for the Debtor's business operations.  This Class is impaired.

11

4.1.6  <u>Class VI – Equity Interests</u>.  Holders of Equity Interests in the Debtor shall retain their interests, but shall not receive any payments or distributions on account of those interests until all senior classes are paid in full.  It is agreed and acknowledged by the Debtor that nothing in the Plan, or in the Order Confirming the Plan, changes, alters, or modifies: (i)  the Debtor's partnership agreements as amended from time to time; (ii) the rights and obligations of the Debtor or any partner (whether general or limited) under the partnership agreement; or (iii)  the rights and obligations of the Debtor or any partner as parties to the settlement agreements entered into by and among the partners and the Debtor dated March 30, 2011;  provided, further, nothing in this Plan constitutes a release of the general partner or any insiders to the Debtor unless specifically set out herein and in the Disclosure Statement.  This Class is impaired.

**4.06  <u>Payments to U.S. Trustee</u>**.  Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) so long as the Bankruptcy Case remains open.

**ARTICLE V**
**IMPLEMENTATION OF PLAN**

**5.01.  <u>Reorganized Debtor</u>**.  From and after the Effective Date, Debtor will exist as the Reorganized Debtor.  Except as otherwise provided in the Plan, the Reorganized Debtor will remain in possession and ownership of all of the assets of Debtor and shall operate them in their best business judgment without further oversight of the Bankruptcy Court.

**5.02.  <u>Revesting of Assets</u>**.  Except as otherwise provided in the Plan, all Property of the Estate will revest in the Reorganized Debtor, subject only to (1) the Liens provided for in the Plan; and (2) the obligations of the Reorganized Debtor as set forth in the Plan and Confirmation Order.

**5.03.  <u>Vesting and Enforcement of Causes of Action</u>**.  Any and all claims and causes of action, shall vest in the Reorganized Debtor on the Effective Date, and the Reorganized Debtor shall be the only Entity entitled to pursue such claims or causes of action.

**5.04.  <u>The Reorganized Debtor' Obligations Under the Plan</u>**.  The Reorganized Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from the Debtor' existing Cash Balances, and the operations of the Debtor or Reorganized Debtor.

(a)  From and after the Effective Date, the Reorganized Debtor shall, among other things:

(1)  administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)  resolve Disputed Claims, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

        (3)    make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

        (4)    administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

        (5)    exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

        (6)    invest any Cash pending Distribution;

        (7)    file appropriate tax returns; and

        (8)    take such other actions as may be necessary or appropriate to effectuate this Plan.

    (b)    Following the Effective Date the Debtor may pay their post Effective Date operating expenses in the ordinary course of its business without further notice or orders of this Court.

**5.05.** **Exemption from Transfer Taxes.** Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor shall not be subject to any transfer, sales, stamp or other similar tax and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01.** **Assumption or Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code. *Debtor will file a list of contracts to be assumed prior to the Confirmation Hearing date.* Entry of the Confirmation Order shall constitute approval of such assumptions or rejections, as the case may be (as such lists may be amended, supplemented or modified on or before the Confirmation Date), pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

**6.02.** **Objections to Assumption of Executory Contracts and Unexpired Leases.** To the extent that any party to an executory contract or unexpired lease identified for assumption, or

13

any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the
Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and
Schedules, (b) has any objection to the proposed adequate assurance of future performance, if
required, or (c) has any other objection to the proposed assumption, cure, or assignment of a
particular executory contract or unexpired lease on the terms and conditions provided for herein,
all such asserted arrearages and any other objections shall be filed and served within the same
deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Schedules (or
the exhibits thereto), or to file an objection within the time period set forth above, shall constitute
consent to the assumption, cure, and assignment on the terms provided for herein, including
acknowledgment that (a) the Debtor (or their assignee) have provided adequate assurance of
future performance, if required, (b) the amount identified for "cure," if any, is the amount
necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the
executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such
executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate
assurance of future performance or otherwise, and the Court determines that the Debtor cannot
assume the executory contract or unexpired lease either as proposed or as may be proposed
pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory
contract shall automatically thereupon be deemed to have been rejected.

**6.03.   Payments Related to Assumption of Executory Contracts and Unexpired
Leases**. Any monetary defaults, including claims for actual pecuniary loss, under each executory
contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section
365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed
by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the
Effective Date, or on such other terms as may be agreed to by the parties to such executory
contract or unexpired lease.   In the event of a dispute regarding (a) the amount of any cure or
pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of
future performance under the contract or lease to be assumed, if required, or (c) any other matter
pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the
Bankruptcy Code shall be made within a reasonable time following entry of a Final Order
resolving the dispute and approving assumption.

**6.04.   Bar Date for Rejection Damages**.   If the rejection of an executory contract or
unexpired lease pursuant to this Article gives rise to a Claim by the other party or parties to such
contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall
be classified in Class 4; provided, however, that the Unsecured Claim arising from rejection shall
be forever barred and shall not be enforceable against the Debtor, Reorganized Debtor, their
successors or properties, unless a proof of Claim is Filed and served on the Reorganized Debtor
within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court
authorizing rejection of the executory contract or unexpired lease, which order may be the
Confirmation Order.

14

# ARTICLE VII
## DETERMINATION OF CLAIMS

**7.01.   Objections to Claims.**  Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed under the Plan before the Effective Date, the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.  All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor' motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date.

**7.02.   Contingent Claims.**  Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

**7.03.   Undeliverable/Returned Distributions.**  Any distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of claim filed for such Creditor, or (ii) if no proof of claim is filed, at the address set forth on the Debtor' schedules. In the event that a distribution as herein provided is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such distribution for the affected Creditor for a period of 60 days following the Date of that distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the 60-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Reorganized Debtor.

**7.04.   Distributions on Allowance or Disallowance of Disputed Claims.**  No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

**7.05.   Reserve Pending Distributions.**.  With respect to any Disputed Claims in Class 3 (General Unsecured Claims), on a monthly basis and at the same time as the Debtor make installment payments to the holders of Allowed Claims in such class hereunder, the Debtor shall set aside the Disputed Claims Reserve equal to the amount the holder of the Disputed Claim would have received had such Disputed Claim been an Allowed Claim as of the Effective Date. Such Disputed Claims Reserve shall be released to the holder of a Disputed Claim within ten (10) days after it becomes an Allowed Claim so that such holder will receive all accrued but

15

unmade payments as of such date so that such holder will have received equal treatment to holders of Allowed Claims.  For purposes of the Disputed Claims Reserve, the Debtor shall reserve based upon the amount reflected in the books and records of the Debtor.

**7.06.**   **De Minimis Distributions.**  Any other provision of the Plan notwithstanding, the Reorganized Debtor shall not be required to make distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00).  Cash allocated to an Allowed Claim but withheld from distribution pursuant to this subsection shall be held by the Reorganized Debtor for the account of and future distribution to the holder of such Allowed Claim.

**7.07.**   **Additional Charges.**  Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

### ARTICLE VIII
### CONDITIONS PRECEDENT

**8.01.**   **Conditions to Confirmation.**   The following are conditions precedent to confirmation of **this** Plan:

(a)   **Approval of Disclosure Statement.**  The Bankruptcy Court enters a Final Order approving the Disclosure Statement.

(b)   **Form of Confirmation Order.**  The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtor and creditors. If the Debtor is unable to reach an agreement with any party regarding the form and substance of the Confirmation Order, the Bankruptcy Court will resolve all such disputes.

(c)   **Substance of Confirmation Order.**   The Confirmation Order contains the following:

(1)   The provisions of the Confirmation Order are nonseverable and mutually dependent;

(2)   Approval of the assumption, rejection, or assumption and assignment of the specified executory contracts and unexpired leases;

(3)   All executory contracts or unexpired leases assumed and assigned by a Debtor during the Chapter 11 Case or under this Plan remain in full force and effect for the benefit of the Reorganized Debtor or any assignees of such contracts or leases, as the case may be, notwithstanding any provision in any such contract or lease (including those described in Bankruptcy Code § 365(b)(2) and (f)) that prohibits or conditions such assignment or transfer or that enables, permits, or requires termination of such contract or lease;

    (4)    The Reorganized Debtor is released and discharged from all obligations arising under all executory contracts and unexpired leases rejected by the Debtor during the Chapter 11 Case or under this Plan;

    (5)    Except as otherwise provided in the Plan, the Reorganized Debtor are discharged in accordance with Article 10.03 of this Plan; and

    (6)    Retention of jurisdiction of the Bankruptcy Court to the fullest extent permissible by applicable law, and at least to the extent contemplated by Article IX of this Plan.

**8.02.   Conditions to Effectiveness.**   The following are conditions precedent to the occurrence of the Effective Date:

    (a)    The Confirmation Date occurs;

    (b)    All documents necessary to effectuate the Plan shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date).

    (c)    All authorizations, consents required, if any, in connection with the consummation of this Plan shall have been obtained.

    (d)    The Confirmation Order is not stayed pursuant to an order issued by a court of competent jurisdiction.

**8.03.   Waiver of Conditions.**   The Debtor may waive any condition to confirmation or the **Effective** Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of this Plan.

### ARTICLE IX
### JURISDICTION OF THE COURT

**9.01.   General Retention of Jurisdiction.**   Until the Bankruptcy Case is closed, the Bankruptcy shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary in the enforcement of any cause of action that each has or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive entry of the Confirmation Order and occurrence of the Effective Date and shall not be affected thereby except as specifically provided herein.

**9.02.   Specific Purposes**.   Without limiting the effect of Article 9.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)   modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)   correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)   hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d)   hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e)   hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements or other agreements entered into by any of the Debtor during the Case.

(f)   enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g)   assure the performance by Reorganized Debtor of their obligations to make distributions under the Plan;

(h)   enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

(i)   hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j)   ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k)   hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of title 28 of the United States Code;

18

    (l)    enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

    (m)    hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

    (n)    hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

    (o)    recover all assets of the Debtor and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

    (p)    hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

    (q)    hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

    (r)    consider and act on the compromise and settlement of any Claim against, or Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

    (s)    hear and determine all questions and disputes regarding title to the assets of any of the Debtor, their respective Estates;

    (t)    hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

    (u)    enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

### ARTICLE X
### EFFECT OF CONFIRMATION

**10.01.  General.**  On the Effective Date, the provisions of this Plan shall be binding on the Debtor, any **person** or entity acquiring property under the Plan, and any Creditor of the Debtor, whether or not such Creditor has accepted the Plan.

**10.02.  Plan Injunction.**  Except as specifically set forth in the Plan, from and after the Confirmation Date, all holders of Claims against and Interests in the Debtor are permanently restrained and enjoined (i) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Interests against the Debtor, the Estate,

(ii) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Estate, (iii) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Estate, (iv) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (v) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a Disputed Claim or Disputed Interest may continue to prosecute its proof of Claim or Interest in the Bankruptcy Court and all holders of Allowed Claims and Interests shall be entitled to enforce their rights under the Plan.

**10.03.  Discharge of Claims.**  Except as otherwise provided in the Plan, the rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, and, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of their assets or property to the fullest extent permitted under Section 1141 of the Bankruptcy Code. Upon the Effective Date, and except as otherwise provided in the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. Subject to the provisions of the Plan, all holders of Claims or Equity Interest shall be precluded from asserting against the Debtor, or any of their assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of interest. Subject to the provisions of the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Interest based upon such obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor.  In accordance with Section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or their Property to the extent it relates to a discharged Claim.

**10.04.  Exculpation.**  The Debtor solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and participated, in good faith and in compliance with the applicable provisions of the Bankruptcy Code in seeking confirmation of the Plan and is not liable, on account of such solicitation or participation, for violation of **any** applicable law, rule, or regulation governing solicitation of acceptance or rejection of the Plan consistent with the provisions of 11 U.S.C. § 1125(e), and the Debtor is entitled to the protection afforded in such section.

**10.05.  Indemnification Obligations.**  Nothing in this Plan shall diminish or impair the enforceability of any obligation of the Debtor to indemnify, reimburse or limit the liability of any Person, including but not limited to any officer or director of the Debtor, or any agent,

Professional or financial advisor, relating to any acts or omissions occurring subsequent to the Petition Date and such obligations shall be assumed by the Reorganized Debtor.

**10.06. Payment to the United States Trustee**. In accordance with § 1129(a)(12) of the Bankruptcy **Code** and 28 U.S.C. § 1930, the Reorganized Debtor shall on the Confirmation Date pay all fees then due to the United States Trustee.

**10.07. Post-Petition Reports and Payments to the United States Trustee**. On the Confirmation Date, the Debtor shall be relieved of any further obligation to file monthly operating reports with the Bankruptcy Court. The Reorganized Debtor shall make all post-confirmation **payments** to the United States Trustee as may be required pursuant to 28 U.S.C. § 1930(a)(6) from available funds, and shall provide to the United States Trustee such financial reports as the United States Trustee may reasonably request, until the Chapter 11 Case has been closed by the Bankruptcy Court.

**10.08. Retention of Claims and Interests**. Post-petition, and pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, any and all claims or interests belonging to the Debtor or to the Debtor' Estate shall be prosecuted and enforced by the Reorganized Debtor, This includes, but is not limited to, any and all claims or causes of action for avoidance, recovery or subordination under §§ 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

**10.09. Setoffs**. The Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any **nature** whatsoever that the Debtor may have against the holder of such Claim; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder. After the Effective Date, such right shall pass to the Reorganized Debtor.

**10.10. Final Decree**. Not more than six months after the Effective Date, the Reorganized Debtor shall file appropriate pleadings with the Bankruptcy Court requesting that this Chapter 11 Case be closed **administratively**.

## ARTICLE XI
## NOTICES

**11.01. General**. After the Confirmation Date, all notices required to be given under any provision of the Bankruptcy Code and/or the Bankruptcy Rules shall be sent by first class mail, postage prepaid, only to (a) the Reorganized Debtor; (b) the counsel representing the Reorganized Debtor; (c) the United States in accordance with Bankruptcy Rule 2002(j), (d) the United **States** Trustee; and (e) those persons specifically requesting, pursuant to written request filed with the Court after the Confirmation Date, that they be furnished with notices. Service of all notices, as provided herein, shall constitute full and complete service on all Creditors and parties-in-interest.

## ARTICLE XII
## MISCELLANEOUS

**12.01.  Amendment or Modification to Plan**.  This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to § 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under § 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor.  A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**12.02.  Correction of Plan**.  After the Effective Date, only the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies, in the Plan, or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

**12.03.  Revocation of Plan**.  The Debtor reserve the right to revoke and withdraw this Plan prior to entry of the Confirmation Order. If the Debtor revoke or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver, an admission, or release of any **defenses** or claims against the Debtor, the bankruptcy estate, or any other person or to prejudice in any manner the rights, claims, or defenses of the Debtor in any further proceedings or litigation whatsoever, involving the Debtor, the Estate, and their respective successors or assigns, if any.

