IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCC KYLE PARTNERS, LTD., | § | CAUSE NO. A-13-CV-756-LY |
|     Debtor. | § | |
| | § | |
| | § | |
| WHITNEY BANK, SUCCESSOR BY | § | |
| MERGER TO WHITNEY NATIONAL | § | |
| BANK, INDIVIDUALLY AND AS | § | |
| AGENT FOR CERTAIN PRE-PETITION | § | |
| LENDERS, | § | |
|     Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| SCC KYLE PARTNERS, LTD., | § | |
|     Appellee | § | |

---

## BRIEF OF APPELLEE

---

HOHMANN, TAUBE & SUMMERS, L.L.P.

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
Cleveland R. Burke
State Bar No. 24064975

100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (facsimile)

**ATTORNEYS FOR APPELLEE**

# TABLE OF CONTENTS

I.      STATEMENT OF JURISDICTION.......................................................................1

II.     STATEMENT OF ISSUES AND STANDARD OF REVIEW ...........................................1

III.    STATEMENT OF THE CASE..............................................................................2

IV.     ARGUMENT .............................................................................................4

      A.      Seton Had an Allowed Claim, and Its Vote Was Property Counted
           For Plan Confirmation ................................................................4

      B.      The Bankruptcy Court properly determined that *Res Judicata* did not prevent
           Appellee from requiring, as part of its Plan, that a portion of the Avail Sale
           Proceeds be applied to pre-paid Interest ...................................................10

      C.      The Bankruptcy Court did not err in determining that the Debtor's Plan was
           feasible ..................................................................................12

      D.      The Bankruptcy Court did not err in determining that the Debtor's Plan was
           Fair and Equitable ......................................................................14

      E.      The Bankruptcy Court did not err in determining that the Debtor had proposed its
           Plan in good faith ......................................................................16

CERTIFICATE OF SERVICE ......................................................................19

## INDEX OF AUTHORITIES

<u>**CASES:**</u>

*Allegheny Coll. v. Nat'l Chautauqua Cmty. Bank of Jamestown*, 159 N.E. 173 (N.Y. 1927).....8, 9

*In re Arnold & Baker Farms*, 85 F.3d 1415 (9th Cir. 1996)............................................................15

*In re Apple Tree Partners, L.P.*, 131 B.R. 380 (Bankr. W.D. Tenn. 1991) ...................................17

*Carrieri v. Jobs.com, Inc.*, 393 F.3d 508 (5th Cir. 2004) ................................................................8

*In re Cajun Elec. Coop., Inc.*, 230 B.R. 714 (Bankr M.D. La. 1999)........................................1, 12

*In re Eastbourne 59/Grand Parkway, LP*, 2009 WL 3571248 at *4 FN1
    (Bankr. S.D. Tex. Oct. 26, 2009 .............................................................................................17

*In re Ferch*, 333 B.R. 781 (Bankr. W.D. Tex. 2005).....................................................................16

*Financial Security Assurance, Inc. v. T-H New Orleans Ltd. P'ship*
    *(Matter of T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997)..................12

*In re First South Savings Ass'n*, 820 F.2d 700 (5th Cir. 1987)......................................................2

*In re Fry Road Assoc., Ltd.*, 66 B.R. 602 (Bankr. W.D. Tex. 1986) ............................................17

*In re Fullmer*, 962 F.2d 1463 (10th Cir. 1992) .................................................................................4

*In re Matter of Gardiner, Inc.*, 55 B.R. 601 (Bankr. M.D. Fl. 1985) .............................................5

*In re Goldstein*, 114 B.R. 430 (E.D. Pa. 1990) ...............................................................................7

*In re Gulfstar Indus., Inc.*, 236 B.R. 75 (M.D. Fla. 1999) .............................................................6

*In re Hawkins*, 2012 WL 3732807 at *2-3 (Bankr. D.S.C. Aug. 27, 2012) ..................................5

*Heartland Federal Savings & Loan Assoc. v. Briscoe Enterprises, Ltd. (Matter of Briscoe*
    *Enterprises)*, 994 F.2d 1160 (5th Cir. 1993)........................................................................16

*Hopkins v. Upshur*, 20 Tex. 89 (Tex. 1857) ....................................................................................9

*In re Idearc, Inc.*, 423 B.R. 138 (Bankr. N.D. Tex. 2009)............................................................12

*In re Keller*, 157 B.R. 680 (Bankr. E.D. Wash. 1993)..................................................................16

*In re The Landing Assoc.*, 157 B.R. 791, 812 (Bankr. W.D. Tex. 1993).......................................17

**CASES (continued):**

*In re Matter of Little Creek Dev. Co.,* 779 F.2d 1068 (5th Cir. 1986)................................16, 17, 18

*In re M. Long Arabians*, 103 B.R. 2011 (9th Cir. Bap. 1999) ........................................................5

*Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Co-op., Inc.),*
    150 F.3d 503 (5th Cir. 1998) ...............................................................................................1

*In re Marin Town Center*, 142 B.R. 374 (N.D. Cal. 1992)................................................................5

*In re Maxcy*, 45 B.R. 268 (Bankr. D. Mass. 1985) ..........................................................................5

*In re Monarch Beach,* 166 B.R. 428 (C.D. Cal. 1993) ...................................................................15

