IN THE
UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Civil Action No. 1:13-cv-00756-LY

---

IN RE:
SCC KYLE PARTNERS, LTD.

WHITNEY BANK
        Appellant,

v.

SCC KYLE PARTNERS, LTD.
        Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

---

## REPLY BRIEF OF APPELLANT

---

James G. Ruiz ( SBN 17385860)
**WINSTEAD PC**
401 Congress Ave., Suite 2100
Austin, TX 78701
(512) 370-2800 Phone
(512) 370-2850 Fax

*ATTORNEYS FOR APPELLANT*
*WHITNEY BANK*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

REPLY ARGUMENT AND BRIEF OF AUTHORITIES................................................. 3

PRAYER................................................................................................................................... 13

CERTIFICATE OF SERVICE ............................................................................................ 14

APPENDIX TO REPLY BRIEF OF APPELLANT .......................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re D&F Const. Inc.*,
  865 F.2d 673 (5th Cir. 1989) ..................................................................................12

*In re Goldstein*,
  114 B.R. 430 (E.D. Pa. 1990) ..............................................................................6, 8, 9

*In re Orosco*,
  77 B.R. 246 (Bankr. N.D.Cal. 1987), *aff'd*, 93 B.R. 203 (9th Cir. BAP 1988) ..................3, 5, 6

*Matter of Madison Hotel*,
  749 F.2d 410 (7th Cir. 1984) ..................................................................................12

*Matter of Martindale*,
  125 B.R. 32 (Bankr. D. Idaho 1991) ..........................................................................11

*Medina v. I.N.S.*,
  1 F.3d 312 (5th Cir. 1993) .......................................................................................9

*Weaver v. Texas Capital Bank*,
  660 F.3d 900 (5th Cir. 2011) ....................................................................................9

**STATUTES**

11 U.S.C. § 363(f) ........................................................................................................15

11 U.S.C. § 1127(b) .......................................................................................................4

11 U.S.C. § 1129(a) .......................................................................................................5

**OTHER AUTHORITIES**

Bankruptcy Rule 3018 ..............................................................................................4, 5

Bankruptcy Rule 3019 ..............................................................................................4, 5

IN THE
UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Civil Action No. 1:13-cv-00756-LY

In Re:
SCC Kyle Partners, Ltd.

Whitney Bank
                       Appellant,

v.

SCC Kyle Partners, Ltd.
                       Appellee.

Appeal from the United States Bankruptcy Court
for the Western District of Texas, Austin Division

## REPLY BRIEF OF APPELLANT

Whitney Bank, successor by merger to Whitney National Bank, individually, and as agent for certain prepetition lenders (collectively "Whitney Bank") replies to the Brief of Appellee filed by the Debtor, SCC Kyle Partners. Ltd.

### INTRODUCTION

The Debtor does not dispute that if the vote of Seton Family of Hospitals ("Seton") is not valid, then it was not entitled to a cramdown plan over Whitney Bank's objection as a matter of law. The Debtor appears to stake its position on its proclamation that Whitney Bank waived its

right to challenge the Seton vote because it did not file a written objection to the Seton claim prior to the confirmation hearing. Not surprisingly, Debtor can find no support for its claim that Whitney Bank waived its right to object to the Seton vote. The bankruptcy court should have determined the validity of the disputed Seton Claim and Seton's right to vote on the proposed plan before approving a cramdown plan over Whitney Bank's objections. Thus a reversal of the Confirmation Order and remand is warranted in this case.

The Confirmation Order should also be reversed because its modification of the Avail Sale Order is barred by *res judicata*. The Debtor concedes the Avail Sale Order is a final judgment and the applicability of *res judicata* is the determinative of whether the bankruptcy court erroneously amended or otherwise modified the final judgment. Debtor's argument that "res judicata was inapplicable because how the proceeds were to be applied had not been argued or litigated" ignores the standard that any matter that might have been litigated in connection with the first proceeding involving the Avail Sale cannot be litigated in the second proceeding relating to confirmation of the Plan. In addition, the Debtor fails to inform the Court that it in fact sought to use a portion of the proceeds of the Avail Sale to pay future interest at the hearing on the § 363 Motion and that the bankruptcy denied the use of proceeds for that purpose at that hearing. The amount of proceeds Whitney Bank was entitled to receive in exchange for the release of lien on the tract and whether Debtor could use a portion of the proceeds to pay future interest was litigated in connection with the Avail Sale. Therefore, *res judicata* bars modification of the Avail Sale Order by the Confirmation Order.

