**UNITED STATES DISTRICT COURT**

FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Civil Action No. 1:13-cv-00756-LY**

---

IN RE:
SCC KYLE PARTNERS, LTD.

WHITNEY BANK

Appellant,

v.

SCC KYLE PARTNERS, LTD.,
AND SETON FAMILY HOSPITALS
D//B/A SETON MEDICAL CENTER HAYS

Appellees.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

---

**SUPPLEMENTAL BRIEF OF APPELLANT**

---

James G. Ruiz (SBN 17385860)
**WINSTEAD PC**
401 Congress Ave., Suite 2100
Austin, TX 78701
(512) 370-2800 Phone
(512) 370-2850 Fax
jruiz@winstead.com
***ATTORNEYS FOR APPELLANT***
***WHITNEY BANK***

# TABLE OF CONTENTS

Page

REFERENCES TO THE RECORD ON APPEAL ..... v

STATEMENT OF BASIS FOR APPELLATE JURISDICTION ..... vii

ISSUES PRESENTED ..... viii

STANDARD OF REVIEW ..... ix

SUPPLEMENTAL STATEMENT OF THE CASE ..... 2

1. Factual Background ..... 2

2. Procedural Summary ..... 6

ARGUMENT AND BRIEF OF AUTHORITIES ..... 8

1. Seton was not a creditor or holder of a claim against SCC Kyle ..... 8

2. Claims Based Upon Charitable Pledges Require Consideration or Detrimental Reliance on the part of the Donee to be enforceable under Texas Law ..... 10

A. Charitable Pledge Lacked Consideration ..... 14

B. No Substantial Change in Position of Seton or the Foundation Occurred in Reliance of Charitable Pledge ..... 17

3. To the Extent the Charitable Pledge was an Enforceable Contract, SCC Kyle's Rejection of the Contract Constitutes a Permissible Withdrawal of the Pledge with Respect to any Unfulfilled Amounts ..... 20

PRAYER ..... 23

CERTIFICATE OF SERVICE ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allegheny College v. The National Chautauqua County Bank of Jamestown,*
246 N.Y. 369, 159 N.E. 173 (1927) .......... 14

*Congregation Kadimah Toras-mosche v. DeLeo,*
540 N.E.2d 691 (Mass. 1989) .......... 19

*Fed. Sign v. Tex. S. Univ.,*
951 S.W.2d 401 (Tex. 1997) .......... 11

*Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.,*
554 U.S. 33, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008) .......... 21

*Ft. Worth & R. G. RY. Co. v. Lindsey,*
32 S.W. 714 (Tex.Civ.App. 1885, writ ref'd) .......... 12, 13, 22

*Garza v. Villarreal,*
345 S.W.3d 473 (Tex.App.-San Antonio 2011, pet. denied) .......... 11

*Hernandez v. Commissioner,*
490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) .......... 16

*Hilley v. Hilley,*
342 S.W.2d 565 (Tex. 1961) .......... 14

*Hopkins v. Upshur,*
20 Tex. 89 (Tex. 1857) .......... 11, 13

*In the Matter of Smith Jones, Inc.,*
26 B.R. 289 (Bankr. D. Minn. 1982) .......... 20

*In re 375 Park Ave. Associates, Inc.,*
182 B.R. 690 (Bankr. S.D.N.Y. 1995) .......... 11, 15, 20

*In re Fussel,*
928 F.2d 712 (5th Cir. 1991) .......... ix

*In re Ha Thi Nguyen-Gassaway,*
408 B.R. 869 (Bankr. S.D. Tex. 2009) .......... 15

*In re Lincoln Avenue & Crawford's Home for the Aged, Inc.*,
164 B.R. 600 (Bankr. S.D. Ohio 1994) ....................10

*In re Maxcy*,
45 B.R. 268 (Bankr. D.Mass 1985) ....................8

*In re Missionary Baptist Found. of Am.*,
712 F.2d 206 (5th Cir. 1983) ....................ix

*In re Placid Oil*,
72 B.R. 135 (Bankr. N.D. Tex. 1987) ....................21, 20

*In re T-H New Orleans Ltd. Partnership*,
188 B.R. 799 (E.D. La. 1995), *aff'd* 116 F.3d 790 (5th Cir 1997) ....................15

*In re Webb*,
954 F. 2d 1102 (5th Cir. 1992) .................... ix

*Kehr v. Smith*,
20 Wall. 231, 87 U.S. 31, 22 L.Ed. 313 (1873) ....................14

*Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler)*,
106 B.R. 943 (N.D. Tex 1989) .................... ix

*Lubrizol Enterprises v. Richmond Metal Finishers, Inc.*,
756 F.2d 1043 (4th Cir. 1985) ....................21

*Matter of Murexco Petroleum, Inc.*,
15 F.3d 60 (5th Cir. 1994) ....................21

*Moody v. Empire Life Ins. Co. (In re Moody)*,
849 F.2d 902 (5th Cir. 1988) .................... vii

*Mount Sinai Hospital of Greater Miami v. Jordan*,
290 So.2d 484 (Fla. 1974) ....................13

*N. Nat. Gas Co. v. Conoco, Inc.*,
986 S.W.2d 603 (Tex. 1998) ....................11

*Nichols v. Petroleum Helicopters, Inc.*,
17 F.3d 119 (5th Cir. 1994) .................... ix

*Rouff v. Washington and Lee University*,
48 S.W.2d 483 (Tex.Civ.App. - Galveston 1932, writ refused) ....................12, 13

*Thompson v. McAllen Federated Woman's Bldg. Corp.*,
273 S.W.2d 105 (Tex.Civ.App.- San Antonio 1954, writ dismissed) ....................11, 12

*Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*,
549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)..................................................8

*United States v. American Bar Endowment*,
477 U.S. 105, 106 S.Ct. 2426, 91 L.Ed.2d 89 (1986)..................................................16

*Walker v. Loring*,
89 Tex. 668, 36 S.W. 246 (Tex. 1896) ..........................................................................10

*Wheeler v. White*,
398 S.W.2d 93 (Tex. 1965)..............................................................................................17

*Zahira Spiritual Trust v. United States*,
910 F.2d 240 (5th Cir. 1990)............................................................................................10

**STATUTES**

11 U.S.C. §101(5)...........................................................................................................8

11 U.S.C. §101(10) .........................................................................................................8

11 U.S.C. §365.........................................................................................................19, 20, 21

11 U.S.C. §501(a)...........................................................................................................7

11 U.S.C. § 502..............................................................................................................19

11 U.S.C. § 502(a)..........................................................................................................8

28 U.S.C. § 158(a)(l)..................................................................................................... vii

Confirmation Order .........................................................................................................7

*Chapter 11, Title 1, United States Code* (the "Confirmation Order") .................................6

**OTHER AUTHORITIES**

FED. R. BANKR. P. 8013................................................................................................. ix

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 347 (1977), reprinted in 1978
U.S.C.C.A.N. 5787.........................................................................................................19

## REFERENCES TO THE RECORD ON APPEAL

The record on this consolidated appeal is an electronic record involving transcripts of hearings held on four different dates, and exhibits from two separate matters, i.e. Objection to Confirmation of Plan of Reorganization and Objection to Claim of Seton Family of Hospitals. The references to the record in the Supplemental Brief of Appellant will be separated from text by brackets and are identified as follows:

