IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCC KYLE PARTNERS, LTD., Debtor. | § | CAUSE NO. A-13-CV-756-LY |
| | § | |
| WHITNEY BANK, SUCCESSOR BY MERGER TO WHITNEY NATIONAL BANK, INDIVIDUALLY AND AS AGENT FOR CERTAIN PRE-PETITION LENDERS, Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| SCC KYLE PARTNERS, LTD. and SETON FAMILY OF HOSPITALS dba SETON MEDICAL CENTER HAYS, Appellee | § | |

---

**JOINT BRIEF OF APPELLEES**

---

**HOHMANN, TAUBE & SUMMERS, L.L.P.**
Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (Facsimile)

**ATTORNEYS FOR**
**SCC KYLE PARTNERS, LTD.**

**SETON FAMILY OF HOSPITALS**
Ida A. Murguia
State Bar No. 00796648
1345 Philomena St., Suite 410.2
Austin, Texas 78723
(512) 324-5917
(512) 380-7516 (Facsimile)

**ATTORNEY FOR**
**SETON FAMILY OF HOSPITALS**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ........ ii

I. STATEMENT OF JURISDICTION ........ 1

II. STATEMENT OF ISSUES AND STANDARD OF REVIEW ........ 1

III. STATEMENT OF THE CASE ........ 2

IV. SUMMARY OF ARGUMENT ........ 2

V. ARGUMENT ........ 2

A. Seton Was a Creditor With An Allowed Claim Against SCC ........ 2

B. Seton Had An Allowed Claim, and Its Vote Was Properly Counted For Plan Confirmation ........ 7

C. The Pledge Agreement Was Not a Rejected Executory Contract ........ 10

CERTIFICATE OF SERVICE ........ 12

# INDEX OF AUTHORITIES

## Cases

*Allegheny Coll. v. Nat'l Chautauqua Cmty. Bank of Jamestown*,
159 N.E. 173 (N.Y. 1927)........ 3, 4

*Carrieri v. Jobs.com, Inc.*,
393 F.3d 508, 529 (5th Cir. 2004) ........ 3

*Congregation Kadimah Toras-mosche v. DeLeo*,
540 N.E.2d 691 (Mass. 1989)........ 6

*Hopkins v. Upshur*,
*20 Tex. 89 (Tex. 1857)* ........ 5

*In re 375 Park Ave. Assoc., Inc.*,
182 B.R. 690 (Bankr. S.D.N.Y. 1995)........ 4

*In re Bashas, Inc.*,
468 B.R. 381 (D. Ariz. 2012) ........ 5

*In re First South Savings Ass'n*,
820 F.2d 700 (5th Cir. 1987)........ 1

*In re Fullmer*,
962 F.2d 1463 (10th Cir. 1992) ........ 7

*In re Gulfstar Indus., Inc.*,
236 B.R. 75 (M.D. Fla. 1999)........ 9

*In re Morton Shoe Co.*,
40 B.R. 948 (Bankr. D. Mass. 1984) ........ 3

*In re Townco Realty, Inc.*,
81 B.R. 707 (Bankr. S.D. Fla. 1987) ........ 9

*Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*
*(In re Richmond Metal Finishers, Inc.),*
756 F.2d 1043 (4th Cir. 1985) ........ 10

*Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Co-op., Inc.),*
150 F.3d 503 (5th Cir. 1998)........ 1

*Ocean Marine Svcs., Inc. v. Digicon, Inc. (In re Digicon, Inc.),*
2002 WL 33962759 (S.D. Tex. Dec. 13, 2002), *aff'd* 71 Fed. Appx. 442 (5th Cir. 2003) ....... 10

*Roark v. Stallworth Oil & Gas, Inc.,*
813 S.W.2d 492 (Tex. 1991)........................................................................................ 3

*Rouff v. Washington & Lee Univ.,*
48S.W.2d 483 (Tex. Civ. App, -- Galveston 1932, writ ref'd)................................................ 4

*Starnes v. U.S. (In re Starnes),*
231 B.R. 903 (N.D. Tex. 1998) ........................................................................................ 8