**12.04.  Binding Effect**.  The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of **Claims** and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

**12.05.  Notices**.  All notices, requests and demands to or upon the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, with a copy by mail, addressed as follows:

If to the Debtor:        Eric J. Taube
                         Mark C. Taylor
                         Hohmann, Taube & Summers, L.L.P.
                         100 Congress Avenue, 18th Floor
                         Austin, TX 78701
                         Phone: (512) 472-5997
                         Fax:  (512) 472-5248

**12.06.** **Final Allowance**. Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and allowed by the Court. However, objections on claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

**12.07.** **Consummation**.   Upon completion of all payments and all transactions contemplated by this Plan, the Plan **shall** be deemed fully consummated, and this case shall be closed. Until substantial consummation occurs, the Debtor may move for and be granted modifications of this Plan. Once full consummation is accomplished, an appropriate Order will be entered closing the Chapter 11 Case, and such Order closing the case shall be deemed a final decree and shall include, in addition to the normal injunctive language, an Order that any term or provision of any Debtor or security agreement between the Debtor and any of their creditors will be null and void to the extent that such clause provides that the filing of bankruptcy, reorganization, or any other solvency proceeding operates as a default under such agreement, or similar language. Creditors shall be enjoined from instituting or continuing any legal action to enforce such terms or provisions, since they will be declared null and void. Further, all creditors shall be enjoined from instituting or continuing any legal action or Liens against the property of the estate, unless an Order is entered by this Court declaring a default in payments under the Plan. Further, the order closing this estate shall provide that all jurisdiction of this Court will terminate, except such jurisdiction as is otherwise provided hereinabove (including any disputes that may arise between the Reorganized Debtor and the Lender), or except and unless the Reorganized Debtor requires reopening of this case to enforce any injunctions contained in the Order closing this case (or any similar beneficial orders).

**12.08.** **Disbursing Agent**. The Debtor shall act as disbursing agent under the Plan.

**12.09.** **Further Authorization**.   The Debtor shall be entitled to seek such orders, judgments, injunctions, **and** rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**12.10.** **Means of Cash Payment**. Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Debtor.

**12.11.** **Severability of Plan Provisions**. If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtor to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

23

**12.12.** <u>Successors and Assigns</u>.   This Plan shall be binding upon and inure to the benefit of the Debtor, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**12.13.** <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the principles of conflicts of law of such jurisdiction.

**12.14.** <u>Conflicts</u>.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the **terms** of this Plan shall govern.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

24

Dated:    June 28, 2013.

          SCC KYLE PARTNERS, LTD.

          By: SCC Kyle Partners GP, LLC, its general partner

          By: */s/ Scott Deskins*_____
               Scott Deskins, President

# EXHIBIT A

| Lot | Block | Legal | Retail Value |
|---|---|---|---|
| 3 | A | SCC Bunton Creek Subdivision, Replat of Lots 3-12, Block A (1.5028 Acres) | $2,000,000 |
| 4 | A | SCC Bunton Creek Subdivision, Replat of Lots 3-12, Block A (1.3662 Acres) | $1,340,000 |
| 5 | A | SCC Bunton Creek Subdivision, Replat of Lots 3-12, Block A (1.0485 Acres) | $1,025,000 |
| 6.1 | A | SCC Bunton Creek Subdivision, Replat of Lots 3-12, Block A (3.2 Acres) | $1,535,000 |
| 6.2 | A | SCC Bunton Creek Subdivision, Replat of Lots 3-12, Block A (7.62 Acres) | $2,460,000 |
| 1-C | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (0.770 Acres) | $940,000 |
| 1-D | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (0.786 Acres) | $960,000 |
| 1-E/F | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (1.30 Acres) | $1,400,000 |
| 1-G | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (0.684 Acres) | $850,000 |
| 1-H | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (1.344 Acres) | $1,315,000 |
| 1-K | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (8.608 Acres) | $3,375,000 |
| 1-L | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (15.542 Acres) | $5,000,000 |
| 1-M | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (3.672 Acres) | $1,440,000 |
| 1-N | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (0.896 Acres) | $880,000 |
| 1-Q | B | Seton Hays County Subdivision, Replat of Lot 1, Block B (1.061 Acres) | $1,040,000 |

EXHIBIT A

Case 1:13-cv-00756-LY   Document 1-4   Filed 08/29/13   Page 34 of 34

12-11978-hcm   Doc#133-1   Filed 07/01/13   Entered 07/01/13 13:16:07   Ntc/O-CnfPln
intp/allcr Pg 1 of 1

# UNITED STATES BANKRUPTCY COURT
## Western District of Texas

Bankruptcy Case No.: 12–11978–hcm
Chapter No.: 11
Judge: H. Christopher Mott

IN RE: **SCC Kyle Partners, Ltd.** , Debtor(s)

## NOTICE OF ORDER CONFIRMING PLAN

Notice is hereby given of entry of the following order of this Court on 7/1/13

133 – Order Confirming Chapter 11 Plan, (related document(s): 102 Amended Second Modification to Proposed
102   Amended Plan of Reorganization filed by Mark Curtis Taylor for Debtor SCC Kyle Partners, Ltd..
(Attachments: # 1 Service List)(Taylor, Mark) (Related Document(s): 49 Amended Chapter 11 Plan filed by
Mark Curtis Taylor for Debtor SCC Kyle Partners, Ltd.. (Taylor, Mark) (related document(s): 32 Chapter 11
Plan filed by Mark Curtis Taylor for Debtor SCC Kyle Partners, Ltd.. (Attachments: # 1 Service List))))
Application for Final Decree due by 12/30/2013 (Order entered on 7/1/2013) (Benitez, Estella)

Dated:  7/1/13

Yvette M. Taylor
Clerk, U. S. Bankruptcy Court

[Order Confirming Plan Notice] [Ntcocp11apac]

# Appendix Tab 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 12-11978-HCM-11 |
| SCC KYLE PARTNERS, LTD., | § | (CHAPTER 11) |
| | § | |
| DEBTOR. | § | |

## WHITNEY BANK'S OBJECTION TO CLAIM
## OF SETON FAMILY OF HOSPITALS

THIS PLEADING REQUESTS RELIEF THAT MAY BE
ADVERSE TO YOUR INTERESTS.

IF NO TIMELY RESPONSE IS FILED WITHIN
TWENTY-ONE (21) DAYS FROM THE DATE OF
SERVICE, THE RELIEF REQUESTED HEREIN MAY
BE GRANTED WITHOUT A HEARING BEING HELD

A TIMELY FILED RESPONSE IS NECESSARY FOR A
HEARING TO BE HELD

TO THE HONORABLE H. CHRISTOPHER MOTT:

WHITNEY BANK, successor-by-merger to Whitney National Bank, individually and as agent for certain pre-petition lenders ("Whitney Bank"), a secured creditor and party in interest, file its Objection to the Proof of Claim of Seton Family of Hospitals d/b/a Seton Medical Center Hays (hereinafter "Seton").  In support Whitney Bank would respectfully show the Court as follows:

### Preliminary Statement

1.      This case is a single asset real estate bankruptcy case that was filed to stop a scheduled foreclosure sale of certain parcels of real property totaling 50.174 acres of land in Kyle, Texas (the "Property"), which in essence is the Debtor's only asset.  This case for all intents and purposes is a two-party dispute between Debtor and Whitney Bank, the secured lender.  Seton has filed a proof of claim in the amount of $500,000 based on a charitable pledge

to Seton Hays Foundation made by Debtor on August 5, 2008. Whitney Bank objects to Seton's claim on the grounds that it is unenforceable under Texas state law and Seton is not a creditor of the Debtor.

## Jurisdiction

2.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a) because this is a proceeding arising under, arising in or related to a case under Title 11 of the United States Code.

## Background

3.      On August 14, 2012, Whitney Bank posted the Property for foreclosure on September 4, 2012. On August 31, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code to stop the foreclosure sale. Debtor operates as a Texas limited partnership and is a Single Asset Real Estate Debtor pursuant to 11 U.S.C. § 101(51B). Its sole asset is the Property located in The Village at Kyle retail center in Kyle, Texas.

4.      On December 18, 2012, Seton filed a Proof of Claim [Claim No. 4] in the bankruptcy case stating that it is a creditor with an unsecured claim in the amount of $500,000.00. The basis of Seton's unsecured claim is a "Seton Hays Foundation Pledge" form signed by Scott Deskins on August 5, 2008, pledging $1,000,000.00 to Seton Hays Foundation to be paid "by year end 2008." Seton filed an Amended Proof of Claim on January 15, 2013, changing the name and address where notice should be sent. A true and correct copy of Seton's Amended Proof of Claim [Claim 4-2] is attached hereto as Exhibit A.

5.      The pledge form signed by Scott Deskins states as follows:

---

> *"I/We understand that The Seton Hays Foundation will use my gift to help defray the cost to plan, construct, equip facilities and/or fund on-going programs at Seton. The Seton Hays Foundation affirms that no goods or services were provided to the donor in exchange for their contribution. Please consult your tax advisor as to the deductibility of your donation."*

The pledge form purports to be prepared for SCC Kyle Partners, Ltd. and gave permission for public recognition of the contribution yet failed to state the name to appear in any related publicity, and reserved "naming the grand entrance and lobby."

6.     At the Confirmation hearing for the Debtor's proposed Amended Plan of Reorganization, Scott Deskins testified that the pledge to Seton Hays Foundation was a charitable donation and not enforceable against the Debtor by Seton.  Mr. Deskins also testified he did not exercise any naming rights to the grand entrance or lobby on behalf of Debtor.

### ARGUMENT AND BRIEF OF AUTHORITIES

#### SETON NOT ENTITLED TO FILE PROOF OF CLAIM IN BANKRUPTCY CASE

7.     Only a creditor, indenture trustee or equity security holder of the Debtor may file a proof of claim in the bankruptcy case. See 11 U.S.C. §501 (a).  There is no dispute Seton is not an indenture trustee or equity security holder of the Debtor.  Therefore, in order to be allowed to file a proof of claim in the case, Seton must establish it is a creditor of the Debtor.

8.     A creditor of the Debtor is an entity that has a claim against the Debtor that arose at the time or before the petition date.  See 11 U.S.C. §101(10).  A claim under the Bankruptcy Code means –

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives

rise to a right of payment, whether or not such right to an equitable remedy is

reduced to judgment, fixed, contingent, matured, unmatured, disputed,

undisputed, secured, or unsecured." See 11 U.S.C. §101 (5).

A claim is not allowed if such claim is unenforceable against the Debtor under any agreement or

applicable law. See 11 U.S.C. §502 (a). The United States Supreme Court held that a "claim"

under the Bankruptcy Code refers to a right of payment recognized under state law. *Travelers*

*Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 1205,

167 L.Ed.2d 178 (2007). The Court must disallow a claim that is not enforceable against the

Debtor under applicable state law. See *In re Maxcy*, 45 B.R. 268, 270 (Bankr. D.Mass 1985).

9.     Under Texas law, an issue exists as to which party made the charitable pledge.

The charitable pledge form was signed by Scott Deskins with no indication that he was signing it

in any official capacity for Debtor. The Debtor is a Texas limited partner whose general partner

is SCC Kyle Partners GP, LLC., not Scott Deskins. While the form indicated it was "prepared

for SCC Kyle Partners, Ltd," nowhere in the remainder of the pledge form is there any

representation that Debtor is the party who pledged the amount to Seton Hays Foundation as

opposed to an undertaking by Scott Deskins individually. The pledge form is better suited for an

individual gift than a gift by a corporation. The space on the form where the name of the party

who was to receive publicity related to the pledge was left blank.

10.     In addition, Seton Hays Foundation is a Texas non-profit corporation, charter no.

800984513, was formed May 28, 2008. The Daughters of Charity Health Services of Austin

d/b/a Seton Family of Hospitals is a separate Texas non-profit corporation, charter no. 919001,

formed on April 5, 1900. Seton's Proof of Claim does not indicate how it purportedly became

---

the holder of a pledge made to Seton Hays Foundation. Absent an assignment, Seton lacks standing to file a claim against the Debtor in the bankruptcy case based on a pledge to Seton Hays Foundation, a separate non-profit corporation.

11.     Even assuming the pledge was made by the Debtor, Scott Deskins testified at the confirmation hearing that the charitable pledge to Seton Hays Foundation was not enforceable against the Debtor and Seton could not bring suit against the Debtor to enforce the claim. The principal reason why Seton could not enforce the charitable pledge is because the pledge lacks consideration.

### *CHARITABLE PLEDGE UNENFORCEABLE DUE TO LACK OF CONSIDERATION*

12.     A contract lacking consideration is unenforceable. *Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex.App.-San Antonio 2011, pet. denied). Seton's claim based upon the pledge form is not an enforceable contract because it was not supported by valid consideration. "Consideration consists of either a benefit to the promisor or a detriment to the promise." *Robinson v. Nat'l Autotech, Inc.,* 117 S.W.3d 37, 41 (Tex.App.-Dallas 2003, pet. denied). The pledge form on its face states that no goods or services were provided in exchange for the contribution.

13.     Indeed, the "*sine qua non* of a charitable contribution is a transfer of money or property without adequate consideration." *United States v. American Bar Endowment,* 477 U.S. 105, 118, 106 S.Ct. 2426, 2433, 91 L.Ed.2d 89 (1986). Even assuming some value was received by Debtor, it was not in exchange for the charitable contribution. *Quid pro quo* is inconsistent with charitable contribution. *See Hernandez v. Commissioner*, 490 U.S. 680, 691, 109 S.Ct. 2136, 2144-45, 104 L.Ed.2d 766 (1989).

---

### SETON'S CLAIM SHOULD BE DISALLOWED

14.   Presumably, Debtor has failed to object to Seton's claim as of this date because Seton is the only affirmative vote it received under its proposed Amended Plan of Reorganization for cramdown purposes. A claim against the bankruptcy estate based upon a charitable pledge that is not supported by consideration should be disallowed. *See In re Bashas' Inc*, 482 B.R. 611, 612 (D. Ariz. 2012). In addition, because Seton does not occupy the position of either a creditor, an equity security holder or an indenture trustee holding an allowed claim against the Debtor, it does not hold a voting interest in the bankruptcy case. *See In re Lincoln Avenue & Crawford's Home for the Aged, Inc.*, 164 B.R. 600 (Bankr. S.D. Ohio 1994). For such reasons, the Court should disallow Seton's claim against the Debtor and disregard its vote with respect to the proposed Amended Plan of Reorganization.

### PRAYER

WHEREFORE, Whitney Bank respectfully requests that the Court enter an order disallowing Seton Family of Hospitals' Amended Proof of Claim [Claim No. 4] and disallowing its vote on the proposed Plan of Reorganization. Whitney Bank also requests any and all other general relief to which it may be entitled.