*In re Morton Shoe Co.*, 40 B.R. 948 (Bankr. D. Mass. 1984) ........................................................8

*Nat'l Benevolent Ass'n. of the Christian Church v. Weil, Gotshal & Manges, LLP*
    *(In re Nat'l Benevolent Ass'n. of the Christian Church),*
    333 Fed. Appx. 822 (5th Cir. 2009)....................................................................................11

*In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009) ..............................................................15

*Public Finance Corp. v. Freeman*, 712 F.2d 219 (5th Cir. 1983) ................................................17

*Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492 (Tex. 1991).................................................8

*Starnes v. U.S. (In re Starnes)*, 231 B.R. 903 (N.D. Tex. 1998).....................................................4

*State of Arkansas v. Federated Dept. Stores, Inc.*, 175 B.R. 924 (S.D. Ohio 1992) ......................5

*In re Sun Country Development, Inc.*, 764 F.2d 406 (5th Cir. 1985) .......................................16, 17

*Thompson v. McAllen Federated Woman's Bldg. Corp.*, 273 S.W.2d 105
    (Tex. App.—San Antonio 1954, writ dism'd) ...................................................................10

*In re Townco Realty, Inc.*, 81 B.R. 707 (Bankr. S.D. Fla. 1987)......................................................7

*Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 129 S.Ct. 129 (2009).......................................11

## STATUTES:

11 U.S.C. §502 ............................................................................................................5

11 U.S.C. §1123(a)(5) ..........................................................................................12, 15

11 U.S.C. §1126 ...........................................................................................................6

11 U.S.C. §1129 ....................................................................2, 6, 12, 13, 16, 17

28 U.S.C. §158 ............................................................................................................1

Bankruptcy Rule 3018 ...........................................................................................6, 7

## BRIEF OF APPELLEE

SCC Kyle Partners, Ltd. ("Appellee" or "SCC"), Appellee, files this Brief of Appellee as follows:

## I.      STATEMENT OF JURIDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1).  This is an appeal form a final Order Confirming Debtor's Second Amended Plan of Reorganization Under Chapter 11, Title 11 (the "Confirmation Order") entered by the United States Bankruptcy Court for the Western District of Texas, Austin Division, in Case No. 12-11978-hcm-11, on July 1, 2013.

## II.     STATEMENT OF ISSUES AND STANDARD OF REVIEW

Appellee does not raise any cross-issues in this appeal, and generally agrees with the legal standards for review of the case referenced in the Brief of Appellant.  Appellee disagrees with Appellant's conclusion that the Bankruptcy Court did not address the Objections made by Appellant to the confirmation of Appellee's plan of reorganization; in fact, the Bankruptcy Court specifically addressed each of the objections in its 42 page "Consolidated Opinion Regarding Confirmation of Plan of Reorganization and Related Motions" (the "Opinion") [C.R.][1].  Issue Nos. 4-7 as fact issues to be reviewed under a "clearly erroneous" standard. Issues 1-3 are mixed issues of law and fact, to be reviewed *de novo*. The Bankruptcy Court is entitled to great discretion in connection with its findings of fact.  *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Co-op., Inc.),* 150 F.3d 503, 513 (5th Cir. 1998) (Circuit court applies deferential standard to bankruptcy court's fact findings, and will find clear error only if the court is "left with the definite and firm conviction that a mistake has been made.").  A court's factual

---

[1] Appellee will utilize the same references specified by Appellant on p. xiv of the Brief of Appellee.

findings will only be reversed if they are "clearly erroneous," which occurs only in the limited circumstance where the finding the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re First South Savings Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987).

### III.   STATEMENT OF THE CASE

*Procedure Background*

Appellee, a Texas limited partnership, filed its Voluntary Petition under Chapter 11 of Title 11 of the United States Code on August 31, 2012.  D.E. 1.  The Debtor filed an Amended Plan of Reorganization on January 21, 2013 (Px. 2), and filed modifications thereto on April 3, April 8, 16 and 25, 2013.  D.E. 49, 98, 100, 102, 107.  The Bankruptcy Court held a confirmation hearing on the Debtor's Plan on April 4 and 16, 2013.  The Court entered its Opinion on the Debtor's Plan of Reorganization, finding and holding that the Plan should be confirmed pursuant to 11 U.S.C. §1129, on June 14, 2013.  D.E. 127.  Thereafter, the Court entered its "Order Confirming Debtor's Second Amended Plan of Reorganization under Chapter 11, Title 11 of the United States Code" (the "Confirmation Order" on July 1, 2013.  D.E. 133[2].  Appellant has filed the appeal from that Order.