With respect to whether the Plan is feasible, fair and equitable, and proposed in good faith, Debtor can cite to no case where a court has found a plan feasible when the debtor has no cash flow or regular income stream for debt service and plan payments are exclusively reliant

upon speculative future land sales over a five year period. If the Debtor position is adopted, every land speculator or house-flipper has a sanctuary in bankruptcy court as every borrower can argue that it believes land values will increase in the future and it will be able to repay the creditors in full as soon as it sells the land for profit. The confirmed Plan sets no minimum benchmarks for principal reduction yet deprives Whitney Bank from foreclosing on its collateral for five years. The Plan should not be confirmed.

## REPLY ARGUMENT AND BRIEF OF AUTHORITIES

### I. *Whitney Bank did not waive its right to object to the cramdown plan and Seton's vote*

#### A. *Neither Bankruptcy Code nor Rules impose a deadline to object to votes*

Debtor does not cite to any authority to support its contention that Whitney Bank was required to object to the Seton Claim and its vote prior to the commencement of the confirmation hearing or such objection is waived. The only case cited to the Court on this issue holds just the opposite. *In re Orosco*, 77 B.R. 246 (Bankr. N.D.Cal. 1987), *aff'd*, 93 B.R. 203 (9th Cir. BAP 1988) (no waiver). Neither the Bankruptcy Code nor the Bankruptcy Rules impose a deadline for objecting to claims or ballots. Likewise, the Disclosure Statement and the Order Approving First Amended Disclosure Statement did not set a deadline for objecting to votes submitted by holders of disputed claims for purposes of a cramdown plan. The Debtor's Amended Disclosure Statement approved by the bankruptcy court provides that objections to claims must be filed before "the first Business Date that is 60 days after the Effective Date." [Px. 3, art. 6.04 at p.11]. No earlier deadline was imposed by the bankruptcy court.

The Debtor's proposed deadline for objecting to claims and votes ignores the bankruptcy statutes and rules that allow for many post-confirmation hearing activities. The bankruptcy statutes provide for amendments to the proposed plans after the confirmation hearing commences

3

(as the Debtor did more than once in this case) and for a creditor to change its vote after a confirmation hearing for cause. See 11 U.S.C. § 1127(b) and Bankruptcy Rules 3018(a) and 3019. The confirmation hearing date is not sacrosanct or otherwise a cutoff date for activities pertaining to confirmation of a proposed reorganization plan as the Debtor suggests.

In fact, after the confirmation hearing began on April 4, 2013, the Debtor filed the following modifications/amendments to the proposed plan of reorganization:

- Second Modification to Proposed Amended Plan on April 4, 2013 [D.E. 100];
- Amended Second Modification for Proposed Plan of Reorganization on April 16, 2013 [D.E. 102];
- Second Amended Second Modification to Proposed Plan of Reorganization on April 25, 2013 [D.E. 107]; and
- Second Amended and Modified Plan of Reorganization on July 1, 2013 [D.E. 133].

The last two plan amendments/modifications were filed after the completion of the confirmation hearing.

Whitney Bank objected to the validity of Seton's vote at the confirmation hearing and filed its written objection to the Seton Claim that again challenged Seton's right to vote with ample time for the bankruptcy court to consider the issues (60 days) prior to the entry of the Confirmation Order. [C.R. 22 at p.38; D.E. 106]. The Debtor has not demonstrated any prejudice as a result of the timing of Whitney Bank's objection to the Seton vote. Nor does the Debtor identify any prejudice or hardship that will result if the bankruptcy court should be required to rule on the merits of the Seton Claim before it determines the Debtor's right to a cramdown plan. No prejudice exists because the Debtor has no business operations or other activities that will be impacted by the delay.