- **[D.E. __]** refers to the document number entries as shown on the Bankruptcy Court's docket sheet in the bankruptcy case;

- **[C.R. __]** refers to the document designated by Whitney Bank with the designation number identified in its *Designation of Record on Appeal and Statement of Issues on Appeal,* which is located electronically in case No. A-13-cv-1064- LY Docket No. 1; Document Nos. 6-15;

- **[Whitney Ex. __]** refers to the exhibit admitted by Whitney Bank (Appellant) at the hearing on the Objection to Claim of Seton Family of Hospitals held on October 25, 2013, which is located electronically in case No. A-13-cv-1064- LY Docket No. 1; Document Nos. 28-36;

- **[Jt. Ex. __]** refers to the exhibit admitted by SCC Kyle Partners, Ltd. and Seton Family of Hospitals (Appellees) on the Objection to Claim of Seton Family of Hospitals on October 25, 2013, which is located electronically in case No. A-13-cv-1064- LY Docket No. 1; Document Nos. 19-26;

- **[Dx. __]** refers to the exhibit admitted by Whitney Bank (Appellant) at the hearing on the confirmation of the Plan held on April 4, 2013 and April 16, 2013;

- **[Px. __]** refers to the exhibit admitted by the Debtor (Appellee) at the hearing on the confirmation of the Plan held on April 4, 2013 and April 16, 2013; and

- **[R.R. date at p. __: lines]** refers to transcripts in bankruptcy court designated by Whitney Bank on appeal on the particular date the hearing was held.[1]

[1] The Transcript of the Hearing on the Objection to Claim held on August 29, 2013, is located electronically in case No. A-13-cv-1064- LY Docket No. 1; Document No. 14;
The Transcript for the Oral Ruling on Objection to Claim of Seton Family of Hospitals held on October 25, 2013 is located electronically in case No. A-13-cv-1064- LY Docket No. 1; Document No. 15;
The Transcript for the Confirmation Hearing held on April 4, 2013, is located electronically in case No. A-13-cv-00756- LY Docket No. 1; Document No. 2;
The Transcript for the Confirmation Hearing held on April 16, 2013, is located electronically in case No. A-13-cv-00756- LY Docket No. 1; Document No. 3;

## STATEMENT OF BASIS FOR APPELLATE JURISDICTION

Jurisdiction of this appeal is vested in this Court pursuant to 28 U.S.C. § 158(a)(l). The United States Bankruptcy Court for the Western District of Texas, Austin Division, entered its *Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals* on October 25, 2013. [C.R. 4]. The Order on Seton's proof of claim is a final, appealable order. See *Moody v. Empire Life Ins. Co. (In re Moody)*, 849 F.2d 902, 904 (5th Cir. 1988) (order allowing a claim or priority in a bankruptcy proceeding which determines the amount due a creditor is appealable). Appellant Whitney Bank timely filed a *Notice of Appeal* of the Seton Claim Order on November 5, 2013. [C.R. 3].

## ISSUES PRESENTED

Whitney Bank presents the following additional issues in this consolidated appeal pertaining to the bankruptcy court's denial of its Objection to Claim of Seton Family of Hospitals:

1.  The bankruptcy court erred in overruling Whitney Bank's objection to the claim of Seton Family of Hospitals for the following reasons:

    a.  Seton Family of Hospitals is not a creditor or the holder of a claim against the bankruptcy estate.

    b.  The charitable pledge to Seton Hays Foundation, upon which the Seton claim is based entirely, is unenforceable under Texas law because it lacked consideration and there was no detrimental reliance on the part of Seton Hays Foundation or Seton Family of Hospitals by reason of the pledge.

    c.  To the extent the charitable pledge was an enforceable contract, SCC Kyle's rejection of the unfulfilled pledge in the bankruptcy case, as it was neither assumed nor rejected prior to the confirmation of the Second Amended Plan of Reorganization, constitutes a permissible withdrawal of the charitable pledge to the extent any amounts remain unfulfilled.

**STANDARD OF REVIEW**

In reviewing a decision of the bankruptcy court, this court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *See In re Webb,* 954 F. 2d 1102, 1103-04 (5th Cir. 1992).

The bankruptcy court's legal conclusions are subject to *de novo* review. *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122 (5th Cir. 1994); *In re Fussel*, 928 F.2d 712, 715 (5th Cir. 1991). "De novo" review requires this Court "to make a judgment independent of the bankruptcy court without deference to that court's analysis and conclusions." *Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler)*, 106 B.R. 943, 952 (N.D. Tex 1989).

Findings of fact, whether based on oral or documentary evidence, are only set aside if they are clearly erroneous. *See* FED. R. BANKR. P. 8013; *see also Herby's Foods, Inc.*, 2 F.3d 128, 130-131 (5th Cir. 1993). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *In re Missionary Baptist Found. of Am.*, 712 F.2d 206, 209 (5th Cir. 1983) (*quoting U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

**IN THE**
**UNITED STATES DISTRICT COURT**

FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**Civil Action No. 1:13-cv-00756-LY**

---

IN RE:
SCC KYLE PARTNERS, LTD.

WHITNEY BANK
Appellant,

v.

SCC KYLE PARTNERS, LTD.,
AND SETON FAMILY HOSPITALS
D//B/A SETON MEDICAL CENTER HAYS

Appellees.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

---

## SUPPLEMENTAL BRIEF OF APPELLANT

---

Whitney Bank, successor by merger to Whitney National Bank, individually, and as agent for certain prepetition lenders (collectively "Whitney Bank"), Appellant, submits its Supplemental Brief of Appellant addressing the issues pertaining to its appeal of the bankruptcy court's Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals entered on October 25, 2013.

## SUPPLEMENTAL STATEMENT OF THE CASE

### 1. FACTUAL BACKGROUND

On September 25, 2007, Seton Family of Hospitals ("Seton") and SCC Kyle Partners, Ltd. ("SCC Kyle") entered into a Seton/SCC Project and Economic Development Incentive Agreement with the City of Kyle, Texas, whereby the City of Kyle provided development reimbursements and economic incentives to Seton, to build a hospital, and to SCC Kyle, to build retail stores and restaurants, as well as some other non-medical retail development, on an approximately 215 acre tract of land within the City corporate limits of Kyle, Texas (the "Project"). [Whitney Ex 2]. Seton and SCC Kyle entered into a similar economic development incentive agreement with Hays County, Texas, in connection with the Project on December 27, 2007. [Whitney Ex. 3]. Both economic incentive agreements became effective as of the date signed. [Whitney Exs. 2 and 3]. All the parties acknowledged and agreed that time was of the essence in the performance of the agreements. [Whitney Ex. 2 at §23 and Ex. 3 at § 20].