*Thompson v. McAllen Federated Woman's Bldg. Corp.,*
273 S.W.2d 105 (Tex. App.—San Antonio 1954, writ dism'd)........................................... 5, 8

*Zahira Spiritual Trust v. U.S.,*
910 F.2d 240 (5th Cir. 1990) ........................................................................................ 5

**Statutes**

11 U.S.C. § 101........................................................................................................ 3
11 U.S.C. § 105........................................................................................................ 5
11 U.S.C. §1111........................................................................................................ 8
11 U.S.C. §1126........................................................................................................ 9
11 U.S.C. §1129........................................................................................................ 9
11 U.S.C. §365........................................................................................................ 10
11 U.S.C. §502........................................................................................................ 8
28 U.S.C. §158........................................................................................................ 1

**Rules**

Fed. R. Bankr. P. 3001............................................................................................... 7
Fed. R. Bankr. P. 3002............................................................................................... 10
Fed. R. Bankr. P. 3003............................................................................................... 8
Fed. R. Bankr. P. 3018............................................................................................... 9

## JOINT BRIEF OF APPELLEES

SCC Kyle Partners, Ltd. ("SCC") and Seton Family of Hospitals d/b/a Seton Medical Center Hays ("Seton"), Appellees, file this Joint Brief of Appellees as follows:

## I. STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1). This is an appeal from a final Order Denying Whitney Bank's Objection to Claim of Seton Family of Hospitals (the "Claim Order") entered by the United States Bankruptcy Court for the Western District of Texas, Austin Division, in Case No. 12-11978-hcm-11, on October 25, 2013.

## II. STATEMENT OF ISSUES AND STANDARD OF REVIEW

Appellees do not raise any cross-issues in this appeal, and generally agrees with the legal standards for review of the case referenced in the Brief of Appellant. [C.R.][1]. Issue Nos. 4-7 as fact issues to be reviewed under a "clearly erroneous" standard. I The Issues presented by Appellant on page viii of its Brief are, fundamentally, factual issues governed by Texas law. The Bankruptcy Court is entitled to great discretion in connection with its findings of fact. *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Co-op., Inc.),* 150 F.3d 503, 513 (5th Cir. 1998) (Circuit court applies deferential standard to bankruptcy court's fact findings, and will find clear error only if the court is "left with the definite and firm conviction that a mistake has been made."). A court's factual findings will only be reversed if they are "clearly erroneous," which occurs only in the limited circumstance where the finding the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re First South Savings Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987).

[1] Appellee will utilize the same references specified by Appellant on p. xiv of the Brief of Appellee.

## III. STATEMENT OF THE CASE

The factual and procedural background of this appeal were discussed extensively in the Brief of Appellee filed in this appeal on October 4, 2013. With respect to the issues raised in this portion of the appeal, Seton timely filed a proof of claim for $500,000 on December 18, 2012 (Ex. 1 to Joint Exhibits of SCC and Seton). Neither the Debtor nor any other party filed any objection to Seton's Claim until Whitney Bank filed is Objection on April 23, 2013 – a week after the Bankruptcy Court held a hearing on the confirmation of SCC's proposed Plan of Reorganization, and after evidence had closed. Following an evidentiary hearing on the Claim Objection held on August 29, 2013, the Bankruptcy Court announced its Findings of Fact and Conclusions of Law on October 25, 2013, and entered the Claim Order on the same day.

## IV. SUMMARY OF ARGUMENT

Seton had filed a proof of claim, and no objection was filed until after the confirmation hearing. Accordingly, Seton had a claim that it could vote for or against SCC's plan of reorganization; even if the claim is now disallowed, it will have no effect on the confirmation of SCC's plan. Moreover, even if it could make a difference, Seton had a valid claim based upon the well-established case law that recognizes the enforceability of a charitable subscription either under traditional contract principles or promissory estoppel. Finally, the pledge agreement was not an executory contract that was rejected and, even if Appellant is correct on this issue, it would not alter the outcome.