DATED: April 23, 2013

WINSTEAD PC
401 Congress Ave., Suite 2100
Austin, Texas 78701
512/370-2800 – telephone
512/370-2850 – facsimile

By:___/s/ James G. Ruiz_____
James G. Ruiz
State Bar No. 17385860

**ATTORNEYS FOR WHITNEY BANK**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 23, 2013, a true and correct copy of this document was served electronically on all registered ECF users in this case, and by U.S. first class mail on all persons identified below and to the creditors identified by Debtor in the attached matrix:

Eric J. Taube
Hohmann Taube & Summers, LLP
100 Congress Ave., Suite 1800
Austin, TX 78701
Facsimile: (512) 472-5248

OFFICE OF THE U.S. TRUSTEE
903 San Jacinto Blvd., Room 230
Austin, TX 78701
Facsimile: (512) 916-5331

Ida A. Murguia, JD
1345 Philomena Street, Suite 410.2
Austin, Texas 78723

                                        /s/ James G. Ruiz
                                        James G. Ruiz

AUSTIN_1 \698423 v1  04/23/2013

Case 1:13-cv-00756-LY  Document 7-1  Filed 09/20/13  Page 45 of 111

12-11978-hcm Doc#105 Filed 04/23/13 Entered 04/23/13 16:46:15 Main Document Pg 8 of
12-11978-hcm Claim#42-2 Filed 01/15/13 Main Document Page 1 of

*\* Amended Proof of Claim Changing notice Address.*

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT   Western District of Texas | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor:<br>SCC Kyle Partners, LTD | Case Number:<br>12-1978 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| | COURT USE ONLY |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Seton Family of Hospitals d/b/a Seton Medical Center Hays | |
| Name and address where notices should be sent:<br>Ida A. Murguia, JD<br>1345 Philomena Street, Suite 410.2<br>Austin, TX 78723<br><br>Telephone number:  324-5917      email:  imurguia@seton.org | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(If known)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number:      email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

1. Amount of Claim as of Date Case Filed:      $          500,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim:   SCC/Seton Hays Foundation Pledge Agreement _____
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection:  _____

Amount of Secured Claim:    $_____

Amount Unsecured:    $    500,000.00

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

EXHIBIT
A

B 10 (Official Form 10) (12/11)                                                                                          2

---

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: _____
Title: _____
Company: _____                          Ida A. Murgula, JD        01/15/2013
Address and telephone number (if different from notice address above):     (Signature)                    (Date)

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Case 1:13-cv-00756-LY   Document 7-1   Filed 09/20/13   Page 47 of 111

12-11978-hcm   Doc#106   Filed 04/23/13   Entered 04/23/13 16:46:15   Main Document   Pg 10
12-11978-hcm   Claim#4-2   Filed 01/25/13   Main Document   Page 3 of 4
of 111

B 10 (Official Form 10) (12/11)                                                                                          3

| _____DEFINITIONS_____ | _____INFORMATION_____ |

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.



# Seton Medical Center Hays

A member of the Seton Family of Hospitals

### Seton Hays Foundation Pledge

**Prepared for:**

*SCC Kyle Partners, Ltd.*

Name

*301 Congress Avenue, Suite 1550  Austin    Texas*     *78735*

Address                                City            State                  Zip

*SDeskins@sccdevelopment.net*     *512-329-9797*

Email                              Phone (day)                    (evening)

It is my/our pleasure to pledge $ *1,000,000.⁰⁰* to the Seton Hays Foundation.

Payment will be made by:   ☑ Check       ☐ Credit Card       ☐ Gift of Stock
*will be paid by year end 2008.*

      a.  My check in the amount of  $ *1,000,000.⁰⁰*   ~~is enclosed:~~
         Checks made payable to The Seton Hays Foundation.
      b.  Charge my credit card: $ _____

         ☐American Express       ☐MasterCard       ☐Visa       ☐Discover

      Credit card number _____  Exp. Date _____

      c.  **Gift of Stock/Mutual Fund shares** (The Seton Hays Foundation will send you transfer instructions.)
      Estimated date of stock transfer: _____
      Stock name and estimated shares: _____

The balance, if any, will be payable over _____ years.

Please send my first reminder on *11/15/08* for $ *1,000,000.⁰⁰* and thereafter as follows:

Monthly $ _____  Quarterly $ _____  Semiannually $ _____  Annually $ _____

_____                    *8/5/08*
Signature          *I/we DO GIVE HWA-SAB*          Date
                                          *and reserve naming the*
~~I/We give~~ I/we do not give permission for public recognition of my contribution. *grand entrance and lobby.*
                                                                    *HWA-SAB*
_____
Please Print Name(s) as You Would Like It to Appear in Related Publicity.

For more information please contact:
**Gerald Hill, Executive Director**
gwhill@seton.org
512-324-8232

*I/We understand that The Seton Hays Foundation will use my gift to help defray the cost to plan, construct, equip facilities and/or fund ongoing programs at Seton. The Seton Hays Foundation affirms that no goods or services were provided to the donor in exchange for their contribution. Please consult your tax advisor as to the deductibility of your donation.*

Administration Offices: 147 Elmhurst Drive, Suite 600  •  Kyle, Texas 78640  •  (512) 324-5000  •  www.seton.net/hays

Our mission inspires us to care for and improve the health of those we serve with a special concern for the sick and the poor.
We are called to Service of the Poor, Reverence, Integrity, Wisdom, Creativity and Dedication.

# Appendix Tab 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SCC KYLE PARTNERS, LTD | § | Case No.  12-11978-hcm |
| | § | |
| Debtor. | § | |

## DEBTOR'S AMENDED DISCLOSURE STATEMENT
## FOR DEBTOR'S AMENDED PLAN OF REORGANIZATION

### IMPORTANT DATES

Date by which Ballots must be received: **February 25, 2013, at 5:00 p.m.** (Prevailing Central Time)

Date by which Objections to Confirmation of the Plan must be filed and served **February 25, 2013, at 5:00 p.m.** (Prevailing Central Time)

Hearing on confirmation of the Plan: **March 7, 2013, at 9:30 a.m.** (Prevailing Central Time)

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19679350
HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

Dated:  January 21, 2013.               **ATTORNEYS FOR SCC KYLE PARTNERS, LTD., DEBTOR IN POSSESSION**

<u>**IMPORTANT NOTICE**</u>

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT INCLUDES FORWARD-LOOKING STATEMENTS BASED LARGELY ON THE CURRENT EXPECTATIONS OF THE DEBTOR AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AFFECTING THE FINANCIAL CONDITION OF THE DEBTOR OR THE REORGANIZED DEBTOR'S BUSINESS. THE WORDS "BELIEVE," "MAY," "WILL," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS INDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS, INCLUDING THOSE DESCRIBED BELOW UNDER THE CAPTION "RISK FACTORS." IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. NEITHER THE DEBTOR NOR THE REORGANIZED DEBTOR UNDERTAKE ANY OBLIGATIONS TO UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE.

NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS ASSETS) ARE AUTHORIZED BY THE DEBTOR, OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT, WHICH MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED, EXCEPT AS SPECIFICALLY REFERENCED HEREIN. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR AND ITS INTERNAL ACCOUNTING STAFF, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. THE DEBTOR'S PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR IS URGED TO REVIEW THE PLAN IN ITS ENTIRETY PRIOR TO VOTING ON IT.

THE DEBTOR MAKES NO REPRESENTATIONS WITH RESPECT TO THE EFFECTS OF TAXATION (STATE OR FEDERAL) ON THE INTEREST HOLDERS OR CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS OR INTERESTS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY THE DEBTOR. CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PROFESSIONAL ADVISORS IF THEY HAVE ANY SUCH QUESTIONS.

## ARTICLE 1.
## INTRODUCTION

This Mended Disclosure Statement is submitted by SCC Kyle Partners, Ltd. (the "Debtor"), the chapter 11 debtor-in-possession in the above-captioned Case, in connection with the Debtor's efforts to solicit votes necessary to confirm the Debtor's Amended Plan of Reorganization (the "Plan"). A copy of the Plan is included with the materials supplied in the packet you have received.

### 1.01    Filing of the Debtor's Chapter 11 Case

On August 31, 2012 (the "Petition Date" or the "Filing Date"), Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court" or "Bankruptcy Court"). The Debtor continues to manage its affairs as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. This Disclosure Statement and the accompanying Plan are filed on behalf of the Debtor.

### 1.02    Purpose of Disclosure Statement

The purpose of this Disclosure Statement is to provide you, as the holder of a Claim against the Debtor, with information to enable you to make a reasonably informed decision on the Plan before exercising your right to vote to accept or reject the Plan.[1]

On January 14, 2013, after notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing information, of a kind and in sufficient detail, adequate to enable the holders of Claims against the Debtor to make an informed judgment to accept or reject the Plan (A copy of the *Order Pursuant to 11 U.S.C. §1125, and FED. R. BANKR. P. 3017 Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan* is included in the packet you have received. **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THIS INFORMATION OR THE BANKRUPTCY COURT'S ENDORSEMENT OF THE PLAN.**

You should read all of this Disclosure Statement before voting on the Plan. **HOWEVER, THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN ITSELF BY EACH HOLDER OF A CLAIM OR INTEREST. THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW. THE DESCRIPTION OF THE PLAN IS A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED ATTACHMENTS IN THEIR ENTIRETY FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS. THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.**

---

[1] Capitalized terms that are not defined in the Disclosure Statement are defined in the Plan.

You are urged to consult with your own financial and other advisors in deciding whether to vote to approve or reject the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to use any information concerning the Debtor or their businesses other than the information contained in this Disclosure Statement.

About this Disclosure Statement:

- The statements contained in this Disclosure Statement are made as of the date that the Bankruptcy Court enters an order approving this Disclosure Statement, unless another time is specified in this Disclosure Statement. Neither the delivery of this Disclosure Statement nor any action taken in connection with the Plan implies that the information contained in this Disclosure Statement is correct as of any time after that date.

- Unless the context requires otherwise: (a) the gender (or lack of gender) of all words used in this Disclosure Statement includes the masculine, feminine and neuter; (b) references to articles and sections (other than in connection with the Bankruptcy Code, the Bankruptcy Rules, another specified law or regulation or another specified document) refer to the articles and sections of this Disclosure Statement; and (c) "including" means "including, without limitation."

- Many capitalized words used in this Disclosure Statement have been defined in the context of the provisions in which they first appear within this Disclosure Statement. Any other capitalized terms used in this Disclosure Statement are intended to have the meanings ascribed to them in the Plan. Any capitalized term not defined in the context of a provision or in the Plan shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, whichever is applicable.

- You may not rely on this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in this Disclosure Statement constitutes or will be deemed to be advice on the tax or other legal effects of the Plan on holders of Claims or interests.

- Certain of the information contained in this Disclosure Statement is forward-looking. This Disclosure Statement contains estimates and assumptions that may prove not to have been accurate and financial projections that may be materially different from actual future experiences.

- Acceptance or rejection of the Plan is subject to a number of risks. See "Risk Factors" at Section 9 of this Disclosure Statement.

## 1.03    Plan Balloting and Confirmation Procedures

### 1.03.01    *Holder of Claims and Interests Entitled to Vote*

Only Classes of Claims and interests that are (i) "impaired" by a plan of reorganization or liquidation and (ii) entitled to receive a distribution under such a plan are entitled to vote to accept or reject a plan under the Bankruptcy Code. In this case, only holders of Claims in Class 3, Class 4, and Class 5 are impaired, or possibly impaired, by the Plan and entitled to vote to

2

accept or reject the Plan. Claims in Class 1 and Class 2 are unimpaired by the Plan, and the holders thereof are conclusively presumed to have accepted the Plan.

      1.03.02      ***Voting Procedures***

      If you are entitled to vote to accept or reject the Plan, a Ballot (the "Ballot") for acceptance or rejection of the Plan and a pre-addressed envelope for return of the Ballot are enclosed. BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3, 4 and 5 7 AND, BECAUSE THEY ARE THE ONLY HOLDERS OF CLAIMS THAT MAY VOTE TO ACCEPT OR REJECT THE PLAN. If you are the holder of a Claim in one of these Classes and did not receive a Ballot, received a damaged or illegible Ballot, or lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement and Exhibits hereto, the Plan or the voting procedures in respect thereof, please contact:

Eric J. Taube/Mark C. Taylor
HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

      After carefully reviewing this Disclosure Statement, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan, then return the Ballot to the Debtor's counsel, at the address set forth on the Ballot, by **5:00 p.m.**, (Prevailing Central Time) on February 25, 2013. Any Ballot not indicating an acceptance or rejection will be deemed an acceptance of the Plan. You may also return your Ballot by courier or fax by following the instructions on the Ballot. **ANY BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER 5:00 P.M., PREVAILING CENTRAL TIME, ON FEBRUARY 25, 2013, WILL NOT BE COUNTED, UNLESS THIS DATE IS EXTENDED BY THE BANKRUPTCY COURT.**

      1.03.03      ***Voting Requirements for Class Acceptance of the Plan***

      YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. In order for the Plan to be "accepted" by Creditors and interest holders, at least sixty-six and two-thirds percent (66.66%) in amount of Allowed Claims and more than fifty percent (50%) in number of Allowed Claims voting in each Class must accept the Plan. By not voting, a Creditor favoring acceptance of the Plan jeopardizes confirmation.

      1.03.04      ***Confirmation Hearing***

      The Bankruptcy Court has entered an order fixing **March 7, 2013, at 9:30 a.m.** (Prevailing Central Time), Bankruptcy Courtroom for the Hon. H. Christopher Mott, 903 San Jacinto, Austin, Texas as the date, time and place for the initial commencement of a hearing on confirmation of the Plan, and fixing **February 25, 2013 at 5:00 p.m.**, (Prevailing Central

3

Time), as the time by which all objections to confirmation of the Plan, which must be accompanied by a memorandum of authorities, must be filed with the Bankruptcy Court and served on counsel for the Debtor. The confirmation hearing may be adjourned from time to time without further notice except for the announcement of the adjourned time and date at the confirmation hearing or any adjournment thereof.

Section 1128(a) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of the Claim or Interest held or asserted by the objecting party against the Debtor's Estate, the basis for the objection and the specific grounds thereof. The objection, together with proof of service thereof, must then be filed with the Bankruptcy Court, with copies served upon the following and upon the Limited Service list in this case:

Eric J. Taube/Mark C. Taylor
HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701

**UNLESS AN OBJECTION IS TIMELY AND PROPERLY SERVED AND FILED BY FEBRUARY 25, 2013 AT 5:00 P.M. (PREVAILING CENTRAL TIME), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## ARTICLE 2.
## DEBTOR'S BACKGROUND AND FINANCIAL PICTURE

2.01 **General**

Debtor is a Texas limited partnership whose general partner is SCC Kyle Partners GP, LLC. The limited partners are Scott Deskins, J. Kelly Shaw, Adam T. Love and Kyle investment Group, LLC.