*Factual Background*

Appellant owns a retail development in Kyle, Texas, known as "Village of Kyle", which is located near the intersection of Interstate 35 and Kyle Parkway [Opinion p. 6; R.R. 33-35]. Appellee closed its acquisition on the Kyle property on September 2007 [R.R. 41, Opinion p. 6] for a purchase price of approximately $27 million, which were proceeds from a Loan Agreement with Appellant which provided for funding of an additional $122 million for construction and

---

[2] The "Second Amended Plan of Reorganization" includes the modifications approved and required by the Bankruptcy Court, and was attached to the Confirmation Order at the direction of the Bankruptcy Court.

development of the Kyle property.   [Opinion p. 6, R.R. 42]  Appellee's limited partners contributed $11 million in cash at closing.  [Opinion p. 6, R.R. 42, 184].  Appellee commenced construction and fully completed all infrastructure and improvements to the property and began selling parcels.  [Opinion p. 6, RR. 54-56].  Additionally, Appellee entered into two economic develop incentive agreements with Hays County and the City of Kyle, which provide revenue to Appellee based upon sales tax revenue collected from the retail businesses in the development.  [Opinion p. 6-7, R.R. 46-49].  Following the collapse of the capital markets in 2008, and based upon Appellant's belief that the value of the property had declined to a level below the outstanding debt, the Appellant ceased further funding to Appellee in August 2009, and refused to fund the loan for the Debtor to be able to construct improvements on the property.  [Opinion p. 7, R.R. 61-64, 71, 262-63].   As a result, Appellee's business changed from attempting to construct the project itself to becoming a "land seller" because the Bank had ceased the funding for the construction on the property.

In March 2011, the parties entered a Second Amended to the loan documents and a Modification Agreement to restructure the loan, extending the maturity date from September 2010 to January 2, 2012, and setting an interest rate at a 4% floor.  At this time, the limited partners of the Appellee contributed an additional $2 million in capital to the project.  [Opinion p. 7, R.R. 74-75].

The loan matured on January 2, 2012.  [Opinion p. 7, R.R. 100].  The Debtor did not have sufficient funds to pay the debt to the Appellee.  Appellee did complete a sale of a parcel to Wal Mart that resulted in payment of approximately $6 million to Appellant in August of 2012. [Opinion p. 8, R.R. 79-81].  However, Appellant posted the property for foreclosure to be held

on September 4, 2012 [Opinion p. 8, R.R. 219], which resulted in the Debtor filing its bankruptcy on August 31, 2012.

During the course of the bankruptcy case, the Debtor sold two additional parcels of land, the first being a sale to Bridgestone Retail Operations, LLC for approximately $850,000.00 and a second sale to Avail Healthcare Ventures, LLC for just over $1.5 million.   [Opinion p. 8-9, R.R. 82-83, D.E. 115].   During the course of the bankruptcy proceeding, the Court also approved a sale to Horizon Land Company, LLC for $850,000.00 with an option to purchase an additional tract for $1.4 million.[3]   [Opinion p. 9, D.E. 109, R.R. 68-69].

## IV. ARGUMENT

### A.    Seton Had An Allowed Claim, and Its' Vote Was Properly Counted for Plan Confirmation

Appellant contends that, even though Seton had a proof of claim on file at the time it cast its ballot, somehow Seton's plan vote should not be counted.   This argument ignores the plain language of Title 11.   Moreover, the Bankruptcy Court analyzed and rejected Seton's contentions at pp. 37-39 of its Opinion.

*Seton had an Allowed Claim at the time it voted*

Appellant correctly notes that Seton's claim was listed as contingent and disputed in the Debtor's Schedules.   Appellant admits, however, that Seton filed a proof of claim (Claim No. 4). The filing of a proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim."   Bankr. R. 3001(f).   Once filed, a claim is deemed allowed unless an objection is filed. *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992). Even in that circumstance, the objecting party must come forward with evidence sufficient to refute at least one of the elements of the claim. *Id.*; *see also Starnes v. U.S. (In re Starnes)*, 231 B.R. 903, 912 (N.D. Tex. 1998).

---

[3] The Horizon sale is still pending.  Horizon, however, has released its option on the additional tract, and the Debtor has sold that tract to another purchaser, and closed the sale in September, 2013.

Bankruptcy Rule 3003(c) and 11 U.S.C. §1111(a) make it clear that a creditor need not even file a proof of claim in a Chapter 11 case unless the claim is scheduled as disputed, contingent or unliquidated.  Once filed, a claim is allowed under 11 U.S.C. §502(a) unless an objection is filed.[4]

As the Court noted when Appellant raised this argument for the first time during closing arguments at the confirmation hearing, Seton had a valid proof of claim (the "Proof of Claim") on file at the time of its voting and at the confirmation hearing. R.R. 109.  No objections had been filed to the Proof of Claim.  As such, Seton had an allowed claim under 11 U.S.C. §502. *See* Opinion p. 38.  Appellant did not file its Objection until a week *after* the confirmation hearing was closed, notwithstanding the fact that the Debtor had filed its Ballot Summary and Ballots on March 4, 2013, a full month before the hearing [D.E. 79, Px 1], and presented the Ballot Summary and Ballots to the Court without objection by Appellant. [Px. 1, R.R. 7-8].

Appellant disingenuously contends that it had "objected to the Seton vote on the proposed Plan".  *See* Brief of Appellant, p. 6, 12, 13.  Appellant's "objection", to which Appellant cites the court to RR 109: l. 5 – 14 [April 16 hearing], occurred after the close of evidence and in closing argument.  In fact, the sum and substance of the "objection" as referenced by Appellant is a statement by counsel for Appellant "and the Seton debt, as Mr. Deskins testified, is not even a legally enforceable debt.  It's a charitable donation.  And for such reason, I don't think it qualifies as a legitimate claim, because it is a voluntary claim."  Simply put, no objection was filed.  This is relied upon by Appellant[5] and are cases involving

---

[4] Appellant apparently contends that scheduling a claim as disputed invalidates a proof of claim.  This argument defies the very language of the rule and statutes cited above.  *See also State of Arkansas v. Federated Dept. Stores, Inc.*, 175 B.R. 924, 930-31 (S.D. Ohio 1992) (claim disallowed if scheduled as disputed unless creditor files a proof of claim); *In re Hawkins*, 2012 WL 3732807 at *2-3 (Bankr. D.S.C. Aug. 27, 2012) (proof of claim controls over schedules).