### B.     *Debtor first requested a cramdown plan after the close of its case in chief*

Debtor conveniently did not inform the Court that it first asked the bankruptcy court to invoke the cramdown provisions of section 1129(b)(2)(a) in the case *after the close of its case in chief* at the confirmation hearing. [R.R. 202:22-25.]. In response, Whitney Bank argued at the confirmation hearing that the Seton vote should be disregarded for cramdown plan purposes because its claim is not valid. [R.R. (4/16/13) 109:5-14]. The Debtor's Disclosure Statement does not request a cramdown plan in the event the proposed plan does not receive sufficient votes to be confirmable under §1129(a) of the Bankruptcy Code. [Px. 3]. It is illogical to suggest Whitney Bank had an obligation to object to a vote being counted for cramdown purposes before the Debtor even requested a cramdown plan.

The Debtor's position that under the Bankruptcy Code and Rules a debtor can continue to modify or amend its proposed plan and add new requests for relief after the confirmation hearing commences, but that creditors are barred from adding any objections or arguments in response to the plan modifications and amendments or new requests for relief once the hearing starts, is untenable and unduly prejudicial to the rights of creditors in a Chapter 11 bankruptcy case. In fact, the Bankruptcy Rules permit creditors to change their vote after the confirmation hearing for cause, particularly when the modification or amendment of a plan materially alters the treatment of their claims. See Bankruptcy Rules 3018 and 3019. Contrary to Debtor's assertion, Whitney Bank did not waive its right to object to Seton's vote and the confirmation of a cramdown plan that hinges on that single vote. *See In re Orosco*, 77 B.R. at 249-250. The Debtor's desire to ignore the *Orosco* case is understandable given the reasoning supporting the bankruptcy court's decision in *Orosco* is germane to the issues in this case.

The Debtor also fails to address the concerns raised by the *Orosco* court that allowance of holders of disputed claims to vote on a plan could subject debtors and holders of allowed claims

to substantial and irreparable prejudice as the fate of a plan could be left to the will of the holders of "non-existent obligations" while the remaining parties with a legitimate financial stake in the outcome of the balloting would be deprived of a practical remedy. *In re Orosco*, 77 B.R. at 249. Debtor states no reason why in this Single Asset Real Estate case that essentially involves a two-party dispute, the bankruptcy court should not have held off on the confirmation ruling until after it first decided whether Seton is even a creditor of the Debtor and entitled to vote on the proposed reorganization plan particularly where the disputed vote controls the outcome of the balloting. *See In re Goldstein*, 114 B.R. 430, 431 (E.D. Pa. 1990). Such a course of action would better serve the goals of the Bankruptcy Code than the Debtor's assertion that objections to votes need to be made prior to the commencement of the confirmation hearing, i.e. before any evidence relating to the votes and the underlying claims is even introduced.

    **C.**    *The validity of Seton's Claim remains unresolved*

The bankruptcy court has not yet ruled whether Seton has a valid claim against the Debtor.[1] When the bankruptcy court noted the discrepancy in the party to whom the pledge was made (Seton Hays Foundation) and the party who filed the proof of claim (Seton) at the conclusion of the hearing on the claim objection, the Debtor offered to allow Seton to amend the proof of claim to change the name to Seton Hays Foundation. [R.R. (8/29/13) 86:11-87:19]. Presumably, the vote cast by Seton would need to be changed as well unless the Bankruptcy Code allows a party with a "non-existent obligation" against the Debtor to vote on a proposed plan. No amendment has occurred to date, and any such amendment would be futile. The

---

[1]     A hearing before the bankruptcy court on the Oral Ruling on the Objection to Claim of Seton Family of Hospitals has been set on October 25, 2013. [D.E. 183].

Debtor's feeble attempt to argue that the Seton Claim is valid ignores Texas law and the evidence presented at the hearing on the Objection to Claim of Seton Family of Hospitals.[2]

The Debtor asserts "the Pledge is enforceable under Texas law because it is supported by consideration and because Seton relied on the Pledge to its detriment." *Appellee Brief at p.8*. It should not be lost on the Court that the Debtor then proceeded to cite a Massachusetts bankruptcy court decision that applied Massachusetts law in support its proposition that the Seton Claim is valid under Texas law. *Id., citing In re Morton Shoe Co.*, 40 B.R. 948, 949-51 (Bankr. D. Mass. 1984). It is not in dispute that the pledge was made to Seton Hays Foundation on August 5, 2008, and payable to Seton Hays Foundation. [C.R. 19]. Gerald Hill, Executive Director of Seton Hays Foundation, testified to the following:

- In September 2007, Seton Family of Hospitals had already contractually agreed to build a hospital in the City of Kyle. [R.R.(8/29/13) 17:12-15].