Under the economic incentive agreements, Seton and SCC Kyle were required to voluntarily request annexation by the City of Kyle of any portion of the Property outside the city limits within 10 days of the acquisition of the Property. [Whitney Ex. 2 at § 6(a)]. SCC Kyle also was required to commence construction on the extension of the road improvements through the Project no later than June 1, 2008. [Whitney Ex. 2 at §7]. The Property was acquired on September 28, 2007. [R.R. 4/4/2013 at 41:20-21]. The economic incentive agreements expressly state that the terms set forth therein constitute the entire agreement between the parties and supersede all prior agreements and

understandings relating to the subject matter of the agreements. [Whitney Ex. 2 at § 20 and Ex. 3 at § 17]. Neither economic incentive agreement provides for any charitable gift or pledge to the Foundation or Seton to be consideration for, or otherwise be a part of, the transaction.

On October 31, 2007, SCC Kyle entered into the First Amended and Restated Construction Loan Agreement (the "Loan Agreement") with Whitney Bank, wherein it allocated $2,000,000 of the loan proceeds for a gift to Seton. [Dx-1, Ex. B]. Under the Loan Agreement, the gift to Seton was required to be paid upon commencement of construction by Seton. [Dx-1, Ex. B]. Seton commenced construction on the Project around March/April of 2008. [R.R. 8/29/2013 at 9:8-21; 50:4]. However, SCC Kyle did not make any gift to Seton at the time Seton began construction of the Project.

Scott Deskins ("Deskins"), president of SCC Development Corporation, did not even complete a Seton Hays Foundation Pledge form for SCC Kyle until August 5, 2008, whereby he only pledged $1,000,000.00 (the "Charitable Pledge") to be paid by the end of 2008 to The Seton Hays Foundation (the "Foundation"). [Whitney Ex. 4]. The Foundation is a Texas non-profit corporation, charter no. 800984513, formed on May 28, 2008. [Whitney Ex. 5]. The pledge form at issue on its face states:

> *"I/We understand that The Seton Hays Foundation will use my gift to help defray the cost to plan, construct, equip facilities and/or fund on-going programs at Seton. The Seton Hays Foundation affirms that no goods or services were provided to the donor in exchange for their contribution. Please consult your tax advisor as to the deductibility of your donation."*

In addition to the hospital in Kyle, Texas, one of the other healthcare facilities the Foundation raises funds for and supports is the Seton Edgar B. Davis Hospital in Luling, Texas which was built 50 years ago. [R.R. 8/29/2013 at 8:13-14:9; Whitney Ex. 9 at p. 81-82]. The pledge form does not earmark any portion of the pledged amount to be applied solely toward the construction of the Seton Medical Center Hays. Nor does it identify any action or reliance on the part of the Foundation or Seton that will occur based on the pledge.

On the pledge form, the Foundation was given permission to publicly recognize the contribution, and interlineated after that statement giving permission to publicly recognize the gift was the words "and reserve naming the grand entrance and lobby." [Whitney Ex. 4]. The space on the form for the name that was to appear on any related publicity was intentionally left blank. The Foundation witnesses testified that they understood the grand entrance and lobby naming opportunity was reserved for Deskins or his development company, SCC Development. [R.R. 8/29/2013 at 12:25-13:5; 52:11-13]. In fact, the only public recognition for the charitable gift was given to Deskins at a gala prior to the grand opening of the hospital. [R.R. 8/29/2013 at 14:25-15:5].

Neither the Foundation, nor Seton took any action in reliance on the Charitable Pledge other than to send thank you letters to Deskins. [R.R. 8/29/2013 at 16:15-21]. Seton had already committed to build the hospital almost a year prior to the Charitable Pledge. [R.R. 8/29/13 at 17:20-24]. The Foundation did not incur any debt and did not borrow any money in reliance upon the pledge. [R.R. 8/29/2013 at 21:23-22:1]. Instead, the Foundation viewed the pledge as a donation that was going to help it achieve its

$30 million dollar fundraising goal. [R.R. 8/29/2013 at 21:23-22:1; 22:5-8]. The Foundation's fundraising goal was set prior to the Charitable Pledge being made. [R.R. 8/29/2013 at 22:9-11]. Seton did not list the Charitable Pledge as a receivable on its Form 990 tax returns filed with the IRS for the years 2008-2010, covering the period July 1, 2008 to June 30, 2011. [R.R. 8/29/2013 at 18:4-19:21; Whitney Exs. 7, 8 and 9].

SCC Kyle paid $500,000 to the Foundation in connection with the Charitable Pledge on January 12, 2009. [R.R. 8/29/2013 at 51:2-9]. Even after SCC Kyle paid $500,000 toward the overall pledge to the Foundation, Seton did not put any name on the grand entrance or the lobby of the hospital. [R.R. 8/29/2013 at 14:11-15]. Seton is not going to allow any party to name the grand entrance and lobby until it receives a charitable gift of $1 million. [R.R. 8/29/2013 at 50:21-51:1]. Deskins claims SCC Kyle did not pay the Charitable Pledge in full because Whitney Bank cut off funding for the Project. [R.R. 8/29/2013 at 62:10-20]. Whitney Bank, however, continued to provide funding for the Project through June 2009, and had funded approximately $28 million dollars by the time the loan limitation amount was reached under section 2.9 of the Loan Agreement. [R.R. 8/29/2013 at 63:5-10].

The Seton hospital facility in Kyle Texas opened October 1, 2009. [R.R. 8/29/2013 at 50:6]. As of this date, no naming rights to any grand entrance and lobby of any other Seton facility has been awarded to SCC Kyle or any related entity. Nor has SCC Kyle received any publicity or recognition in connection with the $500,000 charitable gift paid in 2009, or the Charitable Pledge. [R.R. 8/29/2013 at 66:20-22].

SCC Kyle did not pay any additional amounts in connection with the Charitable Pledge after making the gift in 2009. SCC Kyle also did not list the Charitable Pledge as an outstanding liability on its certified balance sheet as of the end of December 31, 2010 that it provided to Whitney Bank in connection with the Modification Agreement. [R.R. 8/29/2013 at 41:15-43:20; 65:11-24].

On August 31, 2012, SCC Kyle filed its bankruptcy petition. [C.R. 1, Doc.# 7]. SCC Kyle listed a pledge to "Seton Hospital" as an unsecured contingent and unliquidated claim in its bankruptcy schedules. [C.R. 1, Doc.# 8 at 10]. SCC Kyle did not assume or reject the Charitable Pledge prior to the confirmation of its Second Amended Plan of Reorganization. [R.R. 8/29/13 at 73:15-74:16; D.E. 133 at 4].

Seton filed a proof of claim in the bankruptcy case for $500,000 based upon the Charitable Pledge on December 18, 2012. [Jt. Ex. 1]. Seton is a Texas non-profit corporation, charter no. 919001, formed on April 5, 1900, that is separate from the Foundation. [Whitney Exs. 5 and 6; Jt. Ex. 8]. Seton's mission is to provide healthcare throughout the community with particular concern for the poor. [R.R. 8/29/2013 at 33:18-24]. The Foundation did not assign the Charitable Pledge to Seton. [R.R. 8/29/2013 at 15:25-16:4]. Whitney Bank filed its Objection to Claim of Seton Family of Hospitals on April 23, 2013. [D.E. 106].