## V. ARGUMENT

### A. Seton Was a Creditor With An Allowed Claim Against SCC

For the purposes of plan confirmation, for the reasons set forth above, it is irrelevant whether Seton's claim is ultimately allowed or disallowed. Appellee contends, however, that

Seton's claim is valid and enforceable. On August 5, 2008, Debtor made a prepetition pledge (the "Pledge") of $1 million to Seton towards the construction of a new medical center in Kyle, Texas. *See* Seton's Claim No. 4 and C.R. 121; [R.R. 26-27 (Aug. 29) and Px 1 and 2 thereto]. Appellant paid one half of the Pledge, or $500,000, before filing its voluntary petition. Appellant did not object to the Ballot Summary, and did not file a motion to designate Seton's ballot.

The Code defines a "claim" as a "right to payment." 11 U.S.C. § 101(5)(A). Bankruptcy courts determine the substance and validity of a claim by referring to applicable state law. *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 529 (5th Cir. 2004). Contrary to Appellant's assertion in its Objection, the Pledge is enforceable under Texas law because it is supported by consideration and because Seton relied on the Pledge to its detriment. *See In re Morton Shoe Co.*, 40 B.R. 948, 949-51 (Bankr. D. Mass. 1984) (allowing charity's claim upon finding a pledge enforceable under theories of both consideration and reliance). Contrary to Appellant's assertions, Mr. Deskins testified that Appellee is obligated to pay the balance [R.R. (Aug. 29) 73].

*1. The Pledge is supported by valid consideration.*

Contrary to Appellant's assertions in the Objection, the Pledge is supported by valid consideration. Consideration is "a present exchange bargained for in return for a promise" and "consists of either a benefit to the promisor or a detriment to the promisee." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). Naming rights granted in exchange for a charitable pledge—also known as a subscription—constitute consideration that will render the pledge enforceable in contract. *Allegheny Coll. v. Nat'l Chautauqua Cmty. Bank of Jamestown*, 159 N.E. 173, 175-76 (N.Y. 1927). As Justice (then Chief Judge) Cardozo held in the seminal

case of *Allegheny College*, "the duty assumed by the plaintiff to perpetuate the name of the founder of the memorial is sufficient in itself to give validity to the subscription within the rules that define consideration for a promise of that order…. [T]he result [i]s the creation of a bilateral agreement." *Id*. at 176.[2]

Like the plaintiff in *Allegheny College*, Seton obligated itself to reserve naming rights for Debtor. Appellant points to the boilerplate disclaimer in the Pledge in which Seton "affirms that no goods or services were provided to donor in exchange for their contribution," but the actual terms of the Pledge provide otherwise. Through a hand-written interlineation, Debtor and Seton agreed that Debtor would have the exclusive right to "nam[e] the grand entrance and lobby" in exchange for the Pledge. *Id*. [R.R. (Aug. 29) 26-27, 50-51, 58-61]. These naming rights constituted both a benefit to Debtor and a detriment or legal obligation to Seton. *See Allegheny Coll*., 159 N.E. at 176; *see also Rouff v. Washington & Lee Univ*., 48S.W.2d 483, 488 (Tex. Civ. App, -- Galveston 1932, writ ref'd) (upholding enforcement of charitable subscription and noting that charitable subscriptions are to be favored and doubts resolved in favor of enforcement). Additionally, as noted by the Bankruptcy Court, the pledge helped SCC secure the development partnership (and the Economic Incentive Agreements with the City and County) and provided public acknowledgment to SCC, each of which provided consideration to SCC. *See* October 25, 2013 transcript, p. 26-27; *and* R.R. (Aug. 29) 57-59, 75.[3] Once SCC fulfills its payment obligation, the lobby will be named. R.R. (Aug. 29) at pp. 52-53. Seton has incurred a detriment by reserving the naming right, and waiting on the additional $500,000. *Id*., and 26-27, 50-51.

The cases relied upon by Appellant do not alter this conclusion. *In re 375 Park Ave. Assoc., Inc*., 182 B.R. 690 (Bankr. S.D.N.Y. 1995) held that a naming right for a library at the

[2] Appellant contends that the Bankruptcy Court erred in relying on "New York law." *Allegheny* is, in fact, a seminal opinion in this area that is cited and relied upon in numerous jurisdictions.
[3] SCC made the pledge solely for business purposes. R.R. (Aug. 29), pp. 56-57.