2.02 **History of Debtor and Causes of Bankruptcy Filing**

The Debtor was formed on September 24, 2007, for the purposes to acquire, develop, sell, lease or operate a 147-acre tract of land in Kyle, Texas, to be called the "Village at Kyle" (the "Property"). The Debtor purchased the Property for $27,000,000.00, financed by a loan from several lenders, with Whitney Bank acting as Agent for all lenders. The total of the approved financing was $58,360,000.00, which was to cover development costs for the Property as well.

Following the purchase, the Debtor developed the Property, including providing land work, utilities, drainage and road improvements, along with other physical and legal development typically associated with commercial real estate. The Property was platted, and has been re-platted from time-to-time after property sales. The Debtor has been successful in selling portions of the Property since 2008, including sales to Lowe's Home Centers, Inc., International Bank of Commerce, Broadway National Bank, Halle Properties (where a Discount

Tire Center was built), and Randolph Brooks Federal Credit Union. Debtor has also sold tracts to affiliates, including a sale to SCC Kyle Drug Store, Ltd. (for use by Walgreens) and SCC Kyle Lot 1-J Ltd. (where a retail strip center has been developed). The Debtor has also donated portions of the Property to the City of Kyle or Hays County, consisting of a detention pond, , roads and other common area property. Most recently, in July 2012, the Debtor sold a 17.6670 acre tract to Wal-Mart Real Estate Business Trust.

Additionally, the Debtor is a party to certain economic incentive agreements with Hays County and the City of Kyle (the "Incentive Agreements"). These agreements provide for a refund of a portion of the sales taxes collected by the City of Kyle and Hays County for any retail activity of the original Property. This currently generates approximately $30,000.00 per quarter for the Debtor. As more retail stores are built, this amount will increase.

Though the Debtor has been successful in developing the Property and selling significant portions, Whitney Bank, as Agent, has declined to extend the maturity of the indebtedness and to fund further development. Whitney Bank ceased advancing funds on or about August 1, 2009. The debt matured on January 2, 2012, and the Debtor did not have the cash to pay the loan at that time either from operations or capital contributions from partners. Though the Debtor and Whitney Bank engaged in a series of negotiations, Whitney Bank posted the remaining portions of the Property for foreclosure to be conducted on September 4, 2012 shortly after the payment of approximately $5,000,000 to Whitney in connection with the Wal-Mart sale transaction. The Debtor filed its voluntary petition under Chapter 11 of Title 11 of the United States Code on August 31, 2012.

**ARTICLE 3.**
**SELECTED FINANCIAL INFORMATION,**
**PROJECTIONS AND VALUATION ANALYSIS**

3.01    **General**

This section provides summary financial information concerning the Debtor, its assets and potential sources of recovery for creditors. The information is based on information available as of the date of this Disclosure Statement. Any forward-looking projections, including analysis and valuation of Litigation Claims, is based upon the Debtor's best estimates and belief but, as with any projections, may vary in the future.

3.02    **Operating Performance**

The Debtor's most recent Monthly Operating Report is attached as Exhibit "A." The Debtor's cash flow consists of the sales tax rebates discussed above.

3.03    **Financial Projections of the Reorganized Debtor**

Attached as Exhibit "B" are projections for sales, income and expenses for the next 5 years. These are based on the Debtor's historical sales, and take into account the expected impact of the development of the Wal-Mart store and the generation of additional revenues under the Incentive Agreements, as well as anticipated sales that are already under contract.

5

3.04 **Valuation and Description of Debtor's Assets**

The Debtor has obtained an appraisal from The Aegis Group, Inc., a property appraisal company located in Austin, Texas. The appraisal was performed by John Coleman, who holds the MAI designation. The value of the remaining 50.3704 acres as of August 18, 2012 was estimated to be $18,400,000 on an as-is, bulk sale basis with a 12-month exposure period. Because this valuation was done on a "bulk sale" basis, the Debtor believes it can achieve higher sales value through orderly sales.

The Debtor's other assets consist of the Incentive Agreements identified above. These Agreements run through 2025, and will continue to generate regular income to the Debtor. The Debtor estimates that after development of the Wal-Mart, the annual revenues will exceed $250,000.

The Debtor currently has other sales pending, subject to approval by the Bankruptcy Court. These include a sale of a .75 acre pad site to Bridgestone for $845,000, and a 3.2-acre tract to Avail Healthcare for $1,533,312. Debtor intends to retain a sufficient amount of any sale after the Effective Date to hold as an interest reserve for one year's interest plus a contingency reserve. The balance of net sales proceeds from these sales will be paid to the Lender.

## ARTICLE 4.
## PROCEEDINGS IN THE CHAPTER 11 CASE

4.01 **Commencement and Administration of the Case**

The Debtor's Chapter 11 Case was commenced on August 31, 2012.. The following is a description of the more significant matters to have come before the Court.

4.01.01 *Approval of Employment of Hohmann, Taube & Summers, LLP as Debtor's Counsel*

Taube & Summers, LLP as counsel for the Chapter 11 Debtor. As counsel for the Debtor, the firm is entitled to seek interim and final compensation from the Estate of Debtor upon duly noticed application and after a hearing before the Court.

4.01.02 *Property Sales*

As discussed above, the Debtor has entered contracts to sell property to Bridgestone and to Avail Healthcare, which will generate over $2 million to reduce the Debtor's secured debt. The court has entered orders approving these sales.

4.01.03 *Cash Collateral*

On November 15, 2012, the Debtor filed a Motion to Use Cash Collateral, seeking authorization to use a portion of the sales tax rebates to pay ordinary operating expenses to assist the Debtor's reorganization efforts. The Court has approved payment of bookkeeping fees

of $1000 per month, landscaping fees of $1200 per month, and a $10,000.00 payment to Bury Engineers for permitting work relating to the Bridgestone site.

## ARTICLE 5.
## SUMMARY OF THE DEBTOR'S PLAN

### 5.01    Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, the plan proponent attempts to restructure a debtor's financial affairs or effectively liquidate the debtor's assets for the benefit of the creditors, equity interest holders and other parties in interest. The Chapter 11 plan is the debtor's agreement with its creditors containing the terms and conditions for the operation and/or liquidation of the properties and assets of the debtor and the treatment of the Claims and interests of creditors and parties-in-interest.

According to Section 1125 of the Code, acceptances of a Chapter 11 plan may be solicited by the debtor only after a written disclosure statement approved by the Bankruptcy Court as containing adequate information has been provided to each creditor or equity interest holder.

### 5.02    Terms of the Plan Control

The following represents the Debtor's best efforts to describe the treatment afforded the Claims of the Creditors in various Classes. Creditors should be aware that the terms of the Plan control the treatment of all Claims. In the event of any inconsistencies between the Plan and this Disclosure Statement, the terms of the Plan shall be, in all events, determinative. The Debtor urges all Creditors to read the Plan for a complete understanding of the treatment of their Claims.

### 5.03    Classification and Treatment

5.1    Class I – Administrative Claims.   Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one(1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date.  All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the

earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor, and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. This class is not impaired.

5.1.2    Class II – Priority Tax Claims. Each holder of a Class II Priority Tax Claim shall receive payment of its Allowed Claim, in full, within sixty (60) months from the Petition Date, with statutory interest, in equal monthly payments beginning sixty (60) days from the Effective Date for the number of months remaining from such start date until the date which is sixty (60) months form the Effective Date; provided, however, that as portions of the remaining Property are sold, the outstanding taxes will be paid at closing. To the extent Debtor is liable for any such amounts, the Debtor will not be discharged from liability but shall not be required to make payments unless the amount(s) are not paid by the affiliated entities, if any. Class II is unimpaired.

5.1.3    Class III – Secured Claim of Lenders. The secured claim of the Lender group will be paid over 5 years from the Effective Date from cash proceeds on hand at the time of confirmation and ongoing sales of the remaining Property, with interest-only payments to be made quarterly beginning on the 30th day after the Effective Date at 4% per annum. Net proceeds from the sale of portions of the Property, above a rolling reserve for one year's interest, insurance, taxes and a contingency reserve will be paid to the Lender at the closing of such sales. All remaining principal, interest and costs will be due and payable on the 15th day of the 60th month from the Effective Date. This Class is impaired. As of the Petition Date, the amount owed to this Class was $13,793,058.37.

5.1.4    Class IV – General Unsecured Creditors. Holders of General Unsecured Claims will receive payment of their claims, in full, in equal quarterly payments beginning ninety (90) days from the Effective Date and continuing for 16 quarters on the same day of the month as the initial payment. The source of the payments will be the revenue received from the Incentive Agreements above amounts necessary for the Debtor's business operations.. This Class is impaired. Unsecured Claims total $506,464.06.

5.1.5    Class V – Subordinated Claims. This class consists of any claims held by insiders or affiliates of the Debtor. Holders of Subordinated Claims will retain their claims, but shall not receive any payment until senior classes are paid in full, after which holders of Subordinated Claims will be paid *pari passeu* on a pro-rata basis from sales of remaining Property and any revenues from the Incentive Agreements above amounts necessary for the Debtor's business operations. This Class is impaired.

8

5.1.6   <u>Class VI – Equity Interests</u>. Holders of Equity Interests in the Debtor shall retain their interests, but shall not receive any payments or distributions on account of those interests until all senior classes are paid in full. It is agreed and acknowledged by the Debtor that nothing in the Plan, or in the Order Confirming the Plan, changes, alters, or modifies: (i) the Debtor's partnership agreements as amended from time to time; (ii) the rights and obligations of the Debtor or any partner (whether general or limited) under the partnership agreement; or (iii) the rights and obligations of the Debtor or any partner as parties to the settlement agreements entered into by and among the partners and the Debtor dated March 30, 2011; provided, further, nothing in this Plan constitutes a release of the general partner or any insiders to the Debtor unless specifically set out herein and in the Disclosure Statement.    This Class is impaired.

5.2   <u>Payments to U.S. Trustee</u>. Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) so long as the Bankruptcy Case remains open

5.2.01   ***Discharge of Claims***

The rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, and, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted under Section 1141 of the Bankruptcy Code.   Upon   confirmation of the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. All holders of Claims or Equity Interest shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of interest.   Upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Interest based upon such obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor.   In accordance with Section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim.

5.2.02   ***Plan Releases and Exculpation***

None of the Debtor, Reorganized Debtor, its counsel, or any other party in interest, or any of their respective members or former partners, general partners, members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan

9

or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No holder of a Claim, or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtor, the Reorganized Debtor, or its counsel for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction.

      5.2.03     ***Whitney Bank's Position Regarding Plan***

Whitney Bank believes that the Debtor's Plan is unconfirmable because The Bank contends that the Plan violates the absolute priority rule, fails to provide the "indubitable equivalent" of the Bank's claim, and impermissibly allows the Reorganized Debtor to utilize proceeds from property sales. The Debtor disputes these allegations, and believes that the Plan is confirmable notwithstanding these objections.

**ARTICLE 6.**
**IMPLEMENTATION OF PLAN**

6.01    **Summary of Implementation of the Plan**

All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from the net proceeds of sales of the remaining Property, projected to be well in excess of the secured debt, and receipts from the Incentive Agreements.

6.02    **The Reorganized Debtor's Obligations Under the Plan**

The Reorganized Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. From and after the Effective Date, the Reorganized Debtor shall, among other things:

      (1)    administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

      (2)    reconcile Claims and resolve Disputed Claims, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

      (3)    make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

10

       (4)     administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

       (5)     exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

       (6)     invest any Cash pending Distribution;

       (7)     file appropriate tax returns; and

       (8)     take such other actions as may be necessary or appropriate to effectuate this Plan.

On the Effective Date, Debtor will be managed though the General Partner, and it is anticipated that Scott Deskins will be President of the General Partner and will be responsible for the management of the post-confirmation Debtor. Following the Effective Date the Debtor may pay its post Effective Date operating expenses in the ordinary course of its business without notice or orders of this Court.

### 6.03    **Exemption from Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor shall not be subject to any transfer, sales, stamp or other similar tax.

### 6.04    **Claims Objections**

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date. At this point, the Debtor is not aware of any unsecured claims that it intends to contest. Debtor may contest the amount of attorney's fees and interest sought by any creditor *Debtor reserves the right to object to or seek estimation of any claims.*

### 6.05    **Contingent Claims**

Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an

11

Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

### 6.06    Distributions on Allowance or Disallowance of Disputed Claims

No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

### 6.07    Undeliverable/Returned Distributions

Any distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of claim filed for such Creditor, or (ii) if no proof of claim is filed, at the address set forth on the Debtor's schedules. In the event that a distribution as herein provided is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such distribution for the affected Creditor for a period of 60 days following the Date of that distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the 60-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Reorganized Debtor.

### 6.08    De Minimis Distributions

Any other provision of the Plan notwithstanding, the Reorganized Debtor  shall not be required to make distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00).   Cash allocated to an Allowed Claim but withheld from distribution pursuant to this subsection shall be held for the account of and future distribution to the holder of such Allowed Claim.

### 6.09    Additional Charges

Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

### 6.10    Treatment of Executory Contracts and Unexpired Leases

(a)    **Assumption or Rejection of Executory Contracts and Unexpired Leases**.  On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory

12

contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) listed on the Plan at Exhibit A thereto (as such list may be amended, supplemented or modified on or before the Confirmation Date) or (b) subject to a motion to reject that is pending on the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases listed  in the exhibit to be provided at the confirmation hearing hereto (as such list may be amended, supplemented or modified on or before the Confirmation Date), pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

     (b)    **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**. To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and Schedules, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

     Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto), or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

     If an objection to assumption and assignment is Filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected

     (c)    **Payments Related to Assumption of Executory Contracts and Unexpired Leases.** Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding (a) the amount of any

cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

(d)     **Bar Date for Rejection Damages.** If the rejection of an executory contract or unexpired lease pursuant to Article 6 of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is a Allowed Claim, shall be classified in Class 3; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against a Debtor, Reorganized Debtor, their successors or properties, unless a proof of Claim is Filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

(e)     **Contracts to be Assumed**. Debtor is not required to designate contracts to be assumed or rejected until confirmation. At this time, Debtor is not aware of any executor contracts that it intends to reject, and believes it will assume, without limitation,   any outstanding sales contracts, broker agreements, and the Incentive Agreements.

6.11   **Pending Claims and Causes of Action**

The following is a general discussion of the type and nature of claims and causes of action of the Estate:

NOTE: THE FOLLOWING DISCUSSION IS NOT INTENDED TO BE EXHAUSTIVE AND SHALL NOT LIMIT OR MODIFY ANY CLAIMS OR CAUSES OF ACTION OF THE ESTATE.