[5] *See, e.g., In re Marin Town Center*, 142 B.R. 374 (N.D. Cal. 1992); *In re Maxcy*, 45 B.R. 268 (Bankr. D. Mass. 1985); *In re M. Long Arabians*, 103 B.R. 2011 (9th Cir. Bap. 1999); *Matter of Gardiner, Inc.*, 55 B.R. 601 (Bankr.

disallowance of claims for voting are cases where an actual objection was filed prior to the term of the confirmation hearing.

Finally, by (1) failing to file an objection, (2) failing to object to Seton's ballot, and (3) failing to object to the admission of the Ballots and Ballot Summary [Px. 1, D.E. 79], Appellant has waived any right to complain or object to Seton's vote. The time for raining these arguments was before admission and counting of the votes, not a vague statement after closing of the evidence in closing argument.[6]

*Because Seton had an Allowed Claim, it was entitled to vote*

11 U.S.C. §1126(a) provides that any holder of an allowed claim may vote on a plan of reorganization. *See* 11 U.S.C. §1126(a). Similarly, Bankruptcy Rule 3018(a), which governs acceptance or rejection of a Chapter 11 plan, provides that a plan may be accepted or rejected "in accordance with §1126 of the Code…" Accordingly, Seton was entitled to vote.[7]

*Even if Seton's Claim is disallowed after confirmation, the voting result does not change*

Sections 1126 and 1129(a)(7), (8) and (10), along with Bankruptcy Rule 3018, all clearly contemplate that votes are tabulated and plan acceptance is determined at the time of the confirmation hearing based upon votes that are allowed as of that date; otherwise, neither the parties nor the Court could determine if the Debtor had obtained sufficient votes in each class. *In re Gulfstar Indus., Inc.*, 236 B.R. 75, 78-79 (M.D. Fla. 1999) (votes counted based upon valid

---

M.D. Fl. 1985).

[6] In a footnote, Appellant asserts that the wrong entity cast a ballot. Again, this issue was not raised before (or even at) the confirmation hearing. Moreover, the testimony at the August 29 hearing made it clear that the Foundation is simply the fund-raising vehicle for Seton Family of Hospitals, which is also the sole member of the Foundation. [R.R. (Aug. 29) 24, 69].

[7] Appellant's reference at p. 14 of its Brief that Debtor's Disclosure Statement prevented Seton from voting is simply wrong. The referenced sections relate to claim objections and the process for resolution of claims. The Voting requirements are contained in Section 1.03 of the Disclosure Statement, which permit voting by holders of claims in each Class, and provide for tallying votes of holders of Allowed Claims. Even if the provisions had any application to this case, Appellant fails to explain how a Disclosure Statement could prevail over the express provisions of Title 11 for who is allowed to vote.

ballots received by voting deadline); *In re Townco Realty, Inc.*, 81 B.R. 707, 709 (Bankr. S.D. Fla. 1987) (same). Under Appellant's theory, a claim that is disallowed at a claims-objection hearing months after confirmation would then require a re-tabulation of the votes cast and counted during the prescribed balloting and voting process. This is not only contrary to the clear language of the Code, there is no case law to support this argument. Accordingly, even should the Bankruptcy Court disallow Seton's claim at some point, its vote in favor of Plan confirmation will stand. *See* Opinion pp. 38-39. Appellant's argument flips the burden on allowance or disallowance of a claim to a creditor who has an allowed claim at the time of voting to seek temporary allowance. *See* Brief of Appellant, p. 13. Temporary allowance is a procedure under the Bankruptcy Rules that allows a party whose claim has been objected to, to still participate in voting by obtaining a temporary allowance of its claim for voting purposes. *See* Bankruptcy Rule 3018. There was no need for Seton to seek temporary allowance of its claim because its claim was allowed at the time it voted, at the time the votes were counted, and as of the confirmation hearing.[8] What Appellant is seeking, with no case authority or statutory authority, is a holding that if a claim is ultimately disallowed after the date of confirmation, that the votes that were submitted for confirmation are to be recounted. There is simply no authority for that proposition.

*Seton's Claim was valid*

For the purposes of plan confirmation, for the reasons set forth above, it is irrelevant whether Seton's claim is ultimately allowed or disallowed. Appellee contends, however, that Seton's claim is valid and enforceable. On August 5, 2008, Debtor made a prepetition pledge

---

[8] Appellant contends that it was appropriate to delay confirmation until the Court determines the merit of an objection, citing *In re Goldstein*, 114 B.R. 430 (E.D. Pa. 1990). In *Goldstein*, an objection had been timely filed to a creditor's claim, and the Court simply found that it was appropriate to delay the confirmation hearing, given the objection, to determine whether or not the claim should be temporary allowed for voting purposes. Again, no objection was filed in this case.