- Seton committed to build the hospital a year and eight months prior to the pledge. [R.R. (8/29/13) 17:20-24].

- Seton Hays Foundation did not incur any debt or borrow any money in reliance upon the pledge. [R.R. (8/29/13) 21:23-22:1].

- Seton Hays Foundation viewed the pledge as a donation that was going to help it achieve its $30 million dollar fundraising goal that was set prior to the pledge being made. [R.R. (8/29/13) 22:5-11].

- Seton Hays Foundation and Seton Family of Hospitals are separate corporations owned by Ascension Health. [R.R. (8/29/13) 21:8-22].

---

[2] Citations to the transcript of the Hearing on the Objection to Claim of Seton Family of Hospitals held on August 29, 2013 will be referenced as [R.R. (8/29/13) page: line numbers].

7

- Seton Hays Foundation did not assign the pledge to Seton Family of Hospitals. [R.R. (8/29/13) 16:15:25-16:4].

- Seton Hays Foundation took no action in reliance of pledge other than to send a thank you letters to Scott Deskins. [R.R. (8/29/13) 16:15-21].

- Seton did not list the pledge at issue as a receivable its Form 990 tax returns it filed with the IRS for the years 2008-2010, covering the period July 1, 2008 to June 30, 2011. [R.R. (8/29/13) 18:4-19:21].

As stated on the face of the pledge form, there was no consideration for the pledge. In addition, Michelle Gonzalez, development director of Seton Hays Foundation, testified that the name reserved for the grand entrance and lobby is in fact "SCC Development Inc." not the name of the Debtor, and if the pledge is not paid in full, any other party that donates $1 million dollar will get the naming rights. [R.R. (8/29/130 52:11-13, 53:11-54:3]. To this date, the Debtor has received no publicity or other benefit as a result of the pledge. [R.R. (8/29/13) 14:11-14; 53:11-15; 66:20-22].

Not surprisingly, given the charitable pledge at issue is not an enforceable obligation, the Debtor did not list any obligation owed to Seton or Seton Hays Foundation in the Certificate of Financial Statement provided to Whitney Bank that certified the financial condition of the Debtor as of May 31, 2011, and stands by that certification to this date. [R.R. (8/29/13) 65:14-24; 68:9-17]. Likewise, Seton did not list the unenforceable pledge as a receivable its Form 990 tax returns for the years 2008-2010, covering the period July 1, 2008 to June 30, 2011. [R.R. (8/29/13) 18:4-19:21].The parties' actions indicate neither believed the charitable pledge was an enforceable obligation.

While the issue with respect to the validity of the Seton Claim remains with the bankruptcy court and is not yet ripe for this Court's review, the significance of the issues concerning the validity of the Seton Claim and the fact that the confirmation of the cramdown plan hinges on Seton's right to vote justify the adoption of the reasoning of the *Goldstein* court and the remand of this matter to the bankruptcy court to first determine if the Seton Claim is valid, and based on that determination, whether Seton has a right to vote and if a cramdown plan can be confirmed. *See In re Goldstein*, 114 B.R. 430 (E.D. Pa. 1990).

**II.   *Modification of Avail Sale Order by the Confirmation Order is barred by res judicata as the bankruptcy court previously denied Debtor's request to use of the Avail Sale proceeds to create a reserve account at the time of the § 363 Hearing***

The Fifth Circuit has held the "[f]ew legal doctrines are more intrinsic or necessary in our system than res judicata." *Medina v. I.N.S.*, 1 F.3d 312, 313 (5th Cir. 1993). Debtor misses the point on the applicability of *res judicata* to the modification of the Avail Sale Order. The issue is not whether the Avail Sale Order addressed "how the proceeds from the Avail Sale Order would be credited or applied," but what was the release price for Whitney Bank's release of its lien against the tract sold to Avail Healthcare. The doctrine of *res judicata* bars a second proceeding based on claims that *were raised or could have been raised* in the first proceeding. *Weaver v. Texas Capital Bank*, 660 F.3d 900, 906 (5th Cir. 2011)(emphasis added). Without question, the Confirmation Order re-litigates the issues raised in connection with the approval of the Avail Sale and modifies the Avail Sale Order with respect to the release price Whitney Bank was entitled to receive in exchange for its release of lien.