## 2. PROCEDURAL SUMMARY

On July 1, 2013, the bankruptcy court entered an *Order Confirming Debtor's Second Amended Plan of Reorganization Under Chapter 11, Title 1, United States Code* (the "Confirmation Order") confirming a "cram down" plan over the objection of

Whitney Bank in the Bankruptcy Case. SCC Kyle's eligibility to confirm a "cram down" plan hinges on the validity of the single vote cast by Seton in favor of the reorganization plan. Whitney Bank objected to Seton's vote at the confirmation hearing and filed a written objection to Seton's claim on April 23, 2013. Prior to addressing the merits of Whitney Bank's objections to Seton's claim, the bankruptcy court entered the Confirmation Order.

On July, 15, 2013, Whitney Bank appealed the Confirmation Order, among other grounds, on the basis that the bankruptcy court erred in counting the Seton vote before considering the merits of its objections to Seton's claim because if Seton does not occupy the position of either a creditor, an equity security holder or indenture trustee holding an allowed claim against SCC Kyle, then it did not hold a voting interest in the bankruptcy case and was not entitled to vote on a plan of reorganization. The Seton claim in the bankruptcy case is based solely upon a Charitable Pledge made by SCC Kyle to the Foundation.

On October 25, 2013, a week before oral argument on the appeal of the Confirmation Order, the bankruptcy court issued its Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals. Whitney Bank timely appealed the Claims Order on November 5, 2013. On April 20, 2014, the Court consolidated the appeal of the Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals with the appeal of the Confirmation Order.

## ARGUMENT AND BRIEF OF AUTHORITIES

### 1. SETON WAS NOT A CREDITOR OR HOLDER OF A CLAIM AGAINST SCC KYLE

Only a creditor, indenture trustee or equity security holder of the debtor may file a proof of claim in the bankruptcy case. See 11 U.S.C. §501(a). Seton is not an indenture trustee or equity security holder of the SCC Kyle. Therefore, unless Seton can establish that it is a creditor of SCC Kyle, its proof of claim must be denied. A creditor of the bankruptcy estate is an entity that has a claim against the debtor that arose at the time or before the petition date. 11 U.S.C. §101(10).

A claim under the Bankruptcy Code means –

> "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

See 11 U.S.C. §101(5). A claim is not allowed if such claim is unenforceable against the debtor under any agreement or applicable law. 11 U.S.C. § 502(a). The United States Supreme Court held that a "claim" under the Bankruptcy Code refers to a right of payment recognized under state law. *Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 1205, 167 L.Ed.2d 178 (2007). Therefore, the bankruptcy court must disallow a claim that is not enforceable against SCC Kyle under applicable Texas law. See *In re Maxcy*, 45 B.R. 268, 270 (Bankr. D.Mass 1985).

There is no dispute that the Charitable Pledge was made to the Foundation on August 5, 2008, and was made payable to the Foundation, not Seton. [Whitney Ex. 4]. Seton and the Foundation are separate and distinct non-profit corporations. [Whitney Exs. 5 and 6]. It is also uncontested that the Foundation did not assign the Charitable Pledge to Seton. [R.R. 8/29/2013 at 15:25-16:4]. Despite these facts, the bankruptcy court side-stepped the issue whether Seton was in fact a creditor and holder of a claim against the bankruptcy estate, and instead remarked that Seton could easily amend its proof of claim to substitute the real party-in-interest for a related party mistakenly listed as a creditor in the original proof of claim. [R.R. 10/25/2013 at 39:8-20].

The existence of an ability to cure a defect in parties does not relieve a party from meeting its burden of proof to establish it is a creditor or holder of a claim against the debtor entitled to file a proof of claim in the bankruptcy case. Further, as of this date neither Seton, nor the Foundation, have sought leave to file an amended proof of claim to substitute the Foundation as the creditor of the bankruptcy estate. For such reasons, the bankruptcy court erred when it denied Whitney Bank's objection to Seton's claim because Seton was not a creditor of SCC Kyle as of the bankruptcy filing date.

Additionally, the existence of an ability to cure the defect in parties does not resolve the pivotal issue before this Court, i.e. whether Seton's vote should have been counted in determining whether SCC Kyle was eligible for a "cram down" plan if it was not a creditor. None of the cases cited by the bankruptcy court that provide for liberal allowance of amendments to proofs of claim support a ruling that a vote cast by a party who was not a creditor of the bankruptcy estate can be counted for purposes of

determining whether a plan meets the requirements for confirmation under the Bankruptcy Code. To the contrary, when a party does not occupy the position of either a creditor, an equity security holder or an indenture trustee holding an allowed claim against the debtor, it does not hold a voting interest in the bankruptcy case and its vote should not be counted. *See In re Lincoln Avenue & Crawford's Home for the Aged, Inc.*, 164 B.R. 600 (Bankr. S.D. Ohio 1994).

Seton did not have a voting interest in the bankruptcy case and its vote on the debtor's confirmation plan should not have been counted for purposes of determining whether SCC Kyle was eligible for confirmation of a "cram down" plan. Whitney Bank submits that if the Court finds the bankruptcy court erred in ruling that Seton had an allowed claim against SCC Kyle, then Seton's vote on the reorganization plan should not have been counted, and the issues concerning (i) whether the confirmed plan was feasible, (ii) whether the treatment of Whitney Bank's claim was fair and equitable; (iii) whether Whitney Bank was provided the indubitable equivalent of its secured claim under the plan, and (iv) whether the meets the good faith requirements under §1129 become moot issues because SCC Kyle would not be eligible for a "cram down" plan as a matter of law.

### 2. CLAIMS BASED UPON CHARITABLE PLEDGES REQUIRE CONSIDERATION OR DETRIMENTAL RELIANCE ON THE PART OF THE DONEE TO BE ENFORCEABLE UNDER TEXAS LAW

Even if Seton was entitled to file a proof of claim in the bankruptcy estate, its claim based entirely upon the Charitable Pledge to the Foundation should not have been allowed. The Texas Supreme Court has adhered to the maxim that "a man must be just

before he is generous." *Walker v. Loring*, 89 Tex. 668, 673, 36 S.W. 246, 247 (Tex. 1896); *Zahira Spiritual Trust v. United States*, 910 F.2d 240, 249 (5th Cir. 1990)(refusing to recognize spiritual fulfillment as fair consideration for a transfer to charity because "[t]he relevant inquiry ... is whether the debtor received monetary, not spiritual, consideration."). While philanthropic actions are vital to the existence of charitable organizations, such obligations cannot be undertaken at the expense of a debtor's creditors. *In re 375 Park Ave. Associates, Inc.,* 182 B.R. 690, 697 (Bankr. S.D.N.Y. 1995).

It is the general rule that a promise not supported by a consideration is nudum pactum and unenforceable. A contract lacking consideration is unenforceable under Texas law. *Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex.App.-San Antonio 2011, pet. denied). Consideration is a bargained-for exchange of promises. *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 409 (Tex. 1997). Consideration consists of either a benefit to the promisor or a detriment to the promise. *N. Nat. Gas Co. v. Conoco, Inc.,* 986 S.W.2d 603, 607 (Tex. 1998). A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Fed. Sign*, 951 S.W.2d at 409.