Holocaust Museum was unenforceable and gratuitous the building had already authorized and required by an act of Congress. *Zahira Spiritual Trust v. U.S.*, 910 F.2d 240 (5th Cir. 1990), merely examined whether property was conveyed as part of a fraudulent transfer to avoid a tax lien. The district court in *In re Bashas, Inc.*, 468 B.R. 381 (D. Ariz. 2012) simply affirmed the bankruptcy court's finding that there was no consideration for a pledge; here, the Bankruptcy Court (as noted above) found there was consideration.

Because the Pledge is an enforceable agreement supported by consideration, Seton has a right to payment under Texas law and therefore an allowable claim under sections 101(5)(A) and 502 of the Code.

2. *The Pledge is also enforceable under a theory of promissory estoppel.*

Even if this Court were to determine that the naming rights in the Pledge did not constitute sufficient consideration, Texas law has long recognized that charitable pledges are enforceable when the donee has incurred expense or liability in reliance on the pledge. As the Texas Supreme Court held in *Hopkins v. Upshur*, "the subscription was a voluntary agreement to donate … [that] matured into an enforceable contract … by [the donor's] having permitted [the donee] to incur legal liabilities, and to encounter expense upon the faith of it." 20 Tex. 89, 95 (Tex. 1857). Or as one Texas intermediate court of appeals put it: "[W]hen one makes a promise to contribute money for a specified objective and such promise is relied upon and the purpose of the pledge is carried out, the party making the pledge may be held liable thereon." *Thompson v. McAllen Federated Woman's Bldg. Corp.*, 273 S.W.2d 105, 107-109 (Tex. App.—San Antonio 1954, writ dism'd).

Appellant contends that there was "no evidence" that Seton changed its position in reliance on the Pledge. Appellant's Brief, p. 18. The Bankruptcy Court analyzed the evidence at

pp. 12-13 and 19-20, and entered its conclusions of law analyzing the evidence at pp. 28-32 of its October 25 ruling. Seton incurred legal obligations and expense in reliance on Debtor's Pledge of $1 million. Seton reserved the naming rights to the Grand Entrance and Lobby of the new hospital for Debtor (thus making this prime "naming opportunity" unavailable to other potential donors). [R.R. (August 29) 26-27, 50, 51]. Second, Seton relied on availability of the Pledge when it took out a $30 million loan for construction and development of the new medical center from its parent company, Ascension Health [R.R. (Aug. 29) 28-30, 34-35, 54-55). Seton intended to use the $1 million Pledge towards repayment of the debt *Id.*[4], and "counted on" the Pledge. *Id*. at 54. Due to Debtor's failure to pay the second installment of the Pledge, Seton has incurred debt that it would not have otherwise incurred and interest has accrued as a result.

Appellant relies upon the *Congregation KadimahToras-mosche* case for the proposition that there was no reliance. *Congregation Kadimah Toras-mosche v. DeLeo*, 540 N.E.2d 691 (Mass. 1989). Congregation involved a $25,000 pledge for a library that was oral, not part of an organized pledge drive, not reflected in any budget, and for which there was no evidence of any reliance. None of those factors exist in this case, and the Bankruptcy Court specifically found there was reliance.

*3. The Correct Entity Filed the Claim*

Appellant also contends that Seton did not file the Claim in the name of the correct entity. The Bankruptcy Court addressed this issue extensively at pp. 15-18 and 34-42 of its October 25, 2013 ruling. Again, this issue was not raised before (or even at) the confirmation hearing. The testimony at the August 29 hearing made it clear that Seton Family of Hospitals is the sole corporate member of the Foundation, and the Foundation is the fund-raising arm for the hospital.

[4] Additionally, Appellant actually *approved* the donation, and provided the funding for the donation, as part of its loan to Appellee. [R.R. (Aug. 29) 57-58].