Some of the payments made by the Debtor to creditors within ninety (90) days of the filing of bankruptcy (or to an insider within one year of the filing of bankruptcy) may be subject to a claim for recovery as preferential transfers under 11 U.S.C. §547.

While the Debtor is unaware of any recoverable preferential transfers at this time, the Reorganized Debtor will retain the right to object to claims pursuant to 11 U.S.C. § 502(d) or pursue any preferences.

**ALL CLAIMS OF THE BANKRUPTCY ESTATE ARE BEING PRESERVED AND TRANSFERRED TO REORGANIZED DEBTOR UNDER THE PLAN.**

Any and all causes of action which the Debtor may have, including, but not limited to Avoidance Actions, which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate to be conveyed to Reorganized Debtor in accordance with the Plan. The Court shall retain jurisdiction to determine all such causes of action.

**YOU MAY BE SUED IF:**

i)      You were or are a creditor and you received a payment on a prior debt within ninety (90) days before the Petition Date;

ii)     You were an insider of the Debtor and you received a payment on a prior debt within one (1) year before the Petition Date;

iii)    You received any payments or property from the Debtor for goods or services you did not deliver or provide before the Petition Date;

iv)    You received any payments of property from the Debtor without providing reasonably equivalent value;

v)     You received pre-payments, advances or deposits from the Debtor which you did not earn;

vii)   You were involved in pending litigation with the Debtor at the time of the Petition Date or have been sued thereafter;

viii)  You owe the Debtor any money under a contract or as a result of your breach of contract with the Debtor;

ix)    Potential claims against you or any of your affiliates are described or referred to in this Disclosure Statement; or

x)     The Debtor has any claims against you under state or federal law, whether in contract or in tort, whether known or unknown.

## ARTICLE 7.
## CONFIRMATION OF THE PLAN

7.01    **Feasibility**

As a condition to confirmation of a plan, Section 1129 of the Bankruptcy Code requires, among other things, that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor.

Because plan funding is centered on the sales of the Remaining Property and revenues from the Incentive Agreements, Debtor's history with sales and revenues provides a reasonable basis to project payments under the Plan. The projections set forth in Exhibit "B" are Debtor's best estimate of the revenues and expenses under the Plan, and demonstrate the Plan's feasibility. The Property is being marketed by the Debtor and an affiliate, SCC Interests, Inc., through signage on the Property (which is highly visible given the location on I-35), through a website, cold calls, mass mailings, broker meetings and breakfasts, and attendance at conferences held by the International Council of Shopping Centers.

15

7.02    **Best Interests Test**

In order to confirm the Plan, the Court must find that each holder of an impaired Claim or Equity Interest either (i) accepted the Plan or (ii) received or retained under the plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code. In a typical Chapter 7 case the debtor ceases operations and a trustee is appointed to conduct an orderly liquidation of the Debtor's assets. The proceeds, net of trustee's fees and other costs and expenses incurred in conducting the liquidation, are distributed to creditors in accordance with their rights and statutorily prescribed priorities of payment.

If this Case was converted to a liquidation under Chapter 7, the Court would likely lift the automatic stay to permit Whitney Bank to foreclose its lien on the Property. The Debtor believes that it is highly unlikely that Whitney Bank would bid more than the amount of the indebtedness, meaning other creditors would likely recover nothing unless a higher cash bidder appeared at the sale. Though possible, such bidders at this level (in excess of $13 million) rarely appear. If the property did sell at foreclosure for an amount in excess of the debt, that amount would be returned to the Debtor and could be used to pay creditors.

Based upon the foregoing liquidation analysis, unsecured creditors and equity interest holders would receive no distributions on account of their Claims in a Chapter 7 liquidation. Under the Plan, those creditors will receive distributions more than they would get in a Chapter 7 Liquidation. The Plan proposes to pay secured creditors in full. Accordingly, Secured Claims are receiving at least as much as they would get under a Chapter 7 liquidation.

## ARTICLE 8.
## ALTERNATIVES TO THE PLAN

8.01    **General**

The Debtor believes that the Plan affords the holders of Claims the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such holders. If the Plan is not confirmed, however, the theoretical alternatives include: (a) an alternative plan of reorganization; or (b) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (c) dismissal of the Chapter 11 Case.   BASED UPON DEBTOR'S ASSESSMENT, UNSECURED CREDITORS WOULD RECEIVE NO DISTRIBUTIONS IN A CHAPTER 7 CASE OR IN THE EVENT OF DISMISSAL OF THE CASE.

8.02    **Alternative Plans**

If the Plan is not confirmed, the Debtor or any other party in interest in the case could attempt to formulate and propose a different plan. Other parties may propose alternative plans, but the Debtor does not believe that any other plan will provide a greater recovery for the Creditors than proposed by Debtor's Plan, or that any such plans will be feasible.

16

8.03    **Liquidation Under Chapter 7 or Dismissal**

If no Plan can be confirmed, this Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. The proceeds of the liquidation would be distributed to the respective holders of Claims against the Debtor in accordance with the priorities established by the Bankruptcy Code.

As set forth in the preceding section, the Plan is clearly superior to a Chapter 7 liquidation. No separate liquidation analysis has been prepared as an exhibit.

## ARTICLE 9.
## RISK FACTORS

The risk factors are discussed in Section 7 above.

9.01    **Uncertainty in the Financial Projections and Plan Default**

The Projections are based on numerous assumptions that are an integral part of the projections. The assumptions and estimates underlying the projections are inherently uncertain and are subject to business, economic and competitive risks and other uncertainties which could materially affect the accuracy of the Projections. Consequently, the Projections contained in this Disclosure Statement are not intended, nor should they be received as representations that the projections will be achieved. If sales are not made as projected, the amount of the debt owed to Whitney Bank will increase with interest accrual. In the event of a default under the Plan, such default in the performance of the Plan shall not automatically result in the termination of the Plan or constitute a revocation of the Confirmation order. In the event of a default by the Debtor under the Plan, the Creditors may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to them under applicable non-bankruptcy law. In the absence of a document executed to evidence the Plan, this Plan may be enforced as a contract by filing suit to collect the payments required under the Plan as if the Plan were a promissory note or other written contract.

## ARTICLE 10.
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

10.01   **Income Tax Consequences**

The transactions contemplated by the confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to a creditor or interest holder. The Debtor has attempted to structure the Plan to preserve any valuable tax attributes.

An analysis of federal income tax consequences of the Plan to creditors, interest holders, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated there under, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. Neither the Debtor nor the

Debtor's counsel have requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of the Plan.

THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.

## ARTICLE 11
## JURISDICTION OF THE COURT

### 11.01   General Retention of Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor.

### 11.02   Specific Purposes

Without limiting the effect of Section 11.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)     modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)     correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)     hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d)     hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

18

(e) hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements, asset purchase agreements or other agreements entered into by the Debtor during the Case,

(f) enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g) assure the performance by Reorganized Debtor of its obligations to make distributions under the Plan;

(h) enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

(i) hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j) ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k) hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of title 28 of the United States Code;

(l) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m) hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n) hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

(o) recover all assets of the Debtor and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p) hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

19

(q)     hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)     consider and act on the compromise and settlement of any Claim against, or Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(s)     hear and determine all questions and disputes regarding title to the assets of the Debtor, its respective Estate;

(t)     hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(u)     enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE 12.
## MISCELLANEOUS

### 12.01     Amendment or Modification of the Plan

This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to § 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under § 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor.

### 12.02     Modification of Loan and Collateral Documents

To the extent that the Plan proposes changes in the treatment of the Lender Secured Claim, restated or amended or modified documents will be executed in order to properly document and reflect the terms of the plan for the benefit and protection of the affected Lender. The form of such documents will be subject to lender approval.

### 12.03     Effective Date and Final Decree

The effective date will be the first Business Day that is fifteen (15) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in Section 8.02 of the Plan have been satisfied or waived in accordance with the terms of the Plan. No payments to creditors will be made prior to the Effective Date. Debtor intends to file a motion for entry of a final decree within six(6) months form the Effective Date.

## ARTICLE 13.
## REQUEST FOR APPROVAL AND ACCEPTANCE OF PLAN

WHEREFORE, DEBTOR SCC KYLE PARTNERS, LTD.  submits this Disclosure Statement and the information contained therein, in good faith, in accordance with the provisions of Title 11, U.S.C. § 101 et. seq. for consideration by Creditors and other parties in interest, and as the sole source of information furnished by the Debtor, or to be furnished by the Debtor, in solicitation of acceptance of Debtor's Plan.

Dated this the 21st day of January 2013.

SCC KYLE PARTNERS, LTD.

By: SCC Kyle Partners GP, LLC, its general partner

By: */s/ Scott Deskins*
     Scott Deskins, President

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19679350
HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Telephone:  (512) 472-5997
Telecopier:  (512) 472-5248 (FAX)

COUNSEL FOR DEBTOR

# EXHIBIT A

**MOR-1**

**UNITED STATES BANKRUPTCY COURT**

CASE NAME:    SCC Kyle Partners, Ltd.

CASE NUMBER:  12-11978-HCM

PROPOSED PLAN DATE:

PETITION DATE:            August 31,2012

DISTRICT OF TEXAS:        Western

DIVISION:                 Austin

## MONTHLY OPERATING REPORT SUMMARY  FOR MONTH  November  YEAR 2012

| MONTH | Sep-12 | Oct-12 | Nov-12 | | | |
|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 18,127.14 | 0.00 | 17,609.25 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT; DEPREC./TAX (MOR-6) | 15,627.14 | -17.61 | 17,592.49 | 0.00 | 0.00 | 0.00 |
| NET INCOME (LOSS) (MOR-6) | 15,632.70 | -8.32 | 17,601.48 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-7) | 2,500.00 | 17.61 | 16.76 | 0.00 | 0.00 | 0.00 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED | | | |
|---|---|---|---|
| AS OF SIGNATURE DATE | | EXP. DATE | |
| CASUALTY | Yes (x) No( ) | 12/31/2012 | |
| LIABILITY | Yes (x) No( ) | 12/31/2012 | |
| VEHICLE | Yes (x) No( ) | 12/31/2012 | |
| WORKER'S | Yes ( ) No( ) | N/A | |
| OTHER | Yes ( ) No( ) | N/A | |

CIRCLE ONE

Are all accounts receivable being collected within terms?                        (Yes)  No

Are all post-petition liabilities, including taxes, being paid within terms?      (Yes)  No

Have any pre-petition liabilities been paid?                                      Yes  (No)

If so, describe

Are all funds received being deposited into DIP bank accounts?                    (Yes)  No

Were any assets disposed of outside the normal course of business?               Yes  (No)

If so, describe

Are all U.S. Trustee Quarterly Fee Payments current?                             (Yes)  No

What is the status of your Plan of Reorganization?

ATTORNEY NAME:  Eric Taube

FIRM NAME:      Hohmann,Taube & Summers, LLP

ADDRESS:        100 Congress Ave., 18th Floor

CITY, STATE, ZIP:  Austin,Texas 78701

TELEPHONE/FAX:  512- 472-5997

*I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.*

SIGNED X _____  TITLE: PRESIDENT

(ORIGINAL SIGNATURE)

Scott A. Deskins

(PRINT NAME OF SIGNATORY)

12/12/12

DATE        Revised 07/01/98

**MOR-1**

CASE NAME:  SCC Kyle Partems, Ltd.
CASE NUMBER:  12-11978-HCM

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* | MONTH September | MONTH October | MONTH November | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| CURRENT ASSETS | | | | | | | |
| Cash | | 119,411.99 | 119,403.67 | 137,005.15 | | | |
| Accounts Receivable, Net | | | | | | | |
| Inventory:  Lower of Cost or Market | | | | | | | |
| Prepaid Expenses | | | | | | | |
| Investments | | | | | | | |
| Other — Escrow | | 240,216.59 | 240,216.59 | 240,216.59 | | | |
| TOTAL CURRENT ASSETS | 0.00 | 359,628.58 | 359,620.26 | 377,221.74 | 0.00 | 0.00 | 0.00 |
| PROPERTY, PLANT & EQUIP. @ COST | | 21,758,460.69 | 21,758,460.69 | 21,758,460.69 | | | |
| Less Accumulated Depreciation | | | | | | | |
| NET BOOK VALUE OF PP & E | 0.00 | 21,758,460.69 | 21,758,460.69 | 21,758,460.69 | 0.00 | 0.00 | 0.00 |
| OTHER ASSETS | | | | | | | |
| 1.  Tax Deposits | | | | | | | |
| 2.  Investments in Subsidiaries | | | | | | | |
| 3.  Electric Deposit | | | | | | | |
| 4.  Org. Costs - Net | | 0.00 | 0.00 | | | | |
| TOTAL ASSETS | $0.00 | $22,118,089.27 | $22,118,080.95 | $22,135,682.43 | $0.00 | $0.00 | $0.00 |

\* Per Schedules and Statement of Affairs

**MOR-2**

*Revised 07/01/98*

CASE NAME: SCC Kyle Partems, Ltd.
CASE NUMBER: 12-11978-HCM

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* | MONTH September | MONTH October | MONTH November | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| LIABILITIES | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | | | |
| PRE-PETITION LIABILITIES | | | | | | | |
| Notes Payable – Secured | | 14,003,707.78 | 14,003,707.78 | 14,003,707.78 | | | |
| Priority Debt | | | | | | | |
| Federal Income Tax | | | | | | | |
| FICA/Withholding | | | | | | | |
| Unsecured Debt | | 1,000,000.00 | 1,000,000.00 | 1,000,000.00 | | | |
| Other | | | | | | | |
| TOTAL PRE-PETITION LIABILITIES | 0.00 | 15,003,707.78 | 15,003,707.78 | 15,003,707.78 | 0.00 | 0.00 | 0.00 |
| TOTAL LIABILITIES | 0.00 | 15,003,707.78 | 15,003,707.78 | 15,003,707.78 | 0.00 | 0.00 | 0.00 |
| OWNER'S EQUITY (DEFICIT) | | | | | | | |
| PREFERRED STOCK | | | | | | | |
| COMMON STOCK | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | 8,867,788.87 | 8,867,788.87 | 8,867,788.87 | | | |
| RETAINED EARNINGS: Filing Date | | -1,769,040.08 | -1,769,040.08 | -1,769,040.08 | | | |
| RETAINED EARNINGS: Post Filing Date | | 15,632.70 | 15,624.38 | 33,225.86 | 33,225.86 | 33,225.86 | 33,225.86 |
| TOTAL OWNER'S EQUITY (NET WORTH) | 0.00 | 7,114,381.49 | 7,114,373.17 | 7,131,974.65 | 33,225.86 | 33,225.86 | 33,225.86 |
| TOTAL LIABILITIES & OWNERS EQUITY | $0.00 | $22,118,089.27 | $22,118,080.95 | $22,135,682.43 | $33,225.86 | $33,225.86 | $33,225.86 |