(the "Pledge") of $1 million to Seton towards the construction of a new medical center in Kyle, Texas.  *See* Seton's Claim No. 4 and C.R. 121; [R.R. 26-27 (Aug. 29) and Px 1 and 2 thereto]. Appellant paid one half of the Pledge, or $500,000, before filing its voluntary petition. Appellant did not object to the Ballot Summary, and did not file a motion to designate Seton's ballot.

The Code defines a "claim" as a "right to payment."  11 U.S.C. § 101(5)(A).  Bankruptcy courts determine the substance and validity of a claim by referring to applicable state law. *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 529 (5th Cir. 2004).  Contrary to Appellant's assertion in its Objection, the Pledge is enforceable under Texas law because it is supported by consideration and because Seton relied on the Pledge to its detriment.  *See In re Morton Shoe Co.*, 40 B.R. 948, 949-51 (Bankr. D. Mass. 1984) (allowing charity's claim upon finding a pledge enforceable under theories of both consideration and reliance).  Contrary to Appellant's assertions, Mr. Deskins testified that Appellee is obligated to pay the balance [R.R. (Aug. 29) 73].

i.      *The Pledge is supported by valid consideration.*

Contrary to Appellant's assertions in the Objection, the Pledge is supported by valid consideration.  Consideration is "a present exchange bargained for in return for a promise" and "consists of either a benefit to the promisor or a detriment to the promisee."  *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991).  Naming rights granted in exchange for a charitable pledge—also known as a subscription—constitute consideration that will render the pledge enforceable in contract.  *Allegheny Coll. v. Nat'l Chautauqua Cmty. Bank of Jamestown*, 159 N.E. 173, 175-76 (N.Y. 1927).  As Justice (then Chief Judge) Cardozo held in the seminal case of *Allegheny College*, "the duty assumed by the plaintiff to perpetuate the name of the

8

founder of the memorial is sufficient in itself to give validity to the subscription within the rules that define consideration for a promise of that order…. [T]he result [i]s the creation of a bilateral agreement." *Id*. at 176.

Like the plaintiff in *Allegheny College*, Seton obligated itself to reserve naming rights for Debtor. Appellant points to the boilerplate disclaimer in the Pledge in which Seton "affirms that no goods or services were provided to donor in exchange for their contribution," but the actual terms of the Pledge provide otherwise. Through a hand-written interlineation, Debtor and Seton agreed that Debtor would have the exclusive right to "nam[e] the grand entrance and lobby" in exchange for the Pledge. *Id*. [R.R. (Aug. 29) 26-27, 50-51, 58-61]. These naming rights constituted both a benefit to Debtor and a detriment or legal obligation to Seton. *See Allegheny Coll.*, 159 N.E. at 176.

Because the Pledge is an enforceable agreement supported by consideration, Seton has a right to payment under Texas law and therefore an allowable claim under sections 101(5)(A) and 502 of the Code.

ii.     *The Pledge is also enforceable under a theory of promissory estoppel.*

Even if this Court were to determine that the naming rights in the Pledge did not constitute sufficient consideration, Texas law has long recognized that charitable pledges are enforceable when the donee has incurred expense or liability in reliance on the pledge. As the Texas Supreme Court held in *Hopkins v. Upshur*, "the subscription was a voluntary agreement to donate … [that] matured into an enforceable contract … by [the donor's] having permitted [the donee] to incur legal liabilities, and to encounter expense upon the faith of it." 20 Tex. 89, 95 (Tex. 1857). Or as one Texas intermediate court of appeals put it: "[W]hen one makes a promise to contribute money for a specified objective and such promise is relied upon and the purpose of

9

the pledge is carried out, the party making the pledge may be held liable thereon." *Thompson v. McAllen Federated Woman's Bldg. Corp.*, 273 S.W.2d 105, 107-109 (Tex. App.—San Antonio 1954, writ dism'd).

Seton incurred legal obligations and expense in reliance on Debtor's Pledge of $1 million. First, Seton reserved the naming rights to the Grand Entrance and Lobby of the new hospital for Debtor (thus making this prime "naming opportunity" unavailable to other potential donors). [R.R. (August 29) 26-27, 50, 51]. Second, Seton relied on availability of the Pledge when it took out a $30 million loan for construction and development of the new medical center from its parent company, Ascension Health. [R.R. (Aug. 29) 28-30, 34-35]. Seton intended to use the $1 million Pledge towards repayment of the debt. *Id.*[9] Due to Debtor's failure to pay the second installment of the Pledge, Seton has incurred debt that it would not have otherwise incurred and interest has accrued as a result.

Accordingly, the claim is valid under Texas law. Even if the Court determines otherwise, disallowance of the claim based upon a post voting, post-confirmation objection will not alter the vote in favor of Plan confirmation.

**B.    The Bankruptcy Court properly determined that *Res Judicata* did not prevent Appellee from requiring, as part of its Plan, that a portion of the Avail Sale Proceeds be applied to pre-paid Interest**

Appellant argues that the Bankruptcy Court erred in permitting Appellee, through its modified Plan, to require that Appellant apply a portion of the proceeds from the sale to Avail Health Care to pre-paid interest. Appellant incorrectly contends that the Court and Appellee were required to allow all such proceeds to be applied to Appellant's debt pursuant to the Bankruptcy Court's December 17, 2012 Order (the "Avail Sale Order", D.E. 42) approving the sale to Avail. The

---

[9] Additionally, Appellant actually approved the donation, and provided the funding for the donation, as part of its loan to Appellee. [R.R. (Aug. 29) 57-58].