Debtor neglects to advise the Court that it previously requested to use the proceeds from the Avail Sale to create a "reserve account" from which future interest could be paid, at the hearing on its § 363 Motion on December 3, 2012, but the bankruptcy court did not allow the use of the sale proceeds from the Avail Sale for that purpose. A form of Order submitted by Debtor

9

to the bankruptcy court in advance of the hearing on the approval of the Avail Sale seeking to utilize a portion of the proceeds to create a reserve account to pay interest is attached to the Appendix hereto. [See Appendix Tab 5 at ¶12; D.E.182]. Whitney Bank opposed the Avail Sale unless it received adequate protection in exchange for its release of lien, i.e. the net sale proceeds. [D.E. 36]. The bankruptcy court rejected the Debtor's proposed use of the sale proceeds to create a "reserve account" from which to pay future interest and entered the Avail Sale Order directing the net sale proceeds to be paid to Whitney Bank in exchange for the release of lien. [R.R. (4/4/13) 107:4-108:19; C.R. 11 and 13 at p. 10, ¶21].

Under the Avail Sale Order, Whitney Bank was required to release its lien on the tract sold to Avail Healthcare in exchange for the payment of $1,425,002.50. [Dx. 22, ¶¶ 12 and 13]. The Avail Sale expressly states *"**without further order of the Court, and in light of the release of the Interests against the Property at Closing, such payment shall not be subject to avoidance, surcharge, or disgorgement**."* [Dx. 22 at ¶12]. The Avail Sale closed on May 3, 2013. [D.E. 115]. The Confirmation Order now requires Whitney Bank to disgorge a portion of the payment it received in exchange for its release of lien, an amount equal to seven months of interest on the debt, and essentially return the funds to the Debtor so the funds can be used for future interest payments on the loan for the period covering May 1, 2013 to December 31, 2013. [C.R. 4 at p.3].

The Avail Sale Order expressly states that the payment to Whitney Bank was not subject to disgorgement. The manner in which Whitney Bank applied the funds, whether to principal, accrued and unpaid interest, or other expenses, was not relevant to the determination of the release price to be received in exchange for the release of its lien. Debtor will be hard pressed to explain how the subsequent Confirmation Order that now requires Whitney Bank to release its

10

lien on the tract sold to Avail Healthcare for approximately $500,000 less is not re-litigating the issue Debtor previously lost with respect to the distribution of sale proceeds and the consideration to Whitney Bank for the partial release of its lien against the property.

The bankruptcy court did not interpret the Avail Sale Order to clarify any ambiguity in connection with the Confirmation Order, but rather amended the Avail Sale Order to require Whitney Bank to accept a lower release price in exchange for the partial release of its lien, to disgorge an amount equal to seven months of interest, and to allow the Debtor to use those proceeds to "prepay" future interest on the loan for the balance of 2013. The amendment/modification of the Avail Sale Order by the Confirmation Order is barred by *res judicata*. For such reason, reversal of the Confirmation Order is warranted.

### III.   If The Debtor's Plan is feasible, fair and equitable, and proposed in good faith, then bankruptcy court is a sanctuary for land speculators and house flippers

Under the Plan, the Debtor is not required to expend or otherwise risk a single dollar of its own funds in connection with its "reorganization" efforts. All payments will be made from Whitney Bank's cash collateral or the proceeds of the sale of its real property collateral. Debtor has no business operations and no cash flow or income stream sufficient to pay the annual property taxes on the real estate, much less service the existing debt owed to Whitney Bank. As Debtor admitted, it is simply a "land seller." The promise that the market will improve and a debtor can repay the loan once it sells the property with no money out of pocket but solely based on the appreciation of real estate values is of the kind made on late night infomercials seeking to recruit land speculators and house flippers. Debtor can cite to no prior case where a bankruptcy court found a reorganization plan offered by a party in the situation similar to the Debtor was feasible, fair and equitable, or proposed in good faith.