The bankruptcy court found that a charitable subscription can be enforceable in Texas if supported by consideration. *See Hopkins v. Upshur*, 20 Tex. 89, 94 (Tex. 1857). In *Hopkins*, the Texas Supreme Court held:

> "The general principle is, that voluntary agreements and promises, however reasonable the expectation from them of gifts or disbursements, even to public uses, when made without consideration, are not to be enforced as contracts; but where it is a proposal upon a consideration afterwards performed, this may import sufficient consideration."

*Id.* at 94. Charitable pledges can also be enforceable based on the doctrine of promissory estoppel. *Thompson v. McAllen Federated Woman's Bldg. Corp.*, 273 S.W.2d 105, 108 (Tex.Civ.App.- San Antonio 1954, writ dismissed). The *Thompson* Court held:

> "when one makes a promise to contribute money for a specific objective and such promise is relied upon and the purpose of the pledge is carried out, the party making the promise may be held liable thereon. The theory supporting recovery is one of contract and not gift."

*Id.* at 109. However, under Texas law, the promisor may withdraw his promise before the purpose of the pledge is carried out, or the promisee changes its position in reliance on the pledge, because there is no mutuality and therefore no consideration for it. *See Ft. Worth & R. G. RY. Co. v. Lindsey,* 32 S.W. 714, 716 (Tex.Civ.App. 1885, writ ref'd). The Charitable Pledge at issue in this case lacked consideration and there was no detrimental reliance on the part of Seton or the Foundation on account of the pledge.

The bankruptcy court's interpretation of the holding in *Rouff v. Washington and Lee University*, 48 S.W.2d 483 (Tex.Civ.App. - Galveston 1932, writ refused) as support for the proposition that as a matter of public policy Texas law favors the enforceability of charitable pledges is erroneous. While the Galveston Court of Appeals in *Rouff* recognized that courts in other jurisdictions pre-1932 had held that agreements for public enterprises as a matter of public policy are construed, if they reasonably may be, to support recovery, public policy considerations was not the basis for the *Rouff* court's ruling. *See Rouff*, 48 S.W.2d at 488. The enforcement of the subscription to the university was based upon the doctrine of promissory estoppel in *Rouff*. *Id.* at 487.

In *Rouff*, the executor of the donor's estate did not want to pay a subscription to fund and endow the Robert E. Lee School of Civil & Highway Engineering after the death of the donor based on a claimed failure by the university to timely fulfill the conditions to the subscription even though the donor repeatedly asked for extensions to pay the subscription during his lifetime and the University expended substantial funds based upon the promise to honor the subscription. *Rouff*, 48 S.W.2d at 484-487. The *Rouff* court concluded:

> *"not only did the originally unilateral and nudum pactum character disappear while he yet lived on the University's assuming the liabilities and incurring the expenses it uncontrovertedly so did in furtherance of the founding of the 'school,' but his own continuous defaults in payment throughout the same period, with accompanying requests for extensions of time, solely on account of his individual financial situation - thereby materially contributing to appellee's delay - estopped him, as well as his estate after him, from claiming a revocation."*

*Rouff*, 48 S.W.2d at 487. Thus, *Rouff* is consistent with the law in Texas that a promisor may withdraw his promise before the purpose of the pledge is carried out, or the promisee changes its position in reliance on the pledge, because there is no mutuality and therefore no consideration for it, however, once a promise materially changes its position in reliance of the pledge, the promisor is estopped to withdraw its pledge. *See Ft. Worth & R. G. RY. Co. v. Lindsey,* 32 S.W. 714, 716 (Tex.Civ.App. 1885, writ ref'd).

The Texas Supreme Court has not adopted any principle favoring enforcement of charitable pledges based upon public policy considerations. *See Hopkins*, 20 Tex. at 94. As the Florida Supreme Court noted, "courts should act with restraint in respect to public policy arguments endeavoring to sustain a mere charitable subscription. To ascribe

consideration where there is none, or to adopt any other theory which affords charities a different legal rationale than other entities, is to approve a fiction." *Mount Sinai Hospital of Greater Miami v. Jordan*, 290 So.2d 484, 487 (Fla. 1974).

### A. CHARITABLE PLEDGE LACKED CONSIDERATION

Seton's claim based upon the pledge form is not an enforceable contract because it was not supported by valid consideration. The pledge form on its face states as follows:

> *"I/We understand that The Seton Hays Foundation will use my gift to help defray the cost to plan, construct, equip facilities and/or fund on-going programs at Seton. The Seton Hays Foundation affirms that no goods or services were provided to the donor in exchange for their contribution. Please consult your tax advisor as to the deductibility of your donation."*

The express terms of the pledge form state it is a "gift" for which no consideration was given in exchange. Similarly, SCC Kyle listed the contribution as a "gift" in its budget attached to the Loan Agreement. [Dx-1 at Ex. B]. Texas law defines a gift as the "transfer of property made voluntarily and gratuitously" without consideration. *Hilley v. Hilley*, 342 S.W.2d 565, 575-76 (Tex. 1961). Likewise, the United States Supreme Court held that a gift is "nothing more than the transfer of property without consideration." *Kehr v. Smith,* 20 Wall. 231, 87 U.S. 31, 34, 22 L.Ed. 313 (1873).

The bankruptcy court, however, citing a case applying New York law, erroneously found that SCC Kyle received consideration from the agreement "by granting and reserving of naming rights for the debtor to the grand entrance and lobby of the Seton Kyle Hospital." [R.R. 10/25/2013 at 25:11-13]. Aside from the fact the New York Court's opinion in *Allegheny College v. The National Chautauqua County Bank of*

*Jamestown,* 246 N.Y. 369, 159 N.E. 173 (1927) is not controlling in Texas, the reasoning of the *Allegheny College* decision has been rejected in the bankruptcy context.

The twin goals of bankruptcy are payment of claims and allowing a debtor to obtain a fresh start. *In re T-H New Orleans Ltd. Partnership*, 188 B.R. 799, 807 (E.D. La. 1995), *aff'd* 116 F.3d 790 (5th Cir 1997). Part and parcel to these goals, the bankruptcy court must determine which claims are allowable and which should be disallowed. *In re Ha Thi Nguyen-Gassaway*, 408 B.R. 869, 870 (Bankr. S.D. Tex. 2009). In rejecting the United States Holocaust Memorial Council's argument that the pledge agreement at issue in the bankruptcy case created a binding bilateral contract at its execution because in exchange for the pledge, the Council promised to create, maintain and support the Archives in the donor's honor, the bankruptcy court held "the Council's promise to create the Archives in honor of Jacobs [the donor] is akin to a 'promise for love and affection', and does not constitute consideration." See *In re 375 Park Ave. Associates, Inc.*, 182 B.R. at 694, *citing In re Burrell*, 159 B.R. 365, 370 (Bankr. M.D. Ga. 1993).