[R.R. (Aug. 29) 23-25, 69]. Moreover, the original certificate of formation for the Seton Foundation (Joint Ex. 4) recites that the Foundation was formed for the purpose for supporting the Seton Family of Hospitals. As the Bankruptcy Court noted, the pledge form was in the name of "Seton Medical Center Hays, a member of the Seton Family of Hospitals." The Bankruptcy Court also found, and Appellant does not address, that the underlying claim is valid regardless of the name that appears on the Claim. *See* transcript of Court's October 25, 2013 ruling, at pp. 35-36. The Bankruptcy Court's ultimate conclusion, based on all of the evidence was that "Seton Foundation specifically raised the money represented by the debtor's pledge for Seton Hospital and Seton Hospital is the name of the creditor of the Seton proof of claim." Transcript of Oct. 25, 2013 ruling, p. 38. Based upon the evidence presented, this is not clearly erroneous; Appellant simply disagrees with the Court's finding.

**B. Seton Had An Allowed Claim, and Its Vote Was Properly Counted for Plan Confirmation**

Even assuming Appellant is correct, disallowance of Seton's claim after confirmation does not change the outcome of the bankruptcy case. The Bankruptcy Court addressed this issue on pp. 37-39 of its June 14, 2013 Memorandum Opinion. Stated differently, this appeal is futile for Appellee's stated purpose of attempting to unwind the Bankruptcy Court's

*Seton had an Allowed Claim at the time it voted*

Appellant correctly notes that Seton's claim was listed as contingent and disputed in the Debtor's Schedules. Appellant admits, however, that Seton filed a proof of claim (Claim No. 4). The filing of a proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim." Bankr. R. 3001(f). Once filed, a claim is deemed allowed unless an objection is filed. *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992). Even in that circumstance, the objecting party must come forward with evidence sufficient to refute at least one of the elements of the

claim. *Id.*; *see also Starnes v. U.S. (In re Starnes)*, 231 B.R. 903, 912 (N.D. Tex. 1998). Bankruptcy Rule 3003(c) and 11 U.S.C. §1111(a) make it clear that a creditor need not even file a proof of claim in a Chapter 11 case unless the claim is scheduled as disputed, contingent or unliquidated. Once filed, a claim is allowed under 11 U.S.C. §502(a) unless an objection is filed.

As the Court noted when Appellant raised this argument for the first time during closing arguments at the confirmation hearing, Seton had a valid proof of claim (the "Proof of Claim") on file at the time of its voting and at the confirmation hearing. R.R. 109. No objections had been filed to the Proof of Claim. As such, Seton had an allowed claim under 11 U.S.C. §502. *See* June 14, 2013 Opinion p. 38. Appellant did not file its Objection until a week *after* the confirmation hearing was closed, notwithstanding the fact that the Debtor had filed its Ballot Summary and Ballots on March 4, 2013, a full month before the hearing [D.E. 79, Px 1], and presented the Ballot Summary and Ballots to the Court without objection by Appellant. [Px. 1, R.R. 7-8].

Appellant disingenuously contends that it "Objected to Seton's confirmation vote at the confirmation hearing." *See* Supplemental Brief of Appellant, p. 7. Appellant's "objection" occurred after the close of evidence and in closing argument. RR 109: l. 5 – 14 [April 16 hearing], In fact, the sum and substance of the "objection" as referenced by Appellant is a statement by counsel for Appellant "and the Seton debt, as Mr. Deskins testified, is not even a legally enforceable debt. It's a charitable donation. And for such reason, I don't think it qualifies as a legitimate claim, because it is a voluntary claim." Simply put, no objection was filed.

Finally, as discussed in Appellants October 4, 2013 Brief, by (1) failing to file an objection, (2) failing to object to Seton's ballot, and (3) failing to object to the admission of the

Ballots and Ballot Summary, Appellant has waived any right to complain or object to Seton's vote. The time for raining these arguments was before admission and counting of the votes, not a vague statement after closing of the evidence in closing argument.

*Because Seton had an Allowed Claim, it was entitled to vote*

11 U.S.C. §1126(a) provides that any holder of an allowed claim may vote on a plan of reorganization. *See* 11 U.S.C. §1126(a). Similarly, Bankruptcy Rule 3018(a), which governs acceptance or rejection of a Chapter 11 plan, provides that a plan may be accepted or rejected "in accordance with §1126 of the Code…" Accordingly, Seton was entitled to vote.