* Per Schedules and Statement of Affairs

MOR-3

*Revised 07/01/98*

CASE NAME:    SCC Kyle Patterns, Ltd.
CASE NUMBER:  12-11978-HCM

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH September | MONTH October | MONTH Novemnber | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | 0.00 | 0.00 | 0.00 | | | |
| TAX PAYABLE | | | | | | |
| Federal Payroll Taxes | | | | | | |
| State Payroll Taxes | | | | | | |
| Ad Valorem Taxes | | | | | | |
| Other Taxes | | | | | | |
| TOTAL TAXES PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

*Payment requires Court Approval

**MOR-4**

*Revised 07/01/98*

12-11978-hcm Doc#50-1 Filed 01/21/13 Entered 01/21/13 15:45:27 Exhibit A Pg 5 of 10
12-11978-hcm Doc#40 Filed 12/14/12 Entered 12/14/12 16:06:49 Main Document Pg 4 of 9

CASE NAME: SCC Kyle Parterns, Ltd.
CASE NUMBER: 12-11978-HCM

## AGING OF POST-PETITION LIABILITIES

MONTH Nov-12

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | OTHER |
|---|---|---|---|---|---|---|
| 0-30 | 0.00 | | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## AGING OF ACCOUNTS RECEIVABLE

| MONTH | | | | |
|---|---|---|---|---|
| 0-30 DAYS | | | | |
| 31-60 DAYS | | | | |
| 61-90 DAYS | | | | |
| 91+ DAYS | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 |

MOR-5

Revised 07/01/98

CASE NAME:  SCC Kyle Parterns, Ltd.
CASE NUMBER: 12-11978-HCM

## STATEMENT OF INCOME (LOSS)

| | MONTH Sep-12 | MONTH October | MONTH Nov-12 | MONTH | MONTH | MONTH | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| REVENUES   (MOR-1) | 18,127.14 | | 17,609.25 | | | | 35,736.39 |
| TOTAL COST OF REVENUES | | | | | | | 0.00 |
| GROSS PROFIT | 18,127.14 | 0.00 | 17,609.25 | 0.00 | 0.00 | 0.00 | 35,736.39 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | 2,500.00 | | | | | | 2,500.00 |
| General & Administrative | | | | | | | 0.00 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | | | | | | | 0.00 |
| Other | | 17.61 | 16.76 | | | | 34.37 |
| Other | | | | | | | 0.00 |
| TOTAL OPERATING EXPENSES | 2,500.00 | 17.61 | 16.76 | 0.00 | 0.00 | 0.00 | 2,534.37 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | 15,627.14 | -17.61 | 17,592.49 | 0.00 | 0.00 | 0.00 | 33,202.02 |
| INTEREST EXPENSE/(INCOME) | -5.56 | -9.29 | -8.99 | | | | -23.84 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | 0.00 |
| OTHER ITEMS** | | | | | | | 0.00 |
| TOTAL INT, DEPR & OTHER ITEMS | -5.56 | -9.29 | -8.99 | 0.00 | 0.00 | 0.00 | -23.84 |
| NET INCOME BEFORE TAXES | 15,632.70 | -8.32 | 17,601.48 | 0.00 | 0.00 | 0.00 | 33,225.86 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS)  (MOR-1) | $15,632.70 | ($8.32) | $17,601.48 | $0.00 | $0.00 | $0.00 | $33,225.86 |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

\* *Footnote Mandatory.*

\* \* *Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.*

**MOR-6**

*Revised 07/01/98*

CASE NAME:  SCC Kyle Parterns, Ltd.
CASE NUMBER:  12-11978-HCM

| CASH RECEIPTS AND DISBURSEMENTS | MONTH Sep-12 | MONTH Oct-12 | MONTH Nov-12 | MONTH | MONTH | MONTH | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $103,779.29 | $119,411.99 | $119,403.67 | $137,005.15 | $137,005.15 | $137,005.15 | $103,779.29 |
| RECEIPTS: | | | | | | | |
| 2. CASH SALES | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | 0.00 |
| 6. OTHER (attach list) | 18,132.70 | 9.29 | 17,618.24 | | | | 35,760.23 |
| TOTAL RECEIPTS** | 18,132.70 | 9.29 | 17,618.24 | 0.00 | 0.00 | 0.00 | 35,760.23 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | 0.00 |
| DISBURSEMENTS: | | | | | | | |
| 7. NET PAYROLL | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | | | | | | 0.00 |
| 12. INSURANCE | | | | | | | 0.00 |
| 13. INVENTORY PURCHASES | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | 0.00 |
| 17. ADMINISTRATIVE & SELLING | 2,500.00 | | | | | | 2,500.00 |
| 18. OTHER (attach list) | | 17.61 | 16.76 | | | | 34.37 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 2,500.00 | 17.61 | 16.76 | 0.00 | 0.00 | 0.00 | 2,534.37 |
| 19. PROFESSIONAL FEES | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | | | | | | 0.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS** | 2,500.00 | 17.61 | 16.76 | 0.00 | 0.00 | 0.00 | 2,534.37 |
| 22. NET CASH FLOW | 15,632.70 | -8.32 | 17,601.48 | 0.00 | 0.00 | 0.00 | 33,225.86 |
| 23. CASH - END OF MONTH (MOR-2) | $119,411.99 | $119,403.67 | $137,005.15 | $137,005.15 | $137,005.15 | $137,005.15 | $137,005.15 |

* Applies to Individual debtors only

**MOR-7**

**Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

*Revised 07/01/98*

CASE NAME: SCC Kyle Parterns, Ltd.
CASE NUMBER: 12-11978-HCM

# CASH ACCOUNT RECONCILIATION
## MONTH OF _____ Nov-12

| BANK NAME | Whitney Bank | | | Whitney Bank | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | 46546897 # | | # | 46546927 | |
| *ACCOUNT TYPE* | *OPERATING* | *PAYROLL* | *TAX* | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | 9,982.39 | | | 109,421.28 | $119,403.67 |
| DEPOSITS IN TRANSIT | 0.00 | | | 0.00 | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | 0.00 | $0.00 |
| ADJUSTED BANK BALANCE | $9,982.39 | $0.00 | $0.00 | $109,403.67 | $119,403.67 |
| BEGINNING CASH - PER BOOKS | 9,982.39 | | | 109,421.28 | $119,403.67 |
| RECEIPTS* | 17,609.25 | | | 8.99 | $17,618.24 |
| TRANSFERS BETWEEN ACCOUNTS | 0.00 | | | 0.00 | $0.00 |
| (WITHDRAWAL) OR  CONTRIBUTION BY INDIVIDUAL        DEBTOR   MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 16.76 | | | | $16.76 |
| ENDING CASH - PER BOOKS | $27,574.88 | $0.00 | $0.00 | $109,430.27 | $137,005.15 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

12-11978-hcm  Doc#50-1  Filed 01/21/13  Entered 01/21/13 15:45:27  Exhibit A Pg 9 of 10
12-11978-hcm  Doc#44  Filed 11/14/12  Entered 11/14/12 16:06:49  Main Document  Pg 8 of 9

CASE NAME:     SCC Kyle Parterns, Ltd.
CASE NUMBER:   12-11978-HCM

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL INSIDERS  (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL PROFESSIONALS    (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-9**

*Revised 07/01/98*

# EXHIBIT B

# KYLE CASH FLOW

| | | | Project Total | 2012 Q-4 | 2013 Q-1 | 2013 Q-2 | 2013 Q-3 | 2013 Q-4 | 2014 Q-1 |
|---|---|---|---|---|---|---|---|---|---|
| **EXPENSES** | | | | | | | | | |
| DEBT AMOUNT | 50,000 Acres | | $13,974,000 | $13,974,000 | | | | | |
| CARRY COSTS | | | | | | | | | |
| Construction Interest | | | 756,389 | 139,740 | 140,861 | 129,688 | 117,932 | 118,901 | 109,268 |
| Est. RE Taxes | | | 450,000 | 300,000 | | | | 150,000 | |
| OTHER SOFT COSTS | | | | | | | | | |
| Legal Fees - Leases & Pad Contracts | | | 105,000 | 20,000 | 20,000 | 20,000 | 5,000 | 20,000 | 20,000 |
| Accounting | | | 15,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| GL Insurance | | | 18,000 | 1,500 | 6,000 | 1,500 | 1,500 | 1,500 | 6,000 |
| **TOTAL EXPENSES** | | | $15,318,389 | $14,437,740 | $169,361 | $155,688 | $126,932 | $292,901 | $137,768 |
| | | | | | | | | | |
| **REIMBURSEMENTS** | | | | | | | | | |
| Sales Tax Reimbursement | | | (180,000) | -30,000 | -30,000 | -30,000 | -30,000 | -30,000 | -30,000 |
| **TOTAL REIMBURSEMENTS** | | | ($180,000) | -30,000 | -30,000 | -30,000 | -30,000 | -30,000 | -30,000 |
| | | | | | | | | | |
| **REVENUES** | | | | | | | | | |
| Property Sales: | | | | | | | | | |
| BRIDGESTONE/FIRESTONE | 0.74 Acres @ | $26.20 PSF | $844,541 | $844,541 | | | | | |
| HORIZON LAND | 2 Acres @ | $19.50 PSF | $1,698,840 | | | 1,698,840 | | | |
| AVAIL HEALTHCARE | 3.2 Acres @ | $11.00 PSF | $1,533,312 | | 1,533,312 | | | | |
| PROSPECTIVE SALE | 1.5 Acres @ | $25.00 PSF | $1,633,500 | | | | | 1,633,500 | |
| PROSPECTIVE SALE | 0.76 Acres @ | $25.00 PSF | $827,640 | | | | | | 827,640 |
| CLOSING COSTS (7%) | | | ($457,648) | (59,118) | (107,332) | (118,919) | | (114,345) | (57,935) |
| **TOTAL REVENUE** | | | $6,080,186 | $785,423 | $1,425,980 | $1,579,921 | $0 | $1,519,155 | $769,705 |
| | | | | | | | | | |
| **PRINCIPLE REDUCTION** | | | ($4,735,796) | ($321,683) | ($1,256,620) | ($1,289,001) | $0 | ($1,226,254) | ($831,938) |
| | | | | | | | | | |
| **BALANCE** | | | $10,402,593 | $14,086,057 | $12,968,798 | $11,793,184 | $11,890,116 | $10,926,763 | $10,402,593 |

# Appendix Tab 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SCC KYLE PARTNERS, LTD** | § | **Case No.  12-11978-hcm** |
| | § | |
| **Debtor.** | § | |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

HOHMANN, TAUBE & SUMMERS, L.L.P.
Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Phone: (512) 472-5997
Fax: (512) 472-5248

ATTORNEYS FOR DEBTOR

i

## INTRODUCTION

SCC Kyle Partners, Ltd. ("Debtor") the Debtor in Possession in this chapter 11 case, proposes the following plan of reorganization for the resolution of its outstanding claims and equity interests.

**All holders of Claims against, and Equity Interests in, the Debtor are encouraged to read this Plan, the Disclosure Statement, and the related materials in their entirety.**

Subject to the restrictions on modifications set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Article XIII of this Plan, the Debtor reserve the right to alter, amend, or modify this Plan one or more times before its substantial confirmation.

## ARTICLE I
## DEFINITIONS AND RULES OF INTERPRETATION

**1.01.** **Defined Terms**. Capitalized terms used in the Plan have the meanings set forth in Article I. Capitalized terms used in the Plan which are not defined in the Article I but which are defined in the Bankruptcy Code shall have the respective meanings specified in the Bankruptcy Code.

**1.02.** **Rules of Interpretation**. Unless otherwise provided herein for purposes of the Plan: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms **and** conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to any Entity as a holder of a Claim includes that Entity's successors and assigns; (e) all references in the Plan to sections, Articles, and exhibits are references to sections, Articles, and exhibits of or to the Plan; (f) the words "herein," "hereof," "hereunder," "hereto" and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

**1.03.** **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the **provisions** of Bankruptcy Rule 9006(a) will apply.

As used in this Plan, the following terms have the following meanings:

**1.04.** "**Administrative Claim**" or "**Administrative Expense Claim**" means a Claim for any cost or expense of administration of the Chapter 11 Case Allowed under Bankruptcy Code §§ 503(b), 507(b) **or** 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(1), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of a Debtor' business; (c) actual and necessary costs and

1

expenses of preserving an Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**1.05.** **Administrative Claims Bar Date**. The first Business Day that is 30 days after the Confirmation Date.

**1.06.** **"Allowed"** means, in reference to a Claim or Equity Interest, (a) a Claim or Equity Interest that has been allowed by a Final Order; or (b) with respect to any Claim against, or Equity Interest in, a Debtor: (i) (A) proof of which, request for payment of which, or application for **allowance** of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against a Debtor or other applicable date established by order of the Bankruptcy court, even if that date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or (B) a Claim or Equity Interest that is allowed by a Debtor; (ii) listed as undisputed, liquidated, and non-contingent in the Schedules and as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; and (iii) in each instance, a Claim or Equity Interest as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or motion has been interposed, to the extent allowed by a Final Order. The term "Allowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so Allowed.

**1.07.** **"Avoidance Action"** means causes of action arising under chapter 5 of the Bankruptcy Code, or under related state or federal statutes and common law, including, without limitation, fraudulent **transfer** and fraudulent conveyance laws, whether or not litigation has commenced to prosecute such causes of actions.

**1.08.** **"Ballot"** means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

**1.09.** **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and **applicable** to the Chapter 11 Case.

**1.10.** **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other court as may have jurisdiction over the Chapter 11 Case.

**1.11.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. § 2075, applicable to the captioned Chapter 11 Case.

**1.12.** **"Bar Date"** means the date or dates fixed by the Bankruptcy Court or by this Plan by which Persons asserting a Claim against, or Equity Interest in, a Debtor (except Administrative Claims, Professional Fee Claims, and Rejection Damages Claims) are required to

2

file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against or Equity Interest in a Debtor or its property, from voting on this Plan, and from sharing in distributions under this Plan.

      1.13. **"Business Day"** means any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

      1.14. **"Cash"** means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

      1.15. **"Chapter 11 Case"** or **"Case"** means the case under Chapter 11 of the Bankruptcy Code in which the Debtor is the Debtor and Debtor-in-possession, pending before the Bankruptcy Court.

      1.16. **"Claim"** has the meaning assigned to such term by Section 101(5) of the Bankruptcy Code.