Avail Sale Order provides that "Debtor.. [is] authorized and directed to pay the proceeds…from the Sale of the Property first for payment of 2012 and Seller's pro-rated 2013 taxes…then to the Debtor's secured lender(s) in order of priority… Avail Sale Order, ¶12.  There is no language limiting how the proceeds are to be applied or requiring that the proceeds be applied to accrued interest or principal.  Moreover, the sale had not closed as of the date of the confirmation hearings.

As set forth above, Appellee filed the modifications to its Plan, which specified that a portion of the proceeds from the sale to Avail would be credited as prepaid interest for the period from May 1, 2013 through December 31, 2013.  Appellant contends that "res judicata" bars Appellee (and the Bankruptcy Court) from permitting such a designation because of the terms of the Avail Sale Order.  The Bankruptcy Court discussed, and rejected, these arguments at pp. 32-34 of its Opinion.  As the Bankruptcy Court noted, it had Court continuing jurisdiction to interpret its Avail Sale Order.  *See, e.g.*, *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 129 S.Ct. 129 (2009); *Nat'l Benevolent Ass'n. of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church)*, 333 Fed. Appx. 822, 826 (5th Cir. 2009).  The Bankruptcy Court was in the "best position to interpret its own orders."  Opinion, p. 32 (citations omitted).  The Bankruptcy Court found that the Avail Sale Order did not direct that the proceeds be applied in a particular manner, and that Appellant had not objected to the language nor required a specific application.  Opinion, p. 33.  Moreover, as noted above and discussed by the court, the sale to Avail did not close until May 3 – after the date of the plan modifications.  Accordingly, *res judicata* was inapplicable because how the proceeds were to be

applied had not been argued or litigated.  As such, the Bankruptcy Court's interpretation of the Avail Sale Order and the Debtor's modifications were permissible.[10]

### C.     The Bankruptcy Court did not err in determining that the Debtor's Plan was feasible

Appellee next contends that the Bankruptcy Court erred in finding that the Plan met the requirements of 11 U.S.C. §1129(a)(11), which requires that a debtor prove that confirmation of its plan is "not likely to be followed by liquidation or the need for further financial reorganization."  This requirement is generally referred to as the "feasibility test."  A debtor need only prove the plan's feasibility by a preponderance of the evidence.  *Financial Security Assurance, Inc. v. T-H New Orleans Ltd. P'ship (Matter of T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997).  A finding of a bankruptcy court that a plan is feasible is reviewed under the "clearly erroneous" standard.  *Id*. Compliance with §1129(a)(11) does not require a "guarantee of success...only a reasonable assurance of commercial viability is required."  *Id*.  In other words, a debtor need only show there is a "reasonable probability that the plan provisions can be performed."  *In re Idearc, Inc.*, 423 B.R. 138, 167 (Bankr. N.D. Tex. 2009); *see also T-H New Orleans*, 116 F.3d at 801 (stating that only a "reasonable probability" of success is required).  As the Court noted in *Idearc*, "..just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility...The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required."  *Id; see also In re Cajun Elec. Coop., Inc.*, 230 B.R. 714, 744-45 (Bankr M.D. La. 1999) (same holdings).

The Bankruptcy Court specifically addressed feasibility issues at pp. 34-36 of its opinion, and expressly found that that the Plan was "feasible and satisfies the requirements of

---

[10] Changes to Appellant's lien rights and loan terms are expressly permissible pursuant to 11 U.S.C. §1123(a)(5).

§1129(a)(11)."   Appellant's argument is that because Appellee had failed to generate sales sufficient to pay off the loan in the past, it is destined for failure.[11]  Past performance is only one of the metrics referenced in the cases cited above, and those relied upon by Appellant. Moreover,  Appellee had a successful track record of sales.  In its Opinion, the Bankruptcy Court noted that:

- Appellee had sold three tracts, totaling over $8 million in sale proceeds, in the past 10 months (in addition to the sales made prior to that time)

- Appellee had reduced the debt from a high of $27.2 million to approximately $13.8 million

- Appellee had another tract under contract for sale

Opinion p. 34.  Additionally, the Court found that the testimony from all sides at the hearing was that the land would be sold out in 4 years or less.  *Id.* at p.35.   At the hearing:

- Appellee's representative, Scott Deskins, presented projections [Px. 4] reflecting a full sell-out within 5 years, with Appellant paid in full in year 4.  [R.R. 52 l. 12- 18 and R.R. 88-90].  The Court discussed Mr. Deskins' projections and testimony at pp. 11-13 of its Opinion, finding both Mr. Deskins' testimony and the projections "credible," "reasonable," and "persuasive."  *See also* Opinion p. 12.

- Appellee's expert appraiser, John Coleman, testified that the property would be sold out within 4 years.  [R.R. 162, l. 4-17].

- Appellant's expert appraiser, Gerald Teel, testified that the property would be sold out within 42 months.  [R.R. (April 16_ p. 38].

---

[11] Appellant also contends that the Plan provides for negative amortization; in fact, as set forth above, the Plan contemplates regular payment of interest, and a continuing reserve for interest payments, along with principal reduction.