Given the Debtor is not capable of servicing its debt, this case is similar to the *Matter of Martindale* case where the debtor proposed to liquidate its property or transfer portions of it to secured creditor to discharge the debt. *Matter of Martindale*, 125 B.R. 32 (Bankr. D. Idaho 1991). Only in the *Martindale* case, the debtor was given 300 days to sell the land or it would revert to the secured creditor, not 1,825 day (5years) as in this case. *Id.* at 40. Under the cramdown plan, even though the Debtor does not have sufficient capital, it has little incentive to aggressively sell the tracts of land and can engage in land speculation as it is only required to sell land sufficient to fund the "rolling reserve" account to pay interest, taxes and insurance on the property for one year to be entitled to another year of land speculation.[3]

The Plan sets no minimum principal reduction benchmarks for any interim term. Under the Plan, the principal amount owed to Whitney Bank could not be reduced at all and a large balloon payment will be due at the end of year five of the plan if the Debtor wishes only to sell land sufficient to keep the "rolling reserve" funded and speculate on the balance of the Property. During that five year period, Whitney Bank is the party that bears the risk that the real estate market will plummet as it did 2008, due to a shock to the financial markets or a political turmoil, not the Debtor.

A plan that is not fair and equitable with respect to an impaired secured creditor cannot be confirmed on the basis that such inequity is necessary to protect junior creditors or interest holders. *In re D&F Const. Inc.*, 865 F.2d 673, 676 (5th Cir. 1989). Good faith is generally

---

[3] Debtor's reliance on the appraisers' statements that the property can be sold within four years is misplaced. Appraisers are required to select an absorption period in order to calculate their present value of the property and both appraisers continued to use the same absorption period to calculate the present value of the property for each appraisal they completed even as time continued to pass extending the overall actual sale period. [R.R (4/16/13) 20:20-23:23]. Two years from now, the appraisers would again opine the land could be absorbed within four years.

interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with objectives and purposes of the Bankruptcy Code. *Matter of Madison Hotel*, 749 F.2d 410, 425 (7th Cir. 1984). The confirmation of the cramdown Plan does not advance the goals of the Bankruptcy Code. Debtor admits that it will cease to exist once all the property is sold to pay the amount owed to Whitney Bank. [R.R. (8/29/13) 67:3-9]. Accordingly, there will be no reorganization or rehabilitation of the Debtor in the end.

The Plan is nothing more than a liquidation plan. While a liquidation plan generally is permissible under the Bankruptcy Code, a five year liquidation plan is not fair and equitable when the Debtor does not have sufficient capital to bear the carrying costs. Especially when it is undisputed that the tracts could be sold in a shorter period of time and still pay the creditors off in full if the Debtor lower the sale price for the lots. [R.R. (4/4/13) 172:4-11]. Debtor has no incentive under the Plan to aggressively sell the property in a shorter period of time to repay the creditors sooner because that would come with the possible expense of losing future speculative profits. For such reasons, the Confirmation Order should be reversed.

## **PRAYER**

WHEREFORE, Whitney Bank respectfully requests that this Court reverse the determinations and rulings of the bankruptcy court's Confirmation Order, that such order be vacated and the case remanded to the bankruptcy court for further consideration of the merits of Seton's claim and its eligibility to vote, and whether Debtor obtained the approval of a class of creditors required under §1129(b)(10) to be eligible for a cram down plan of reorganization and, if necessary, the feasibility of the proposed Plan without the Debtor's ability to amend the Avail Sale Order to allow a portion of the proceeds to be credited as "prepaid interest" to fund the Plan, and that it have and recover any and all other general relief to which they may be entitled.

DATED: October 18, 2013

Respectfully submitted,

**WINSTEAD PC**
401 Congress Ave., Suite 2100
Austin, Texas 78701
(512) 370-2800 – telephone
(512) 370-2850 – facsimile

By: /s/ James G. Ruiz
  James G. Ruiz
  State Bar No. 17385860

**ATTORNEYS FOR APPELLANT**
**WHITNEY BANK**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 18, 2013, a true and correct copy of this document was served electronically on all registered ECF users in this case, and by Certified Mail, Return Receipt Requested on all persons identified below.

Eric J. Taube
Mark Taylor
Hohmann Taube & Summers, LLP
100 Congress Ave., Suite 1800
Austin, TX 78701

  /s/ James G. Ruiz
  James G. Ruiz

14