It is undisputed Seton did not name the grand entrance or lobby of any of its facilities after SCC Kyle or any related entity. Further, there was no written agreement or understanding that SCC Kyle would be the name used on the grand entrance and lobby. Michelle Gonzalez, the Foundation's development director, testified that the name reserved for the grand entrance and lobby was to be "SCC Development Inc.", not SCC Kyle, but if the pledge is not paid in full, any other party that donates $1 million dollar will get the naming rights. [R.R. 8/29/2013 at 52:11-13, 53:11-54:3]. Gerald Hill, the Foundation's Executive Director, believed the grand entrance and lobby was to be named

after Deskins or SCC Development sometime in the future. [R. R. 8/29/2013 at 12:25-13:2, 14:11-24]. Naming the grand entrance and lobby after Deskins or one of his other companies like SCC Development, Inc. would not benefit SCC Kyle or the creditors of its bankruptcy estate in any way. To this date, SCC Kyle has received no publicity or other benefit as a result of the Charitable Pledge. [R.R. 8/29/13 at 14:11-14; 53:11-15; 66:20-22].

The bankruptcy court's comment that the mere agreement by SCC Kyle "to permit Seton to publicly acknowledge the debtor's subscription pledge . . . likely constitutes sufficient consideration in itself" is without any support. [R.R. 10/25/2013 at p 26]. In the *Bashas'* case, the Arizona district court found there was no consideration in return for the pledge and thus it was not enforceable. *In re Bashas' Inc.*, 468 B.R. 381, 383-384 (D. Ariz. 2012). The bankruptcy court misinterpreted the district court's statement that if there was a promise in exchange for promise to donate money there might have been consideration to argue a contract existed between the parties. *Id.* at 383, *citing Employers Reinsurance Corp. v. GMAC Ins.*, 308 F.Supp.2d 1010, 1017 & n.4 (D. Ariz. 2004). The *Bashas'* court did not hold that any such promise would be sufficient to make the charitable pledge enforceable, and in fact found no contract existed. *Id.* at 383. Further, neither Seton, nor the Foundation promised to give any public recognition to SCC Kyle under the Charitable Pledge, and in fact they did not.

Finally, the Charitable Pledge was not for a specific enterprise - it was to the Foundation generally and could be used "to help defray the cost to plan, equip facilities and/or fund ongoing programs at Seton." The pledge form made no specific reference as

to the purpose of gift or to indicate that it was to construct a hospital in Kyle, Texas. Deskins testified he understood SCC Kyle did not have an obligation to pay the Charitable Pledge because it was a charitable donation. [R.R. 4/4/2013 at 99:15-17].

Indeed, the "*sine qua non* of a charitable contribution is a transfer of money or property without adequate consideration." *United States v. American Bar Endowment,* 477 U.S. 105, 118, 106 S.Ct. 2426, 2433, 91 L.Ed.2d 89 (1986). Even assuming some value was received by SCC Kyle, it was not in exchange for the charitable contribution. *Quid pro quo* is inconsistent with charitable contribution. *See Hernandez v. Commissioner*, 490 U.S. 680, 691, 109 S.Ct. 2136, 2144-45, 104 L.Ed.2d 766 (1989). For all these reasons, Seton's claim based on the Charitable Pledge should be disallowed because it is unenforceable under Texas law for lack of consideration.

**B.      NO SUBSTANTIAL CHANGE IN POSITION OF SETON OR THE FOUNDATION OCCURRED IN RELIANCE OF CHARITABLE PLEDGE**

Neither can the Seton find any solace in the doctrine of promissory estoppel under Texas law. As stated by the Texas Supreme Court:

> The binding thread which runs through the cases applying promissory estoppel is the existence of promises designedly made to influence the conduct of the promisee, tacitly encouraging the conduct, which conduct, although not necessarily constituting any actual performance of the contract itself, is something that must be done by the promisee before he could begin to perform, and was a fact known to the promisor.
>
> * * *
>
> This does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them.

*Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). The record is devoid of any evidence that Seton or the Foundation was induced in reliance upon the Charitable Pledge to take

any substantial action or to forego any material right, so that an injustice could only be avoided by applying the equitable doctrine. Seton did not forego any additional charitable contributions due to the allowance of Deskins or SCC Kyle to "reserve naming the grand entrance and lobby." Seton has not received an offer from anyone to donate $1 million conditioned upon the right to name the grand entrance and lobby that it had to forego because of the Charitable Pledge. [R.R. 8/29/2013 at 36:6-8]. In fact, Seton intends to award the naming rights to the grand entrance and lobby to the first party to donate $1 million to the Foundation notwithstanding the Charitable Pledge. [R.R. 8/29/2013 at 53:24-54:3].

Neither Seton, nor the Foundation, changed their position in reliance on the Charitable Pledge, such as make an additional expenditure of money or incur additional indebtedness based thereon. By the time the Charitable Pledge was made, Seton had already contractually agreed to build the hospital in the City of Kyle and obtained the financing for the Project. [R.R. 8/29/2013 at 17:12-24]. Thus it cannot be credibly argued that the Charitable Pledge made almost a year after Seton became contractually bound to build the hospital in Kyle, Texas, induced Seton to build the hospital, or that Seton materially changed its position in reliance on the pledge.

Gerald Hill admitted that the Foundation did not incur any debt and did not borrow any money in reliance upon the Charitable Pledge. [R.R. 8/29/2013 at 21:23-22:1]. Instead, the Foundation viewed Charitable Pledge as a donation that was going to help it achieve its $30 million dollar fundraising goal that was set prior to the pledge being made. [R.R. 8/29/2013 at 22:5-11]. The Foundation took no action in reliance of the

pledge other than to send a thank you letter to Deskins. [R.R. 8/29/2013 at 16:15-21]. Hill also admitted he was not familiar with the financing arrangements relating to the construction of the Seton Medical Center Hays facility. [R.R. 8/29/2013 at 37:23-25].

Not surprisingly, given the Charitable Pledge is not an enforceable obligation, SCC Kyle did not list any obligation owed to Seton or the Foundation in the Certificate of Financial Statement provided to Whitney Bank that certified its financial condition as of May 31, 2011, and Deskins stands by that certification to this date. [R.R. 8/29/2013 at 65:14-24; 68:9-17; Whitney Ex. 1]. Similarly, Seton did not list the pledge as a pledge receivable on its Form 990 tax returns for the years 2008-2010, covering the period July 1, 2008 to June 30, 2011. [R.R. 8/29/2013 at 18:4-19:21]. The Charitable Pledge was to have been paid by the end of 2008, yet neither the Foundation, nor Seton, took any actions to collect the pledged amount or otherwise enforce the pledge.

To the extent Seton or the Foundation ever included the Charitable Pledge in an annual budget, "a hope or expectation, even though well founded, is not the equivalent to either legal detriment or reliance." See *Congregation Kadimah Toras-mosche v. DeLeo*, 540 N.E.2d 691, 693 (Mass. 1989). Because neither the Foundation nor Seton changed its position in reliance on the Charitable Pledge, or otherwise suffered any material detriment or substantial liability in reliance on the Charitable Pledge, the bankruptcy court erred in finding that Seton's claim founded on the pledge became enforceable based upon promissory estoppel. Accordingly, the bankruptcy court erred in overruling Whitney Bank's objection to Seton's claim and in allowing Seton's claim under 11 U.S.C. § 502.