*Even if Seton's Claim is disallowed after confirmation, the voting result does not change*

Sections 1126 and 1129(a)(7), (8) and (10), along with Bankruptcy Rule 3018, all clearly contemplate that votes are tabulated and plan acceptance is determined at the time of the confirmation hearing based upon votes that are allowed as of that date; otherwise, neither the parties nor the Court could determine if the Debtor had obtained sufficient votes in each class. *In re Gulfstar Indus., Inc.*, 236 B.R. 75, 78-79 (M.D. Fla. 1999) (votes counted based upon valid ballots received by voting deadline); *In re Townco Realty, Inc.*, 81 B.R. 707, 709 (Bankr. S.D. Fla. 1987) (same). Under Appellant's theory, a claim that is disallowed at a claims-objection hearing months after confirmation would then require a re-tabulation of the votes cast and counted during the prescribed balloting and voting process. This is not only contrary to the clear language of the Code, there is no case law to support this argument. Accordingly, even should the Bankruptcy Court disallow Seton's claim at some point, its vote in favor of Plan confirmation will stand. *See* Opinion [June 14, 2013] pp. 38-39.[5] What Appellant is seeking, with no case authority or statutory authority, is a holding that if a claim is ultimately disallowed after the date

[5] The Bankruptcy Court addressed this issue a second time in its October 25, 2013 ruling. *See* Oct. 25 Transcript, pp. 42-45 (noting that disallowance of the Claim would not alter the plan vote and confirmation).

of confirmation, that the votes that were submitted for confirmation are to be recounted. There is simply no authority for that proposition.

**C. The Pledge Agreement Was Not a Rejected Executory Contract**

Again raising an argument that was never asserted until it filed a "Hearing Brief" on August 28, 2013 (again, well after the confirmation hearing, Confirmation Order and not even as part of its Claim Objection), Appellant contends that Seton did not have a claim because the Pledge was an executory contract rejected as the Effective Date of the Plan.

Once again, even if Appellant is correct, the result does not change. If the Pledge was rejected, it was rejected as of the Effective Date of the Plan – 14 days after the Confirmation Order was entered on July 1, 2013. Accordingly, the vote based on the Claim, made as of the voting deadline, was valid.

Moreover, these issues were discussed at the August 29 hearing, and the Bankruptcy Court entered its findings and conclusions on pp. 32-34 of its oral ruling. A contract is not an "executory contract" under 11 U.S.C. §365 where the debtor's only remaining obligation is a payment obligation. *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1046 (4th Cir. 1985); *Ocean Marine Svcs., Inc. v. Digicon, Inc. (In re Digicon, Inc.)*, 2002 WL 33962759 *5 (S.D. Tex. Dec. 13, 2002), *aff'd* 71 Fed. Appx. 442 (5th Cir. 2003). Clearly, SCC had no other obligations. Additionally, as the Bankruptcy Court also noted, even if the pledge had been rejected, it would have given rise to a rejection damages claim for the full amount of the remaining pledge, pursuant to 11 U.S.C. §365(g) and Rule 3002(c)(4) of the Federal Rules of Bankruptcy Procedure. Either way, Seton has a claim for $500,000.00.

WHEREFORE, based on the foregoing, Appellee requests that this Court affirm the decision of the Bankruptcy Court, and grant such other and further relief to which Appellee may be justly entitled.

Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.

By: */s/ Mark C. Taylor*

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (Facsimile)

ATTORNEYS FOR SCC KYLE PARTNERS, LTD.

and

*/s/ Ida Murguia*

**IDA MURGUIA, RN, JD**
State Bar No. 00796648
1345 Philomena St., Suite 410.2
Austin, Texas 78723
(512) 324-5917
(512) 380-7516 (Facsimile)

**ATTORNEY FOR SETON FAMILY OF HOSPITALS**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served by ECF delivery on the persons listed below, and all others receiving ECF notice, on April 7, 2014:

James G. Ruiz
Winstead PC
401 Congress Ave., Suite 2100
Austin, Texas 78701

*/s/ Mark C. Taylor*
Mark C. Taylor