      1.17. **"Class"** or **"Classification"** means the particular class designated in the Plan, pursuant to Section 1122 and Section 1129 of the Bankruptcy Code, into which the Claims of all Creditors have been segregated for purposes of voting and distributions.

      1.18. **"Confirmation Date"** means the date the Bankruptcy Court enters the Confirmation Order.

      1.19. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan under Bankruptcy Code § 1129.

      1.20. **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code. The Confirmation Order need not necessarily be a Final Order.

      1.21. **"Consummation of Plan"** means the accomplishment of substantially all things contained or provided for in the Plan.

      1.22. **"Contingent Claim"** means any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

      1.23. **"Creditor"** has the meaning assigned to such term by Section 101(1) of the Bankruptcy Code.

      1.24. **"Debtor"** means SCC Kyle Partners, Ltd.

      1.25. **"Disallowed"** means a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn or expunged by Final Order. The term "Disallowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity

3

Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so Disallowed.

**1.26.** "**Disputed**" means (i) a Claim, Interest or Administrative Expense Claim that is subject to a pending objection; or (ii) until the deadline in the Plan for filing objections to claims:

    (a)    a claim for which a corresponding Claim has not been listed in the Debtor' Schedules or for which the corresponding Claim is listed in the Debtor' Schedules with a differing amount, with a differing classification, or as a disputed, contingent, or unliquidated Claim;

    (b)    a Claim which a Debtor in good faith believes is held by a holder either (i) from which property is recoverable by the applicable Debtor under any of Sections 542, 543, 550 or 553 of the Bankruptcy Code or (ii) that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code unless the holder has paid the amount, or turned over any such property for which such holder is liable under the terms of Sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; and

    (c)    in any event, a Claim which has been paid during the pendency of this Chapter 11 Case pursuant to an order of the Court allowing the payment of such pre-petition claim.

**1.27.** "**Effective Date**" means the first Business Day that is ten (10) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in Section 8.02 of this Plan have been satisfied or waived in accordance with the terms of this Plan.

**1.28.** "**Entity**" shall have the meaning assigned to such term by section 101(15) of the Bankruptcy Code.

**1.29.** "**Equity Interest**" means any equity interest in the Debtor represented by (i) any class or series of common or preferred stock, (ii) any member interest; or (iii) any general or limited partnership interest issued before the Effective Date, and any warrants, options, or rights to purchase any common or preferred stock.

**1.30.** "**Estate**" means the estate for the Debtor created in the Chapter 11 Case under Bankruptcy Code § 541.

**1.31.** "**Exculpated Party**" or "**Exculpated Parties**" means the Debtor, the Reorganized Debtor, the holders of Equity Interests and their agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns.

**1.32.** "**Executory Contract**" means any contract or agreement between the Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

4

**1.33.** **"Fee Applications"** means the applications of Professional Persons for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

**1.34.** **"Final Order"** means an order of a court: (a) to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing or reconsideration has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing, or reconsideration shall then be pending; or (b) as to which any right to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (c) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing, or reconsideration thereof has been sought, which shall have been affirmed by the highest court to which such order was appealed, from which writ of certiorari or other appellate review or reargument, rehearing, or reconsideration was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing, or reconsideration shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or under section 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.35.** **"Insider"** has the meaning assigned to such term by Section 101(31) of the Bankruptcy Code.

**1.36.** **"Insider Claims"** means any Claims held by Insiders of the Debtor.

**1.37.** **"Lender"** means Whitney National Bank, Amegy Bank, American Bank, Capitol One and Trustmark National Bank, with Whitney National Bank acting as Agent for such banks.

**1.38.** **"Lender Secured Claim"** means all claims, liens, security interests and rights of the lender against the Debtor, the Estate, and its property, as set forth in the Lender loan documents.

**1.39.** **"Lien"** has the meaning assigned to search term by Bankruptcy Code § 101(37), except for a lien that has been avoided in accordance with Bankruptcy Code §§ 544, 545, 546, 547, 548, or 549.

**1.40.** **"Litigation Claims"** means any of the Debtor' causes of action, including, without limitation, collections actions, Claims objections, defenses setoffs and counterclaims to any Claims, and any other Avoidance Actions.

**1.41.** **"Paid in Full"** or **"Payment in Full"** means, with respect to the Plan, paid in Cash the Allowed Amount of the Claim.

**1.42.** **"Person"** means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

**1.43.** **"Petition Date"** means August 31, 2012, the date when the Chapter 11 Case was instituted by the Debtor filing their voluntary Petition pursuant to chapter 11 of the Bankruptcy Code.

**1.44.** **"Plan"** means this Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

**1.45.** **"Priority Claim"** means any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Administrative Claims or a Priority Tax Claim.

**1.46.** **"Priority Tax Claim"** means any Claim of a governmental unit entitled to priority under Bankruptcy Code § 507(a)(8).

**1.47.** **"Priority Secured Tax Claim"** means a Secured Claim of a governmental entity whose claim would be a Priority Tax Claim under Sections 502(i) or 507(a) of the Bankruptcy Code if it was not a Secured Claim.

**1.48.** **"Professional"** means a Person: (a) employed in the Chapter 11 Case in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and to be compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

**1.49.** **"Professional Fee Bar Date"** means the first Business Day that is 30 days after the Confirmation Date.

**1.50.** **"Professional Fee Claim"** means an Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

**1.51.** **"Property of the Estate"** means all property in which the Debtor hold a legal or equitable interest, including all property described in Section 541 of the Bankruptcy Code.

**1.52.** **"Pro Rata"** means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

**1.53.** **"Rejection Claim"** means a Claim arising under Section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

**1.54.** **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

**1.55.** **"Schedules"** means the schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by a Debtor under Bankruptcy Code § 521

and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be
supplemented or amended from time to time.

     **1.56.** "<u>Secured</u>" means any Claim (a) listed in the Schedules as a liquidated, non-
contingent, and undisputed secured Claim; or (b) reflected in a proof of claim as a Secured
Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined
in accordance with Bankruptcy Code § 506(a), or, if the Claim is subject to setoff under
Bankruptcy Code § 553, net of the setoff. The term "Secured," when used to modify a reference
in this Plan to any Claim or Class of Claims means a Claim (or any Claim in any Class) that is so
Secured.

     **1.57.** "<u>Unsecured</u>" means any Claim against the Debtor' Estates for which the holder
has no security for the repayment thereof and for which the holder is not entitled to any priority
under the Bankruptcy Code. The term "Unsecured," when used to modify a reference in this
Plan to any Claim or Class of Claims, means a Claim (or any Claim in any Class) that is so
Unsecured.

**ARTICLE II**
**LEGAL BACKGROUND AND GENERAL CONCEPT**

     **2.01.** <u>Legal Background</u>. On August 31, 2012, the Debtor filed a voluntary petition
under Chapter 11 of the Bankruptcy Code. The Plan is proposed by the Debtor in the belief that
the Creditors will receive more through the payments contemplated hereby than would be
received if the assets of the Debtor was liquidated by a Chapter 7 trustee pursuant to Chapter 7 of
the Bankruptcy Code.

     **2.02.** <u>General Concept of the Plan</u>. The Plan provides for the implementation of a
restructuring the Debtor and the Lender providing for, among other things, the assets of the
Debtor to remain in the Reorganized Debtor and the Reorganized Debtor to make Distributions
upon Allowance of Claims by agreement or by resolution through the Bankruptcy Court in a
Final Order.

     **2.03.** <u>Operation Pending Effective Date</u>. Until the Effective Date, the Reorganized
Debtor will continue to operate its business subject to all applicable requirements of the
Bankruptcy Code, the Bankruptcy Rules, and the provisions of this Plan.

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS**

     **3.01.** <u>Unclassified Claims</u>. As provided in Bankruptcy Code § 1123(a)(1),
Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting
on, or receiving distributions under, the Plan. Holders of Administrative Expense Claims and
Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in
accordance with Article 3.02 of this Plan and under Bankruptcy Code § 1129(a)(9)(A).

     **3.02.** <u>Administrative Claims</u>. Each holder of an Allowed Administrative Claim
(except any holder that agrees to a lesser or otherwise different treatment) shall be paid in full, in
Cash, in full satisfaction of such Claim, on the later of the Effective Date or the date on which

7

such Administrative Claims becomes an Allowed Claim, *provided, however*, that (a) Allowed Administrative Claims representing (1) post-petition liabilities incurred in the ordinary course of business by the Debtor or (2) post-petition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto and (b). Professional Fee Claims shall be paid from Distributable Cash on the later of (i) thirty (30) days after the Effective Date, or (ii) thirty (30) days following the date of a Final Order determining and Allowing such Claim as a Professional Fee Claim. In the event the Distributable Cash as of the distribution date is insufficient to pay all Allowed Professional Fee Claims in full, Allowed Professional Fee Claims shall be paid from Distributable Cash on a Pro Rata basis in installments commencing thirty (30) days after the Effective Date and continuing on each ninety (90) day anniversary of the Effective Date until all Allowed Professional Fee Claims are paid in full.

**3.03.** **Statutory Fees**. On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. Section 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid in Cash equal to the Allowed amount of such Administrative Expense Claims. All fees payable pursuant to 28 U.S.C. Section 1930 subsequent to the Confirmation Date will be paid by the Reorganized Debtor in accordance therewith until the entry of a Final Decree.

**3.04.** **Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim (except any holder that agrees to lesser or otherwise different treatment), at the election of the Debtor, shall (1) be Paid in Full, in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the later of (a) the Effective Date, (b) the date on which the Secured Tax Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation or (2) receive treatment in any other manner such that its Allowed Priority Tax Claim shall not be impaired pursuant to section 1124 of the Bankruptcy Code, including, but not limited to, payment in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code.

**3.05.** **Bar Dates for Administrative Claims**.

(a) **General Bar Date Provisions**. The holder of an (i) Administrative Expense Claim, (ii) Professional Fee Claim; (iii) Priority Secured Tax Claims; and (vi) statutory fee Claims must file with the Bankruptcy Court and serve on the Debtor and their counsel no later than thirty (30) days after the Confirmation Date, a request for payment of the Claim. Such request for payment must conform to the requirements provided for in the Bankruptcy Code and Bankruptcy Rules and at a minimum identify the name of the claimant, the nature of and basis for the Claim, and the amount of the Claim. Holders of Administrative Expense Claims required to file a request for payment hereunder who fail to Timely File and serve a request for payment will be forever barred from asserting such Administrative Expense Claims against the Debtor, the Reorganized Debtor and their respective property, and such Administrative Expense Claims shall be deemed discharged as of the Effective Date. An Administrative Expense Claim will be Allowed if no objection is filed within thirty days (30) after filing and service of a request for payment. If an objection is filed to the Allowance of an Administrative Expense Claim, such

8

Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by a Final Order.

(b)     **Post-Effective Date Professional Fee Claims**.  Any Professional's Fee Claim incurred subsequent to the Effective Date by the Reorganized Debtor, may be paid without application to the Bankruptcy Court.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS
## AND EQUITY INTERESTS

**4.01.   Summary of Classification**.  In accordance with Bankruptcy Code § 1123(a)(1), all Claims and Equity Interests are placed in the Classes described below for all purposes, including voting on, confirmation of, and distributions under, this Plan.

**4.02.   Designation of Unimpaired and Impaired Classes**.   Classes 3, 4 and 5 are Impaired.  Classes 1, 2 and 6 are unimpaired.

**4.03.   Acceptance of the Plan**.  An impaired Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or such Class that have accepted or rejected the Plan. Any impaired Class of Creditors in which no member votes to accept or reject the Plan will be deemed to have accepted the Plan.

**4.04.   Confirmation of Plan**.  In the event any impaired Class fails to accept the Plan, in accordance with § 1129(a) of the Bankruptcy Code the Debtor, as the Plan proponent, reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code.

**4.05.   Classification and Treatment of Claims and Equity Interests**.

4.1.1   Class I – Administrative Claims.  Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date.  All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor,

and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. This class is not impaired.

4.1.2   Class II – Priority Tax Claims. Each holder of a Class II Priority Tax Claim shall receive payment of its Allowed Claim, in full, within sixty (60) months from the Petition Date, with statutory interest, in equal monthly payments beginning sixty (60) days from the Effective Date for the number of months remaining from such start date until the date which is sixty (60) months form the Effective Date; provided, however, that as portions of the remaining Property are sold, the outstanding taxes will be paid at closing. To the extent Debtor is liable for any such amounts, the Debtor will not be discharged from liability but shall not be required to make payments unless the amount(s) are not paid by the affiliated entities, if any. Class II is unimpaired.

4.1.3   Class III – Secured Claim of Lender. The secured claim of the Lender group will be paid over 5 years from the Effective Date from cash proceeds on hand at the time of confirmation and ongoing sales of the remaining Property, with interest-only payments to be made quarterly beginning on the 30th day after the Effective Date at 4% per annum. Net proceeds from the sale of portions of the Property, above a rolling reserve for one year's interest, insurance, taxes and a contingency reserve will be paid to the Lender at the closing of such sales. All remaining principal, interest and costs will be due and payable on the 15th day of the 60th month from the Effective Date. This Class is impaired.

4.1.4   Class IV – General Unsecured Creditors. Holders of General Unsecured Claims will receive payment of their claims, in full, in equal quarterly payments beginning ninety (90) days from the Effective Date and continuing each quarter for 16 quarters on the same date of the month as the initial payment until paid. The source of the payments will be the revenue received from the Incentive Agreements above amounts necessary for the Debtor's business operations. This Class is impaired.

4.1.5   Class V – Subordinated Claims. This class consists of any claims held by insiders or affiliates of the Debtor. Holders of Subordinated Claims will retain their claims, but shall not receive any payment until senior classes are paid in full, after which holders of Subordinated Claims will be paid pari passeu on a pro-rata basis from sales of remaining Property and any revenues from the Incentive Agreements above amounts necessary for the Debtor's business operations. This Class is impaired.

4.1.6   Class VI – Equity Interests. Holders of Equity Interests in the Debtor shall retain their interests, but shall not receive any payments or distributions on account of those interests until all senior classes are paid in full. It is agreed and acknowledged by the Debtor that nothing in the Plan, or in the Order Confirming the Plan, changes, alters, or modifies: (i) the Debtor's partnership agreements as amended from time to time; (ii) the rights and obligations of the

Debtor or any partner (whether general or limited) under the partnership agreement; or (iii) the rights and obligations of the Debtor or any partner as parties to the settlement agreements entered into by and among the partners and the Debtor dated March 30, 2011; provided, further, nothing in this Plan constitutes a release of the general partner or any insiders to the Debtor unless specifically set out herein and in the Disclosure Statement. This Class is impaired.

**4.06    Payments to U.S. Trustee**. Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) so long as the Bankruptcy Case remains open.