- Appellant's representative, John Lee, testified that he did not dispute the experts' opinions. [R.R. 229 l. 11 – p. 230, l. 20].

- Appellee had sold numerous tracts, totaling almost $8 million, in 2008-09.  [Opinion p. 8, R.R. 57-66].

Mr. Deskins also testified concerning the current interest and prospects for sales [Opinion p. 12, R.R. 83-85, 89-90].  Additionally, both Mr. Deskins and the appraisers testified that activity would increase further once Wal-Mart broke ground, which is projected to be in 2014.  [Opinion p. 13, R.R. 88, 150-51, R.R. [April 16] 28].   Appellee also receives income of approximately $10,000 per month from the Economic Incentive agreements, [R.R. 50-51], which is anticipated to double when Wal-Mart opens [R.R. 51-52].  Accordingly, Appellee's own opinions are not just "reasonably probable," they are *more* conservative that the experts for both sides.  As the Bankruptcy Court stated, "The 'proof is in the pudding' so to speak – the Debtor has sufficiently demonstrated its ability to sell the Kyle tracts."  Opinion p. 35.  The Bankruptcy Court's finding of feasibility was not clearly erroneous.[12]

### D.    The Bankruptcy Court did not err in determining that the Debtor's Plan was Fair and Equitable

Appellant next contends that the Plan does not provide the Bank with the "indubitable equivalence" of its claim and is, therefore, not fair and equitable. Part of this argument is premised on the flawed assumption that the Plan is not feasible (*See* Brief of Appellant, p. 22), which is addressed above. With respect to the balance of Appellants' argument, Appellant contends that because its collateral has been "impaired."  To the contrary, Appellant retains its liens on the property.  The Plan provides for payment of the principal and market rate interest to

---

[12] The Bankruptcy Court also found that Appellant was protected by an equity cushion based on the value of the property, which value was almost twice the amount of the debt. [Opinion p. 18, Px 5, R.R. 153]. Additionally, the Bankruptcy Court "compensated" Appellant for the potential risk by requiring a 7% interest rate.  See Opinion, pp. 35-36.

the Bank (which the Court found was 7%), with the Bank retaining its liens until a parcel is sold. Upon sale, the Bank will receive the net sale proceeds, less the amount reserved by the Debtor for taxes, insurance and an interest reserve. This treatment is expressly permissible under 11 U.S.C. §1123(a)(5). The Bank will be paid in less than 5 years from the Effective Date. Unlike the analysis urged by the Bank in its objection, the 5th Circuit has made it clear that repayment of the debt with interest is, by definition, providing the "indubitable equivalent." *In re Pacific Lumber Co.*, 584 F.3d 229, 246-47 (5th Cir. 2009). As the 5th Circuit noted in *Pacific Lumber,* "Congress did not adopt **indubitable equivalent** as a capacious but empty semantic vessel. Quite the contrary, these examples focus on what is really at stake in secured credit: repayment of principal and the time value of money…The Bankruptcy Code, however, does not protect a secured creditor's upside potential." *Id*. at 247. Accordingly, the Plan does provide the Bank with the indubitable equivalent of its secured claim. The Bankruptcy Court made specific findings that Appellant was receiving the indubitable equivalent of its claim, which the Court discussed at pp. 29-31 of its opinion. In particular, the Court noted that the Plan permissibly provides for repayment from future sales, with retention of liens, and payment of a market-rate interest. The Court also found (based on the testimony and appraisal of John Coleman), that Appellant was protected by an equity cushion of over $11 million. Opinion, p. 31. Appellant seems to be arguing that Appellee, with approval by the Court, somehow altered its collateral. *See* Brief of Appellant, p. 22. As set forth above, the collateral was not altered. The loan terms were modified, as permitted by the Bankruptcy Court and the Bankruptcy Code. The cases relied upon by the Appellant for the proposition that it is not receiving its indubitable equivalent[13] are simply not on point, and do not deal with the issue presented by this case, i.e.,

---

[13] *In re Arnold & Baker Farms*, 85 F.3d 1415, 1420 (9th Cir. 1996) (holding that a "partial dirt for debt plan" did not return enough value to the secured creditor; *In re Monarch Beach,* 166 B.R. 428 (C.D. Cal. 1993) (Plan

whether a debtor can alter the terms of a loan agreement and provide new terms under its plan and still provide the indubitable equivalent of a secured creditor's claim.  As found by the Court, and for the reasons set forth above, Appellant has received, and is receiving, the indubitable equivalent of its claim.

### E.   The Bankruptcy Court did not err in determining that the Debtor had proposed its Plan in good faith

Appellant's final argument is that the Appellee did not propose its Plan in good faith, as required by 11 U.S.C. §1129(a)(3).  The Bank contends that the Plan is not proposed in good faith because of its "prepetition conduct" and because it did not object to Seton's vote.  The issues regarding Seton are addressed above.  With respect to Appellee's prepetition conduct, Appellant cites to no particular prepetition conduct such as mismanagement, fraud, diversion of funds, or improper conduct that is typically the subject of a good faith argument.  Instead, the Bank focuses on an analysis of the type of factors referenced in *Matter of Little Creek Dev. Co.,* 779 F.2d 1068 (5th Cir. 1986).