### 3. To the extent the Charitable Pledge was an enforceable Contract, SCC Kyle's Rejection of the contract constitutes a Permissible withdrawal of the Pledge with respect to any unfulfilled amounts

The legislative history of section 365 states that "[t]hough there is no precise definition of what contracts are executory, it generally includes a contract on which performance remains due to some extent on both sides." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 347 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6303; *accord NLRB Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984). Deskins admitted both SCC Kyle and the Foundation had outstanding obligations that had not been performed under the Charitable Pledge. [R.R. 8/29/2013 at 73:3-14]. Namely, if the additional $500,000 pledged amount was paid, the Foundation had an obligation to name the grand entrance and lobby as directed by Deskins.

To the extent the pledge was an enforceable agreement, the bankruptcy judge erroneous held that the Charitable Pledge was not an executory contract based on the incorrect finding that only the payment from SCC Kyle was outstanding. [R.R. 10/25/2013 at 33:14-16]. While it is true that where all elements of performance have been accomplished, leaving only an obligation for the payment of money, the contract is not executory within the meaning of 11 U.S.C. §365, that situation was not present in this case. *See In the Matter of Smith Jones, Inc.*, 26 B.R. 289, 292 (Bankr. D. Minn. 1982). The payment of money by the SCC Kyle was not all that remained to complete all the obligations under the Charitable Pledge. Thus, the Charitable Pledge was an executory contract. *See In re 375 Park Ave. Associates, Inc.*, 182 B.R. at 697-98.

Under the Charitable Pledge, SCC Kyle's pledge to donate $1 million to the Foundation remained substantially unperformed as SCC Kyle had not paid $500,000 of the $1 million pledge. SCC Kyle also had not designated the name to be recognized in connection with the charitable donation as of the date the plan was confirmed. Similarly, the Foundation had not named the grand entrance and lobby as of the confirmation date because it had not received $1 million. No plaque displaying the name of SCC Kyle, Deskins, SCC Development or any other individual or business entity chosen by Deskins has been created and placed in the grand entrance and lobby of any Seton facility. Contrary to the bankruptcy court's ruling, the Charitable Pledge was not similar to an insurance agreement in *Placid Oil*, where the insurance coverage which was the object of the contract had been completely obtained by the debtor and the debtor only was required to pay the outstanding premium. *In re Placid Oil*, 72 B.R. 135, 138 (Bankr. N.D. Tex. 1987).

Indeed, the Fourth Circuit in *Lubrizol Enterprises v. Richmond Metal Finishers, Inc*., 756 F.2d 1043 (4th Cir. 1985), adopting the "Countryman" definition, found that a contract is executory if "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach." *Id.* at 1045; *accord Matter of Murexco Petroleum, Inc.,* 15 F.3d 60, 62-63 (5th Cir. 1994). It cannot be reasonably contested that if SCC Kyle or Deskins did not pay the additional $500,000 and provide the Foundation with the name to be placed on the plaque, the Foundation would be excused from performance under the Charitable Pledge. Similarly, without question, if the Foundation did not name the grand

entrance and lobby as directed after receipt of an additional $500,000 from SCC Kyle, then it would be in material breach of the Charitable Pledge.

Despite its executory nature, the Charitable Pledge was neither previously assumed by the SCC Kyle, nor among those assumed under the confirmed plan or reorganization. Section 1123(b)(2) authorizes a plan to provide for an assumption, rejection, or assignment of an executory contract, but requires that the plan do so in a manner consistent with the various requirements set forth throughout § 365. SCC Kyle did not do so under its confirmed plan. [Px. 2]. Accordingly, the Charitable Pledge was rejected by SCC Kyle on the effective date of the Plan. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 128 S.Ct. 2326, 2335, 171 L.Ed.2d 203 (2008)(decision whether to accept or to reject a contract *must* be made before confirmation).

The fact the Charitable Pledge was rejected in the bankruptcy case is significant because a promisor may withdraw its charitable pledge any time before the promisee changes its position in reliance thereof under Texas law. *See Ft. Worth & R. G. RY. Co.*, 32 S.W. at 716. The record shows neither Seton nor the Foundation changed their position in reliance upon the Charitable Pledge. SCC Kyle's rejection of the Charitable Pledge by failing to assume it prior to confirmation of its plan constitutes a withdrawal of its pledge to the extent any amounts remained unfulfilled. Thus, the Seton claim should not have been allowed on this basis as well. For such reasons, the bankruptcy court erred in overruling Whitney Bank's Objection to Claim of Seton Family Hospitals and in allowing the claim against SCC Kyle.

**PRAYER**

WHEREFORE, Whitney Bank respectfully requests that this Court reverse the determinations and rulings of the bankruptcy court's Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals and render judgment denying the claim of Seton Family of Hospitals based upon the charitable pledge made to Seton Hays Foundation, and that it have and recover any and all other general relief to which they may be entitled.

DATED: March 21, 2014

Respectfully submitted,

**WINSTEAD PC**
401 Congress Ave., Suite 2100
Austin, Texas 78701
(512) 370-2800 – telephone
(512) 370-2850 – facsimile

By: /s/ James G. Ruiz
James G. Ruiz
State Bar No. 17385860

**ATTORNEYS FOR APPELLANT WHITNEY BANK**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 21, 2014, a true and correct copy of this document was served electronically on all registered ECF users in this case, and by Certified Mail, Return Receipt Requested on all persons identified below.

Eric J. Taube
Mark Taylor
Hohmann Taube & Summers, LLP
100 Congress Ave., Suite 1800
Austin, TX 78701

Ida A. Murguia
Seton Family of Hospitals
1345 Philomena Street, Suite 410.2
Austin, Texas 78723

/s/ James G. Ruiz
James G. Ruiz

**IN THE**
**UNITED STATES DISTRICT COURT**

FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

---

**Civil Action No. 1:13-cv-1064-LY**

---

IN RE:
SCC KYLE PARTNERS, LTD.

WHITNEY BANK
Appellant,

v.

SCC KYLE PARTNERS, LTD.,
AND SETON FAMILY HOSPITALS
D//B/A SETON MEDICAL CENTER HAYS
Appellees.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

---

**SUPPLEMENTAL APPENDIX TO BRIEF OF APPELLANT**

---

| | |
|---|---|
| **Appendix Tab 5** | **Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals entered on October 25, 2013.** |
| **Appendix Tab 6** | **Seton Hays Foundation Pledge signed on August 5, 2008** |
| **Appendix Tab. 7** | **Ascension Health Organizational Chart [Jt. Ex. 8]** |

# Appendix Tab 5

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 25, 2013.**

H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 12-11978-HCM |
| SCC KYLE PARTNERS, LTD., | § | |
| | § | |
| Debtor. | § | (Chapter 11) |

**ORDER DENYING WHITNEY BANK'S**
**OBJECTION TO CLAIM OF SETON FAMILY OF HOSPITALS**

On August 29, 2013, the Court conducted a hearing on the Objection to Claim of Seton Family of Hospitals (dkt# 106) ("Objection") filed by Whitney Bank. The Objection was filed to the Proof of Claim, as amended, of Seton Family of Hospitals d/b/a Seton Medical Center Hays in the amount of $500,000 (claims dkt# 4-1, 4-2) ("Seton Proof of Claim") against SCC Kyle Partners, Ltd. ("Debtor"). At the conclusion of the hearing, the Court took its ruling with respect to the Objection under advisement.