## ARTICLE V
## IMPLEMENTATION OF PLAN

**5.01.    Reorganized Debtor**. From and after the Effective Date, Debtor will exist as the Reorganized Debtor. Except as otherwise provided in the Plan, the Reorganized Debtor will remain in possession and ownership of all of the assets of Debtor and shall operate them in their best business judgment without further oversight of the Bankruptcy Court.

**5.02.    Revesting of Assets**. Except as otherwise provided in the Plan, all Property of the Estate will revest in the Reorganized Debtor, subject only to (1) the Liens provided for in the Plan; and (2) the obligations of the Reorganized Debtor as set forth in the Plan and Confirmation Order.

**5.03.    Vesting and Enforcement of Causes of Action**. Any and all claims and causes of action, shall vest in the Reorganized Debtor on the Effective Date, and the Reorganized Debtor shall be the only Entity entitled to pursue such claims or causes of action.

**5.04.    The Reorganized Debtor' Obligations Under the Plan**.

**5.05.**    The Reorganized Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from the Debtor' existing Cash Balances, and the operations of the Debtor or Reorganized Debtor.

(a)    From and after the Effective Date, the Reorganized Debtor shall, among other things:

(1)    administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)    resolve Disputed Claims, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

(3)    make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

11

(4)     administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

(5)     exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)     invest any Cash pending Distribution;

(7)     file appropriate tax returns; and

(8)     take such other actions as may be necessary or appropriate to effectuate this Plan.

(b)     Following the Effective Date the Debtor may pay their post Effective Date operating expenses in the ordinary course of its business without further notice or orders of this Court.

**5.06.    Exemption from Transfer Taxes.**    Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor shall not be subject to any transfer, sales, stamp or other similar tax and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases.**    On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code. *Debtor will file a list of contracts to be assumed prior to the Confirmation Hearing date.* Entry of the Confirmation Order shall constitute approval of such assumptions or rejections, as the case may be (as such lists may be amended, supplemented or modified on or before the Confirmation Date), pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

**6.02.    Objections to Assumption of Executory Contracts and Unexpired Leases.**    To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and Schedules, (b) has any objection to the proposed adequate assurance of future performance, if

required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto), or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or their assignee) have provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected.

    **6.03.**  **Payments Related to Assumption of Executory Contracts and Unexpired Leases**. Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

    **6.04.**  **Bar Date for Rejection Damages**. If the rejection of an executory contract or unexpired lease pursuant to this Article gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 4; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against the Debtor, Reorganized Debtor, their successors or properties, unless a proof of Claim is Filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

## ARTICLE VII
## DETERMINATION OF CLAIMS

**7.01.   Objections to Claims.**   Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed under the Plan before the Effective Date, the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.  All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor' motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date.

**7.02.   Contingent Claims.**   Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

**7.03.   Undeliverable/Returned Distributions.**   Any distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of claim filed for such Creditor, or (ii) if no proof of claim is filed, at the address set forth on the Debtor' schedules. In the event that a distribution as herein provided is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such distribution for the affected Creditor for a period of 60 days following the Date of that distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the 60-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Reorganized Debtor.

**7.04.   Distributions on Allowance or Disallowance of Disputed Claims.**   No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

**7.05.   Reserve Pending Distributions.**.  With respect to any Disputed Claims in Class 3 (General Unsecured Claims), on a monthly basis and at the same time as the Debtor make installment payments to the holders of Allowed Claims in such class hereunder, the Debtor shall set aside the Disputed Claims Reserve equal to the amount the holder of the Disputed Claim would have received had such Disputed Claim been an Allowed Claim as of the Effective Date. Such Disputed Claims Reserve shall be released to the holder of a Disputed Claim within ten (10) days after it becomes an Allowed Claim so that such holder will receive all accrued but

14

unmade payments as of such date so that such holder will have received equal treatment to holders of Allowed Claims. For purposes of the Disputed Claims Reserve, the Debtor shall reserve based upon the amount reflected in the books and records of the Debtor.

**7.06.** **De Minimis Distributions.** Any other provision of the Plan notwithstanding, the Reorganized Debtor shall not be required to make distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00). Cash allocated to an Allowed Claim but withheld from distribution pursuant to this subsection shall be held by the Reorganized Debtor for the account of and future distribution to the holder of such Allowed Claim.

**7.07.** **Additional Charges.** Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

## ARTICLE VIII
## CONDITIONS PRECEDENT

**8.01.** **Conditions to Confirmation.** The following are conditions precedent to confirmation of **this** Plan:

(a)     **Approval of Disclosure Statement.** The Bankruptcy Court enters a Final Order approving the Disclosure Statement.

(b)     **Form of Confirmation Order.** The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtor and creditors. If the Debtor is unable to reach an agreement with any party regarding the form and substance of the Confirmation Order, the Bankruptcy Court will resolve all such disputes.

(c)     **Substance of Confirmation Order.** The Confirmation Order contains the following:

(1)     The provisions of the Confirmation Order are nonseverable and mutually dependent;

(2)     Approval of the assumption, rejection, or assumption and assignment of the specified executory contracts and unexpired leases;

(3)     All executory contracts or unexpired leases assumed and assigned by a Debtor during the Chapter 11 Case or under this Plan remain in full force and effect for the benefit of the Reorganized Debtor or any assignees of such contracts or leases, as the case may be, notwithstanding any provision in any such contract or lease (including those described in Bankruptcy Code § 365(b)(2) and (f)) that prohibits or conditions such assignment or transfer or that enables, permits, or requires termination of such contract or lease;

(4)    The Reorganized Debtor is released and discharged from all obligations arising under all executory contracts and unexpired leases rejected by the Debtor during the Chapter 11 Case or under this Plan;

(5)    Except as otherwise provided in the Plan, the Reorganized Debtor are discharged in accordance with Article 10.03 of this Plan; and

(6)    Retention of jurisdiction of the Bankruptcy Court to the fullest extent permissible by applicable law, and at least to the extent contemplated by Article IX of this Plan.

**8.02.   Conditions to Effectiveness.**   The following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Date occurs;

(b)    All documents necessary to effectuate the Plan shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date).

(c)    All authorizations, consents required, if any, in connection with the consummation of this Plan shall have been obtained.

(d)    The Confirmation Order is not stayed pursuant to an order issued by a court of competent jurisdiction.

**8.03.   Waiver of Conditions.**   The Debtor may waive any condition to confirmation or the **Effective** Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of this Plan.

## ARTICLE IX
## JURISDICTION OF THE COURT

**9.01.   General Retention of Jurisdiction.**   Until the Bankruptcy Case is closed, the Bankruptcy shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor.   Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary in the enforcement of any cause of action that each has or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive entry of the Confirmation Order and occurrence of the Effective Date and shall not be affected thereby except as specifically provided herein.

    **9.02.    Specific Purposes**.    Without limiting the effect of Article 9.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

    (a)    modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

    (b)    correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

    (c)    hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

    (d)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

    (e)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements or other agreements entered into by any of the Debtor during the Case.

    (f)    enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

    (g)    assure the performance by Reorganized Debtor of their obligations to make distributions under the Plan;

    (h)    enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

    (i)    hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

    (j)    ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

    (k)    hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of title 28 of the United States Code;

(l)    enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m)    hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n)    hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

(o)    recover all assets of the Debtor and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)    hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(q)    hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)    consider and act on the compromise and settlement of any Claim against, or Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(s)    hear and determine all questions and disputes regarding title to the assets of any of the Debtor, their respective Estates;

(t)    hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(u)    enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE X
## EFFECT OF CONFIRMATION

**10.01. General**. On the Effective Date, the provisions of this Plan shall be binding on the Debtor, any **person** or entity acquiring property under the Plan, and any Creditor of the Debtor, whether or not such Creditor has accepted the Plan.

**10.02. Plan Injunction**. Except as specifically set forth in the Plan, from and after the Confirmation Date, all holders of Claims against and Interests in the Debtor are permanently restrained and enjoined (i) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Interests against the Debtor, the Estate,

18

(ii) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Estate, (iii) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Estate, (iv) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (v) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a Disputed Claim or Disputed Interest may continue to prosecute its proof of Claim or Interest in the Bankruptcy Court and all holders of Allowed Claims and Interests shall be entitled to enforce their rights under the Plan.

**10.03. Discharge of Claims**. Except as otherwise provided in the Plan, the rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, and, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of their assets or property to the fullest extent permitted under Section 1141 of the Bankruptcy Code. Upon the Effective Date, and except as otherwise provided in the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. Subject to the provisions of the Plan, all holders of Claims or Equity Interest shall be precluded from asserting against the Debtor, or any of their assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of interest. Subject to the provisions of the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Interest based upon such obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor. In accordance with Section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or their Property to the extent it relates to a discharged Claim.

**10.04. Exculpation**. The Debtor solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and participated, in good faith and in compliance with the applicable provisions of the Bankruptcy Code in seeking confirmation of the Plan and is not liable, on account of such solicitation or participation, for violation of **any** applicable law, rule, or regulation governing solicitation of acceptance or rejection of the Plan consistent with the provisions of 11 U.S.C. § 1125(e), and the Debtor is entitled to the protection afforded in such section.

**10.05. Indemnification Obligations**. Nothing in this Plan shall diminish or impair the enforceability of any obligation of the Debtor to indemnify, reimburse or limit the liability of any Person, including but not limited to any officer or director of the Debtor, or any agent,

Professional or financial advisor, relating to any acts or omissions occurring subsequent to the Petition Date and such obligations shall be assumed by the Reorganized Debtor.

**10.06.** __Payment to the United States Trustee__.  In accordance with § 1129(a)(12) of the Bankruptcy __Code__ and 28 U.S.C. § 1930, the Reorganized Debtor shall on the Confirmation Date pay all fees then due to the United States Trustee.

**10.07.** __Post-Petition Reports and Payments to the United States Trustee__.  On the Confirmation Date, the Debtor shall be relieved of any further obligation to file monthly operating reports with the Bankruptcy Court. The Reorganized Debtor shall make all post-confirmation __payments__ to the United States Trustee as may be required pursuant to 28 U.S.C. § 1930(a)(6) from available funds, and shall provide to the United States Trustee such financial reports as the United States Trustee may reasonably request, until the Chapter 11 Case has been closed by the Bankruptcy Court.

**10.08.** __Retention of Claims and Interests__.   Post-petition, and pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, any and all claims or interests belonging to the Debtor or to the Debtor' Estate shall be prosecuted and enforced by the Reorganized Debtor,  This includes, but is not limited to, any and all claims or causes of action for avoidance, recovery or subordination under §§ 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

**10.09.** __Setoffs__.  The Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any __nature__ whatsoever that the Debtor may have against the holder of such Claim; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder. After the Effective Date, such right shall pass to the Reorganized Debtor.

**10.10.** __Final Decree__.   Not more than six months after the Effective Date, the Reorganized Debtor shall file appropriate pleadings with the Bankruptcy Court requesting that this Chapter 11 Case be closed __administratively__.

## ARTICLE XI
## NOTICES

**11.01.** __General__.  After the Confirmation Date, all notices required to be given under any provision of the Bankruptcy Code and/or the Bankruptcy Rules shall be sent by first class mail, postage prepaid, only to (a) the Reorganized Debtor; (b) the counsel representing the Reorganized Debtor; (c) the United States in accordance with Bankruptcy Rule 2002(j), (d) the United __States__ Trustee; and (e) those persons specifically requesting, pursuant to written request filed with the Court after the Confirmation Date, that they be furnished with notices. Service of all notices, as provided herein, shall constitute full and complete service on all Creditors and parties-in-interest.

## ARTICLE XII
## MISCELLANEOUS

**12.01. <u>Amendment or Modification to Plan</u>.** This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to § 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under § 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor. A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**12.02. <u>Correction of Plan</u>.** After the Effective Date, only the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies, in the Plan, or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

**12.03. <u>Revocation of Plan</u>.** The Debtor reserve the right to revoke and withdraw this Plan prior to entry of the Confirmation Order. If the Debtor revoke or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver, an admission, or release of any <u>defenses</u> or claims against the Debtor, the bankruptcy estate, or any other person or to prejudice in any manner the rights, claims, or defenses of the Debtor in any further proceedings or litigation whatsoever, involving the Debtor, the Estate, and their respective successors or assigns, if any.

**12.04. <u>Binding Effect</u>.** The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of <u>Claims</u> and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

**12.05. <u>Notices</u>.** All notices, requests and demands to or upon the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, with a copy by mail, addressed as follows:

If to the Debtor:      Eric J. Taube
                       Mark C. Taylor
                       Hohmann, Taube & Summers, L.L.P.
                       100 Congress Avenue, 18th Floor
                       Austin, TX 78701
                       Phone: (512) 472-5997
                       Fax:  (512) 472-5248

**12.06. Final Allowance.** Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and allowed by **the** Court. However, objections on claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

**12.07. Consummation.** Upon completion of all payments and all transactions contemplated by this Plan, the Plan **shall** be deemed fully consummated, and this case shall be closed. Until substantial consummation occurs, the Debtor may move for and be granted modifications of this Plan. Once full consummation is accomplished, an appropriate Order will be entered closing the Chapter 11 Case, and such Order closing the case shall be deemed a final decree and shall include, in addition to the normal injunctive language, an Order that any term or provision of any Debtor or security agreement between the Debtor and any of their creditors will be null and void to the extent that such clause provides that the filing of bankruptcy, reorganization, or any other solvency proceeding operates as a default under such agreement, or similar language. Creditors shall be enjoined from instituting or continuing any legal action to enforce such terms or provisions, since they will be declared null and void. Further, all creditors shall be enjoined from instituting or continuing any legal action or Liens against the property of the estate, unless an Order is entered by this Court declaring a default in payments under the Plan. Further, the order closing this estate shall provide that all jurisdiction of this Court will terminate, except such jurisdiction as is otherwise provided hereinabove (including any disputes that may arise between the Reorganized Debtor and the Lender), or except and unless the Reorganized Debtor requires reopening of this case to enforce any injunctions contained in the Order closing this case (or any similar beneficial orders).

**12.08. Disbursing Agent.** The Debtor shall act as disbursing agent under the Plan.

**12.09. Further Authorization.** The Debtor shall be entitled to seek such orders, judgments, injunctions, **and** rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**12.10. Means of Cash Payment.** Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Debtor.

**12.11. Severability of Plan Provisions.** If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtor to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

22

**12.12.  Successors and Assigns**.    This Plan shall be binding upon and inure to the benefit of the Debtor, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**12.13.  Governing Law**.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the principles of conflicts of law of such jurisdiction.

**12.14.  Conflicts**.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the **terms** of this Plan shall govern.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

23

Dated:   January 21, 2013.

          SCC KYLE PARTNERS, LTD.

          By: SCC Kyle Partners GP, LLC, its general partner

          By: */s/ Scott Deskins*
               Scott Deskins, President

24