11 U.S.C. §1129 sets forth the requirements for confirmation of a proposed plan of reorganization.  Section 1129(a)(3) provides that the plan must "be proposed in good faith and not by any means forbidden by law." While there is no statutory definition, the Fifth Circuit has stated that the good faith standard is met when the Plan is proposed with the legitimate and honest purpose of reorganization and has a reasonable hope of success.  *Heartland Federal Savings & Loan Assoc. v. Briscoe Enterprises, Ltd. (Matter of Briscoe Enterprises)*, 994 F.2d 1160, 1167 (5th Cir. 1993); *In re Sun Country Development, Inc.*, 764 F.2d 406, 408 (5th Cir. 1985).  Moreover, the Debtor's "statement of mind" is irrelevant to the determination of whether §1129(a)(3) has been satisfied.  *In re Ferch*, 333 B.R. 781, 784 (Bankr. W.D. Tex. 2005). The

---

impermissibly limited a secured creditor's credit bid rights); *In re Keller*, 157 B.R. 680 (Bankr. E.D. Wash. 1993) (Plan required a secured creditor to release liens on property owned by non-debtors.)

two standards are different, and the *Little Creek* factors are not the inquiry to be made under 11 U.S.C. §1129(a)(3).  *See, e.g., In re Assoc.*, 157 B.R. 791, 812 (Bankr. W.D. Tex. 1993); *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 393 (Bankr. W.D. Tenn. 1991).  As the court noted in *Landing Associates:*

> *Bank United* suggests that the bankruptcy filing in this case was in bad faith and that the Debtor's Plan cannot escape the taint of bad faith present from the inception of the case.  *Bank United* relies on the legal standard established in several bad-faith filing cases for this proposition.  *See, e.g., Matter of Little Creek Development Co.,* 779 F.2d 1068 (5th Cir. 1986); *In re Fry Road Assoc., Ltd.*, 66 B.R. 602 (Bankr. W.D. Tex. 1986).  However, a different legal standard is employed when evaluating good faith for plan continuation purposes under §1129(a)(3).  *See In re Apple Tree Partners, L.P.*, 131 B.R. 380, 393 (Bankr. W.D. Tenn. 1991).  The inquiry focuses on examining the totality of the circumstances surrounding the *proposed plan*, in light of the underlying goal of the code to encourage efforts at rehabilitation.  *See Sun Country*, 764 F.2d at 408; *see also Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983)."  We are long past deciding whether this case should be dismissed for bad faith filing (the issue before the Court in *Little Creek*.)

*Landing Assoc.*, 157 B.R. at 812; *see also In re Eastbourne 59/Grand Parkway, LP*, 2009 WL 3571248 at *4 FN1 (Bankr. S.D. Tex. Oct. 26, 2009) (noting that issue of good faith filing of case is different than issue of good faith under 1129(a)(3)).  The Bankruptcy Court applied this standard and found that the Plan did meet the requirements of 1129(a)(3), finding that the Plan "has more than a reasonable hope of success," and that based on "[T]he totality of the evidence" Appellee had proposed the Plan "with the legitimate and honest purpose to reorganize its business by finishing the sale of the remaining Kyle Property and paying off its creditors, including Appellant in full."  Opinion, pp. 36-7.  Nothing in the Bankruptcy Court's finding can be termed "clearly erroneous."

Even if the *Little Creek* standard applied, Appellee has acted in good faith. Unlike *Little Creek*, the Debtor is a functioning partnership that has been in existence and has been developing the property for several years. As noted above, Appellee has been able to sell several parcels and pay down the Bank's debt substantially. Appellee has another parcel under contract at or above the Debtor's appraised value, and is in negotiations for other sales. In fact, despite Appellant's unilateral decision to stop funding development[14], Appellant was able to close sales after that time resulting in a substantial reduction in the principal balance of the debt to the Bank. Contrary to Appellant's assertion, the Debtor's primary unsecured creditor is owed over $500,000, and insider creditors are owed more. The Debtor is generating income (approximately $30,000 per quarter) through the Economic Incentive agreements with Hays County and the City of Kyle; those amounts increase as more retail sites are developed, and will increase substantially after Wal Mart opens. Finally, there is substantial equity in the property held by the Appellee. Where equity exists, the interests of equity holders must be taken into account. Appellee's Plan allows it to continue to sell the property, pay the Bank, pay the taxing authorities, pay other creditors, and provide a return to equity. This is the essence of reorganization, not bad faith.

WHEREFORE, based on the foregoing, Appellee requests that this Court affirm the decision of the Bankruptcy Court, and grant such other and further relief to which Appellee may be justly entitled.

---

[14] As noted above, Appellant fell far short of funding the amount it had committed to fund for development of the Property.

Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.

By: */s/ Mark C. Taylor*
    Eric J. Taube
    State Bar No. 19679350
    Mark C. Taylor
    State Bar No. 19713225
    100 Congress Avenue, 18th Floor
    Austin, Texas 78701
    (512) 472-5997
    (512) 472-5248 (FAX)

    ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served by ECF delivery on the persons listed below, and all others receiving ECF notice, on October 4, 2013:

James G. Ruiz
Winstead PC
401 Congress Ave., Suite 2100
Austin, Texas 78701

    */s/ Mark C. Taylor*
    Mark C. Taylor