For the reasons set forth in the Court's oral ruling on the record in open court on October 25, 2013, under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy

Procedure, the Court finds that the Objection should be denied, the Seton Proof of Claim should be allowed in the amount of $500,000 as of the date of the filing of the Debtor's bankruptcy petition under 11 U.S.C. §502(b) as an unsecured claim against the Debtor, and the following Order should be entered.

**THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. The Objection to Claim of Seton Family of Hospitals (dkt# 106) filed by Whitney Bank is denied; and

2. The Seton Proof of Claim is allowed as an unsecured claim in the amount of $500,000 against the Debtor.

###

# Appendix Tab 6

Seton Medical Center
Hays
A member of the Seton Family of Hospitals

## Seton Hays Foundation Pledge

Prepared for:

SCC Kyle Partners, Ltd.
Name

301 Congress Avenue Suite 1550 Austin Texas 78735
Address City State Zip

SDeskin@sccdevelopment.net 512-329-9997
Email Phone (day) (evening)

It is my/our pleasure to pledge $ 1,000,000.00 to the Seton Hays Foundation.

Payment will be made by: ☑ Check ☐ Credit Card ☐ Gift of Stock

a. My check in the amount of $ 1,000,000.00 ~~is enclosed.~~ will be paid by year end 2008.
Checks made payable to The Seton Hays Foundation.

b. Charge my credit card: $ ________

☐American Express ☐MasterCard ☐Visa ☐Discover

Credit card number ________________ Exp. Date ________

c. Gift of Stock/Mutual Fund shares (The Seton Hays Foundation will send you transfer instructions.)
Estimated date of stock transfer: ________________
Stock name and estimated shares: ________________

The balance, if any, will be payable over ______ years.

Please send my first reminder on 11/15/08 for $ 1,000,000.00 and thereafter as follows:

Monthly $ ______ Quarterly $ ______ Semiannually $ ______ Annually $ ______

[signature] 8/5/08
Signature Date

~~I/We~~ ~~give~~ ~~do not~~ give permission for public recognition of my contribution. We do give HWA SO ~~BD~~ AND RESERVE NAMING THE GRAND ENTRANCE AND LOBBY. HWA SO

Please Print Name(s) as You Would Like it to Appear in Related Publicity.

For more information please contact:
Gerald Hill, Executive Director
gwhill@seton.org
512-324-8232

*I/We understand that The Seton Hays Foundation will use my gift to help defray the cost to plan, construct, equip facilities and/or fund ongoing programs at Seton. The Seton Hays Foundation affirms that no goods or services were provided to the donor in exchange for their contribution. Please consult your tax advisor as to the deductibility of your donation.*

Administration Offices: 147 Elmhurst Drive, Suite 600 • Kyle, Texas 78640 • (512) 324-5000 • www.seton.net/hays

Our mission inspires us to care for and improve the health of those we serve with a special concern for the sick and the poor.
We are called to Service of the Poor, Reverence, Integrity, Wisdom, Creativity and Dedication.

EXHIBIT
tabbies
4

# Appendix Tab 7

06/01/2013

- **Ascension Health** — Tax ID # 31-1662309
  - **Seton Healthcare Family** — Tax ID #45-4364243
    - Seton Family of Hospitals (f/k/a Seton Healthcare") — Tax ID # 74-1109643
      - Adult Inpatient Medical Services — Tax ID # 45-2498998
      - Seton/UT Southwestern University Physicians Group (f/k/a CTMF, Inc.) — Tax ID # 74-2869762
      - Tri-County Practice Association — Tax ID # 26-4562522
      - Hospital Laundry Cooperative Association (34.1%) — Tax ID # 74-2613749
      - The Topfer Building Condominium Association (66.29%) — Tax ID # 74-3007869
    - Seton Clinical Enterprise Corporation — Tax ID #45-4364681
      - 'Specialty for Children Children's Hospital Subspecialists of Central Texas — Tax ID # 74-2800601
      - Seton Medical Group — Tax ID # 74-2861106
      - Pediatric Surgical Subspecialists — Tax ID # 20-8957311
      - Seton ENT — Tax ID # 27-3220659
      - Institute of Reconstructive Plastic Surgery of Central Texas — Tax ID # 26-2908163
      - Seton Family of Pediatric Surgeons — Tax ID # 27-1311790
      - Healthcare Collaborative — Tax ID # 27-3220767
      - Philomena Health — Tax ID #
      - Children's Bone Joint and Spine Center — Tax ID # 45-2499113
      - Pediatric Critical Care Associates — Tax ID #42-1670843
      - Austin Children's Chest Associates, II — Tax ID # 26-0163261
      - Advantage Healthco, Inc. — *Inactive* — Tax ID # 74-2698151
      - Tri-County Clinical — Tax ID # 26-4562712
      - Primara Health — Tax ID # 45-3047469
      - Seton Family of Pediatricians — Tax ID # 27-1311909
      - Seton Physician Group — Tax ID #
    - Seton Insurance Services Corporation — Tax ID #45-4364813
      - Seton Health Plan, Inc — Fed ID # 74- 722725348
      - Seton Physician Hospital Network — Fed ID # 74-2643825
        - Seton Health Alliance, Inc. (f/k/a Advantage Management Services Organization, Inc.) — Fed ID # 74-2677756
    - CMC Foundation of Central Texas — Tax ID #20-0468031
    - Seton Hays Foundation — Tax ID # 26-2842608
    - Seton Williamson Foundation — Tax ID # 20-5330986
    - Seton Fund of the Daughters Of Charity of St.Vincent de Paul, Inc. — Tax ID # 74-2212968
      - Blue Ladies Minerals, Inc. — Tax ID # 74-2971975
      - Twenty-Six Doors, Inc. — Tax ID # 74-2855201
        - Fickett Health Legacy, Inc. — Tax ID # 27-2843709
    - Seton MSO, Inc. — *Inactive* — Tax ID # 74-2870455
    - The Seton Cove, Inc. — Tax ID # 74-2727509
    - Austin Cyberknife, LLC (20%) — Tax ID # 27-4577130
    - Strictly Pediatrics Surgery Center of Central Texas, LLP (28.77%) — Tax ID # 20-0943974
    - Central Texas Speciality Hospital, LLC (20%) — Tax ID # 26-1607409
    - Central Texas Rehabilitation Hospital, LLC (20%) — Tax ID # 41-2235372
    - Medical Park Tower Surgery Center, LLC (25%) — Tax ID # 27-0543475
    - Northwest Surgery Center, LLP (29.28%) — Tax ID # 20-5537270
    - HH/Killeen Health (20%) — Tax ID # 27-2814378
    - Cedar Park Health System, LP (20%) — Tax ID # 20-3904667
    - Cedar Park Surgery Center, LLP (25.51%) — Tax ID # 20-2829728
    - Covenant Management Partners, LLC (50%) — Tax ID # 74-2900102
    - Covenant Management Systems, LP (49.625%) — Tax ID # 74-2899856
    - The Surgery Center at Williamson, LLC (25%) — Tax ID # 27-0929515